# EXHIBIT A

Proposed Order

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| LEAR CAPITAL, INC.,[1] | Case No. 22-10165 (BLS) |
| Debtor. | Re: Docket No. ___ |

### ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF PALADIN MANAGEMENT GROUP LLC AS FINANCIAL ADVISOR TO THE DEBTOR *NUNC PRO TUNC* TO THE PETITION DATE, AND (II) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the above-captioned debtor and debtor in possession (the "Debtor"), for entry of an order pursuant to sections 105(a) and 327(a), of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") authorizing the retention and employment of Paladin Management Group, LLC ("Paladin") as financial advisor to the Debtor *nunc pro tunc* to the Petition Date, pursuant to the terms set forth in the Engagement Letter; and upon the Miller Declaration; and the Court being satisfied, based on the representations made in the Application and the Miller Declaration, that Paladin and its professionals are "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, and neither hold nor represent any adverse interest in this Chapter 11 Case; and the Court having found that the terms and conditions of Paladin's employment are reasonable as required by section 328(a) of the Bankruptcy Code; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the

---

[1] The last four digits of the Debtor's federal tax identification number are 7197. The Debtor's address is 1990 S. Bundy Drive, Suite 600, Los Angeles CA 90025.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

13504012/1

*Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.); and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been given, and it appearing that no other or further notice need be provided; and the Court having reviewed the Application and determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Application is APPROVED as set forth herein, effective as of the Petition Date.

2. The Debtor is authorized, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1, to retain and employ Paladin as its financial advisor in accordance with the terms and conditions set forth in the Engagement Letter, *nunc pro tunc* to the Petition Date, and to pay fees and reimburse expenses to Paladin on the terms and at the times specified in the Engagement Letter.

3. The terms of the Engagement Letter attached hereto as **Exhibit 1** are approved in all respects except as limited or modified herein.

4. Paladin's compensation, as set forth in the Engagement Letter is approved pursuant to section 328(a) of the Bankruptcy Code. Paladin shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of this Order and the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court.

5. Notwithstanding anything to the contrary in the Application or any of its attachments, no amounts shall be paid to Paladin absent an order of this Court approving a fee application filed on notice to parties in interest in this case under the procedures set forth in any order establishing procedures for compensation and reimbursement of expenses of professionals, provided that Paladin shall file monthly fee statements with time entries and requests for reimbursement that comply with Local Rule 2016-2, except as otherwise expressly set forth in this Order, pursuant to the deadlines and other procedures specified for monthly fee statements set forth in any order establishing procedures for compensation and reimbursement of expenses of professionals.

6. The Debtor shall be bound by the indemnification, contribution, reimbursement, exculpation, and other provisions of the Engagement Letter and will indemnify and hold harmless Paladin and the other Indemnified Parties, pursuant to the Engagement Letter, subject, during the pendency of this Case, to the following modifications:

    a. No indemnified person shall be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

    b. The Debtor shall have no obligation to indemnify any Indemnified Person, or provide contribution or reimbursement to any Indemnified Person for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from such Indemnified Person's bad faith, gross negligence, willful misconduct, fraud, breach of fiduciary duty, if any, or self-dealing; (ii) for a contractual dispute in which the Debtor alleges the breach of Paladin's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible under applicable law; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which such Indemnified Person should

3

       not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order; and

    c. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this Case (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing this Case, any Indemnified Person believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Paladin must file an application therefor in this Court, and the Debtor may not pay any such amounts to Paladin before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Paladin and the other Indemnified Persons for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Persons. All parties in interest, including, for the avoidance of doubt, the United States Trustee, shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution, or reimbursement.

  7. The Debtor and Paladin are each authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

  8. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry notwithstanding the possible applicability of Bankruptcy Rules 6004(g), 7062, or 9014.

  9. The relief granted herein shall be binding upon any chapter 11 trustee appointed in this Case, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of this Case to cases under chapter 7.

  10. To the extent that this Order is inconsistent with the Engagement Letter, the terms of this Order shall govern.

13504012/1

11. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

13504012/1

# **EXHIBIT 1**

Engagement Letter



Paladin Management Group, LLC
633 West Fifth Street, 28th Floor
Los Angeles, CA 90071

December 22, 2021

John Ohanesian
President and CEO
Lear Capital, Inc.
1990 South Bundy Drive, Suite 650
Los Angeles, California 90025

      Re:   Terms of Engagement of Paladin Management Group, LLC

Dear John:

This letter agreement (the "Agreement") confirms the terms under which Lear Capital, Inc. (the "Company") has engaged Paladin Mangement Group, LLC ("Paladin") to provide the Company with the services described below (the "Services"). If this is acceptable to you and the Company, please execute below. By doing so, the Company is enganging Paladin for the purposes of providing the Services set forth below.

**A.  Services**

Paladin's services (the "Services") under this letter agreement (the "Scope") will include assistance to the Company's management in the following:

Financial Advisory Services

- Preparing the Company to commence a proceeding ("Bankruptcy Case") under chapter 11 of Title 11 of the U.S. Code (the "Bankruptcy Code").

- Preparing and finalizing a petition to commence the Bankruptcy Case and "first day" motions to be filed in connection with the Bankruptcy Case (the "Bankruptcy Preparation Efforts").

- Preparing and maintaining liquidity and cash projections.

- Preparing a Schedule of Assets and Liabilities, a Statement of Financial Affairs, Monthly Operating Reports, and other filings that may be appropriate or required in connection with the Bankruptcy Case.

- Developing and implementing cash management and cash flow forecasting processes.

- Preparation of financial forecasts and reports that may be required by the Company's Board, lenders and stakeholders.

- Negotiations with the Company's stakeholders.

- Strategic communication services, which will include but not be limited to, assessment and development of a strategic communications plan, development of communications materials, coordination of media contacts, interviews and other placements and guidance in interactions with media outlets, customers/clients, suppliers/vendors, and other business partners as appropriate.

- Administering any Bankruptcy Case, once commenced.
- Advice and recommendations with respect to other related matters as the Client or its professionals may request from time to time, as agreed to by Paladin.

Preparation of Reports

- Researching, developing, and finalizing reports and opinions (including expert reports) in furtherance of the Bankruptcy Case.
- Making available Paladin Professionals, including Scot Avila, for depositions and testimony in connection with the foregoing reports and opinions.

### B. Fees, Expenses, and Compensation

As compensation for the Services, Paladin will be paid an hourly rate (the "Hourly Fees"). Paladin's hourly rates range from $425 to $795 per hour, depending on the personnel performing the work. The hourly rate for Scott Avila is $795 and for Lance Miller and Allen Soong is $725. Work to perform the Bankruptcy Preparation Efforts will be subject to a fee cap of $450 per hour on a blended basis. Our fees are based on the hours expended by Paladin personnel, multiplied by their applicable hourly billing rate for this engagement. Additionally, Paladin will be compensated 50% of its hourly rates for non-working travel time incurred by our personnel related to this engagement.

There will be a $75,000 retainer (the "Retainer") paid to Paladin upon the execution of this agreement. The Retainer will be an "evergreen" retainer, such that it will be replenished on a regular basis in order to ensure that the amount of the Retainer is, at all times, greater than Paladin's work in progress and accrued fees. The Retainer will be replenished in full prior to commencing the Bankruptcy Case.

### C. Terms and Conditions

Attached hereto as Appendix A are Paladin's terms and conditions. By the Company's execution of this agreement, the Company acknowledges that it has read these terms and conditions, and that it agrees to be bound by each of these terms and conditions, which are hereby incorporated by reference as if fully set forth herein.

2

If the foregoing accurately sets forth the understanding between us, please so indicate by signing and returning this letter to Paladin.

Very truly yours,

PALADIN MANAGEMENT GROUP, LLC

By: *Lance Miller*
    —65E6F19F7D8847E...
*Name:* Lance Miller
*Title:* Partner

CONFIRMED AND AGREED:

LEAR CAPITAL, INC.

By: *John Ohanesian*
   —A69A26E4C5AF4A7...
*Name:* John Ohanesian
*Title:* President and CEO

3

**Appendix B**

**General Terms and Conditions**

1. **Retainer and Compensation**

    (a) <u>Hourly and Weekly Billing</u>. Unless stated otherwise herein, the Company will be billed for Services provided by Paladin Personnel on an hourly basis at the current hourly rate of the Paladin Personnel performing the Services. Paladin adjusts its hourly rates periodically. The Company agrees to pay the hourly rates as reasonably adjusted. Paladin's fees and expenses will be billed to the Company monthly and are payable upon receipt. Billable Services include services provided to the Company by Paladin Personnel commencing with the date hereof and continuing after termination of the engagement.

    (b) <u>Retainer</u>. The Retainer ensures payment of Paladin's fees. Paladin may apply the Retainer to unpaid invoices without prior notice. Paladin may increase the Retainer to the extent required to ensure that the Retainer is sufficient to cover work in progress and outstanding invoices. The Company shall replenish the Retainer upon Paladin's request. The Retainer will not accrue interest. The balance of the Retainer after payment of Paladin's final invoice, if any, will be returned to the Company.

    (c) <u>Travel</u>. The Company will be responsible for Paladin Personnel travel time and expenses, including travel time and expenses incurred in traveling to and from the Paladin Personnel's home offices to the Company's offices. Paladin will bill travel time at one-half of the applicable hourly rate; provided that Paladin will bill travel time at its normal hourly rates to the extent Paladin Personnel are performing Services while traveling.

    (d) <u>Expenses</u>. The Company will pay or reimburse Paladin, as applicable, for all documented out-of-pocket expenses reasonably incurred by Paladin and Paladin Personnel in the performance of the Services through the termination date and the reasonable expenses incurred in connection with the Services after the termination date such as travel, and other expenses. Such expenses shall include travel, meals and lodging, delivery services, etc. In addition, in states where Paladin is obligated to collect sales taxes on professional services, such taxes will be billed to the Company.

2. **Paladin Personnel**

    Except as otherwise provided in this Agreement, the Services may be performed by such employees, agents or independent contractors of Paladin, or of any subsidiary or affiliate of Paladin, as Paladin may determine. References to "Paladin Personnel" herein include those employees, agents, and independent contractors of Paladin and its subsidiaries or affiliates that perform Services for the Company.

3. **Independent Contractor Status**

    Paladin shall serve as an independent contractor under this Agreement. Paladin will have exclusive control over the management and operation of the Services provided by Paladin Personnel and will be responsible for hiring, supervising and paying the wages or other compensation due to the Paladin Personal in connection with this Agreement. No Paladin Personnel will be employed or engaged by the Company either as a director, officer, member, manager, partner, control person, employee, representative, agent or independent contractor, or in any other capacity. No Paladin Personnel will be entitled to receive from the Company any compensation, vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. Paladin will be responsible for all employment, withholding, income and other taxes incurred in connection with the Services.

4. **Company Acknowledgements.**

    The Company acknowledges and agrees that neither Paladin, nor any Paladin Personnel, make any representations, guarantees or predictions that, inter alia: (i) An appropriate restructuring proposal or strategic alternative can be formulated; (ii) Any restructuring proposal or strategic alternative formulated by Paladin will achieve the intended results or will be more successful than other possible restructuring proposals or strategic alternatives; (iii) Restructuring is the best course of action for the Company; (iv) Any restructuring proposal or strategic alternative formulated by Paladin will be accepted by the Board, or the Company's creditors, shareholders and other stakeholders. The Company further acknowledges that numerous factors affect the Company's actual financial and operational results, and that these results may materially and adversely differ from the objectives of the restructuring plan or strategy formulated or proposed by Paladin.

5. **Accuracy and Completeness of Information**

   The Company is responsible for providing Paladin with accurate and complete information and materials. The Company will provide Paladin with full access to all Company personnel, books and records, including those of the Company's attorneys, accountants, other agents and third-party representatives, that Paladin Personnel reasonably request in connection with the performance of the Services. Paladin Personnel are entitled to rely on the accuracy of the information and materials provided and shall have no duty to verify the reliability, accuracy or completeness of such information. The Company is responsible for the accuracy and reliability of any plans, strategies, forecasts, quantitative financial models, projections and related computations prepared by Paladin in reliance upon any inaccurate or incomplete information or materials provided. Paladin shall incur no liability to the Company or any third-party arising out of any unreliable, inaccurate or incomplete information or materials provided by the Company.

6. **Company Responsibilities**

   The Company will make all decisions relating to whether the Company pursues or does not pursue a particular restructuring proposal, transaction, plan or strategy. The Company is responsible for the implementation and outcome of any restructuring proposal, transaction, plan or strategy pursued by the Company. The Company is responsible for any Work Product (as defined below) that is modified in any material respect without Paladin's approval.

7. **Excluded Services**

   Neither Paladin nor any Paladin Personnel will perform any of the following services: insurance advice; investment advice; asset management services, legal, tax or regulatory advice or services; or accounting or audit services, including any financial statement reporting services that are subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

8. **Bankruptcy Proceedings**

   In the event the Board resolves to file for bankruptcy under Chapter 11 of the Bankruptcy Code or has reason to believe an involuntary petition is likely to be filed, the following provisions shall apply:

   (a) <u>Approval of Engagement</u>. The Company will promptly seek the Bankruptcy Court's approval of Paladin's engagement under this Agreement. The application, proposed order and other supporting documents submitted to the Bankruptcy Court seeking such approval must be satisfactory to Paladin in all respects. Unless agreed otherwise by Paladin, retention of Paladin shall be pursuant to section 363 of the Bankruptcy Code. Paladin's Services following the commencement of a bankruptcy case or cases, and compensation relating thereto, will be subject to approval and authorization by the Bankruptcy Court.

   (b) <u>Bankruptcy Services</u>. The term Services as used in this Agreement shall include the services provided by Paladin Personnel in connection with any Bankruptcy Court proceedings ("Bankruptcy Services"). The term "Services" as used herein shall include the Bankruptcy Services.

   (c) <u>Reimbursement of Costs</u>. Subject to the approval of the Bankruptcy Court, the Company shall pay or reimburse Paladin for all costs reasonably incurred by Paladin or Paladin Personnel in connection with the Bankruptcy Services, including attorney fees.

9. **Insurance, Indemnification & Limitation of Liability**

   As an inducement to Paladin to agree to the Engagement and as further consideration for the Services, the Company agrees to indemnify, insure, defend and limit Paladin's liability as provided below.

   (a) <u>Indemnification</u>. The Company agrees to indemnify, defend and hold harmless Paladin and its affiliates and their respective former and present members, managers, insurers, directors, officers, employees, agents, independent contractors and controlling persons (each an "Indemnified Party" and collectively, the "Indemnified Parties") to the fullest extent permitted by law against any and all actual or threatened liabilities, losses, judgments, proceedings, litigations, or expenses (including legal fees and other costs reasonably incurred, including expert witness and investigator fees) (collectively, "Indemnified Claims"), arising out of or relating to (i) the Services performed under this Agreement, (ii) Paladin's involvement with the Company or its operations, or (iii) the Company's restructuring efforts generally; provided that indemnity under (i) in the preceding sentence shall not apply to any loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not

subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct, or breach of the confidentiality obligations contained in this Agreement.

Promptly after receipt by an Indemnified Party of notice of its involvement in any threatened or actual action, matter, proceeding or investigation to which this Section might apply, the Indemnified Party shall, if a claim for indemnification in respect thereof is to be made hereunder, notify the Company of such involvement. Failure by an Indemnified Party hereunder to so notify the Company shall not relieve the Company from its obligations under this Section, except to the extent that the Company suffers actual prejudice as a result of such failure. The Indemnified Party shall have the option to control the defense of any Indemnified Claim, subject to reasonable consultation with the Company; in the event that the Indemnified Party so elects, the Company shall promptly advance or commence payment of any and all fees, expenses, and amounts incurred or to be incurred by the Indemnified Party in connection with the Indemnified Claim, in such frequency and amounts so as to ensure that the Indemnified Party does not pay any such amounts directly. In the event that the Indemnified Party elects for the Company to assume the defense of any Indemnified Claim:

(i) the counsel selected by the Company for such defense shall be reasonably satisfactory to the Indemnified Party;

(ii) the Indemnified Party shall have the right to participate in such action or proceeding and to retain its own counsel, but the Company shall not be liable for any legal expenses of other counsel subsequently incurred by the Indemnified Party in connection with the defense thereof unless (a) the Company has agreed to pay such fees and expenses, or (b) the Company shall have failed to employ counsel reasonably satisfactory to the Indemnified Party in a timely manner; and

(iii) The Company shall not consent to the terms of any compromise or settlement of any Indemnified Claim without the prior written consent of the Indemnified Party, which shall not be unreasonably withheld or delayed.

In the event that the parties dispute whether a claim, proceeding, or litigation constitutes an Indemnified Claim, the Company shall treat such claim, proceeding or litigation as an Indemnified Claim and honor its defense obligations with respect thereto until and unless a court of competent jurisdiction determines in a final, non-appealable order or judgment that the claim, proceeding, or litigation does not qualify for defense under this Section; in that event, the Indemnified Party shall be required to repay any out-of-pocket expenses or amounts previously paid by the Company as part of its defense obligations under this Section.

(b) <u>Limitation of Liability</u>. No Indemnified Party shall be liable (directly or indirectly, in contract or tort or otherwise) to the Company (including its successors and creditors) for any claim arising out of or relating to this Agreement, including any acts or omissions committed by Paladin Personnel in the performance of the Services. Notwithstanding the above, an Indemnified Party may be liable for such losses, claims, damages, liabilities or expenses if they are found by a court of competent jurisdiction in a final judgment not subject to further appeal to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct or breach of Paladin's obligations under this Agreement; provided that: (i) no Indemnified Party will have any liability for special, consequential, incidental or exemplary damages or loss (including lost profits, savings or business opportunity); and (ii) the Indemnified Parties' aggregate liability is limited to and shall not exceed the total fees paid to Paladin by the Company for Services under this Agreement.

(c) The indemnification and limited liability provisions contained in this Agreement, including those contained in Section, shall survive and remain in full force and effect upon the termination of this Agreement and the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (or the conversion of an existing case to one under a different chapter).

(d) The rights provided herein are in addition to and shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under this Agreement, applicable law or otherwise. The Parties agree that failure by the Company to honor its obligations under this Section will result in irreparable harm and injury to the affected Indemnified Party that monetary damages will not be sufficient to address. As such, the Company agrees that, in addition to any and all remedies provided hereunder, breach of this Section shall entitle the Indemnified Parties to injunctive and other equitable relief deemed appropriate by a court of competent jurisdiction, without the need for entry of a bond or other security.

10. **Conflicts**

Paladin is not currently aware of any relationships with other clients that create actual or potential conflicts of interest with the Company. However, because Paladin serves clients on an international basis, it is possible that Paladin has rendered services to entities or individuals who are in competition with the Company or whose interests potentially conflict with the Company's interests, including creditors of the Company. Nothing in this Agreement prevents Paladin from providing services to such other entities or individuals now or in the future, provided Paladin makes appropriate arrangements to ensure that the confidentiality of the Company's information is maintained. Further, Paladin will not represent the interests of any entities or individuals whose interests are known by Paladin to directly conflict with the Company's interests in connection with any matter in which Paladin is currently providing services to the Company.

11. **Confidential Information**

Paladin acknowledges and agrees that Paladin Personnel will have access to certain Confidential Information belonging to the Company the disclosure or the use of which in a manner that does not serve the interests of the Company will cause irreparable damage and loss to the Company. For these reasons, Paladin covenants and agrees as follows:

(a) <u>Use of Confidential Information.</u> Except as otherwise expressly provided herein, Paladin will use the Confidential Information only in connection with the performance of the Services. Paladin will use reasonable efforts to maintain the confidentiality of the Confidential Information.

(b) <u>Confidential Information.</u>

1. "Confidential Information" means any data or information that is proprietary to the Company and/or its affiliates that is not generally known to the public, whether in tangible or intangible form, in any and all mediums, including, but not limited to: (i) financial information, projections, operations, sales estimates, business plans and performance results, marketing strategies, and business plans; (ii) plans for products or services, and customer or supplier lists; (iii) any scientific or technical information, invention, design, process, procedure, formula, improvement, technology or method; (iv) any concepts, reports, data, know-how, works-in-progress, designs, development tools, specifications, computer software, source code, object code, flow charts, databases, inventions, information and trade secrets; (v) any other information that should reasonably be recognized as confidential information of the Company; and (vi) any Work Product excluding the Engagement Tools (as those terms are defined in Section 13). Confidential Information need not be novel, unique, patentable, copyrightable or constitute a trade secret in order to be designated Confidential Information.

2. Confidential Information shall not include information which: (i) was lawfully possessed by Paladin prior to receiving the Confidential Information from the Company; (ii) becomes rightfully known by Paladin from a third-party source not under an obligation to Company to maintain confidentiality; (ii) is generally known by the public through no fault of or failure to act by Paladin inconsistent with its obligations under this Agreement; (iv) is required to be disclosed in a judicial or administrative proceeding, or is otherwise requested or required to be disclosed by law or regulation, although the requirements of paragraph 5 hereof shall apply prior to any disclosure being made; and (v) is or has been developed by employees, consultants or agents of Paladin without violation of the terms of this Agreement, including the Engagement Tools.

(c) <u>Permitted Disclosures</u>. Paladin may make reasonable disclosures of Work Product pursuant to and in accordance with Section 13(g) below. In addition, Paladin may make reasonable disclosures of Confidential Information: (i) to third parties in connection with the performance of its services under this Agreement so long as such disclosures are made pursuant to a confidentiality agreement in form and substance satisfactory to the Company or otherwise with the knowledge and consent of the Company; (ii) in connection with any dispute between Paladin and the Company under or concerning this Agreement, and (iii) pursuant to any request by FINRA, the Securities and Exchange Commission or any other regulatory authority, or pursuant to any order, subpoena or other regulatory or legal process. Paladin shall have the unrestricted right to use and disclose the Engagement Tools, and Paladin shall have the right to use the Company's name and logo, and to provide a description of the services provided by Paladin under this Agreement, in Paladin's public marketing materials.

(d) <u>Compelled Disclosure of Confidential Information</u>. In the event that Paladin becomes legally compelled to

disclose any Confidential Information, to the extent practicable and permitted by applicable law, Paladin shall provide the Company with prompt notice thereof prior to any disclosure of Confidential Information so that the Company may contest such requirement or seek a protective order or other appropriate remedy. Paladin shall use its reasonable best efforts to assist Company in such efforts. In the event that disclosure is required, Paladin will furnish only that portion of the Confidential Information which is legally required. In the event that disclosure is required within the Bankruptcy Case or any associated cases or proceedings, Paladin will coordinate any such disclosure with the Company's counsel retained in the Bankruptcy Case, and may make such disclosures without further restriction to the extent disclosure is approved or authorized by such counsel.

(e) <u>Warranty Regarding Authority to Disclose Confidential Information, Indemnification</u>. The Company represents and warrants to Paladin that it has the authority to disclose the Confidential Information to Paladin and agrees to indemnify and defend Paladin against any claims or liability arising out of the Company's disclosure of the Confidential Information to Paladin and/or Paladin's use and disclosure of the Confidential Information pursuant to and in accordance with this Agreement.

(f) <u>Survival</u>. The rights and obligations of the Parties under this Agreement shall survive the termination of this Agreement and remain binding for a period of one (1) year from the termination date.

(g) <u>Injunctive Relief</u>. Paladin acknowledges and agrees a violation of this Agreement could cause irreparable injury to the Company and as there is no adequate remedy at law for such violation, the Company may, in addition to any other remedies available to it at law or in equity, enjoin Paladin in a court of equity for violating or threatening to violate this Agreement.

(h) <u>Ownership of Confidential Information</u>. All Confidential Information disclosed to Paladin by the Company shall remain the property of the Company.

(i) <u>Return or Destruction of Confidential Information</u>. Upon written request of the Company, Paladin shall promptly return to the Company all Confidential Information and documents received or otherwise obtained from the Company and all copies and excerpts of the same. Upon written request of the Company, Paladin shall also permanently destroy all electronic and digital versions of the Confidential Information and the documents.

(j) This Agreement shall supersede any preexisting Confidentiality and/or Nondisclosure of Confidential Information Agreement between Paladin and the Company.

**12. Work Product; Engagement Tools**

(a) <u>Work Product</u>. Work Product refers to all work product created or produced by Paladin Personnel directly for the Company and delivered to the Company as part of this Engagement, including advice, analyses, financial models, reports, strategies, plans, proposals, and presentation materials.

(b) <u>Engagement Tools</u>. Engagement Tools includes all methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, templates, models and other intellectual property created, acquired or developed by Paladin Personnel independently of or in connection with this Engagement that are employed by Paladin Personnel in the development and creation of the Work Product.

(c) <u>Ownership and License</u>. The Engagement Tools are the sole and exclusive property of Paladin. The Company shall not acquire any interest in the Engagement Tools except that Paladin grants the Company a royalty free, worldwide, perpetual, non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product. The Work Product, excluding the Engagement Tools contained therein, is the sole and exclusive property of the Company.

(d) <u>No Third-Party Beneficiaries</u>. The Work Product is intended solely for the use and benefit of the Company and this Agreement shall not be interpreted as conferring any rights on any other individual as a third-party beneficiary or otherwise.

(e) <u>Time and Data Sensitive Material</u>. The Company acknowledges that the appropriateness, accuracy and reliability of the Work Product is specific to factors existing at the time the Work Product is developed and that any changes in those factors including those resulting from the passage of time, and any modifications to the Work Product can materially affect the appropriateness, accuracy and reliability of the Work Product.

(f) <u>Non-Disclosure</u>. The Company covenants and agrees not to disclose Work Product to any persons other than the Company's equity holders, board members, managers, officers, employees, attorneys, agents and other representative, unless:

  i. Paladin consents to the disclosure;
  ii. The Work Product contains no material modifications that have not been approved by Paladin; and
  iii. The disclosure includes a disclaimer approved by Paladin.

(g) <u>Non-Responsibility</u>; Indemnification. Neither Paladin nor any Indemnified Party (as defined in Section 10) shall be liable for, and the Company shall indemnify, defend, and hold the Indemnified Parties harmless against, any claims, damages or expense, including attorney fees, arising out of the disclosure of Work Product by the Company or any of its representatives that is not authorized pursuant to subparagraph (f).

### 13. <u>Alternative Dispute Resolution Procedure</u>

The parties agree to arbitrate any claims or disputes concerning, relating to, or arising out of this Agreement, except claims or disputes: (i) where the amount in controversy exceeds $500,000, or (ii) where the dispute relates to fees incurred in the Bankruptcy Case.

If the alternative dispute resolution procedure applies, then any claim or dispute concerning, relating to or arising out of this Agreement shall be determined by arbitration in Washoe County, Nevada before a sole retired judge arbitrator in accordance with the laws of the State of Nevada. The arbitration shall be administered by and heard before JAMS pursuant to its Streamlined Arbitration Rules and Procedures. Judgment on the award may be entered in any court having jurisdiction. The arbitrator shall, in the award, allocate all the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees and costs of the prevailing party against the party who did not prevail.

### 14. <u>Non-Solicitation</u>

For a period of six (6) months after the later of: (i) the completion of all services to be provided by Paladin under this Agreement; or (ii) termination of this Agreement, the Company, including any affiliates thereof, shall not hire, retain or utilize (other than through Paladin) the services of any current or former employee or independent contractor of Paladin who provided services under this Agreement at any time. The Company agrees and acknowledges that Paladin's remedy at law for any breach of the provisions of this Section would be inadequate and that for any breach of such provisions Paladin will, in addition to such other remedies as may be available to it at law or in equity, be entitled to injunctive relief and to enforce its rights by an action for specific performance to the extent permitted by law.

### 15. <u>No Partnership, Joint Venture, or Agency Relationship; Independent Judgment</u>

Nothing in this Agreement shall be construed as creating a partnership, joint venture or agency relationship between Paladin or Paladin Personnel, and the Company. Paladin shall have no authority to act for or on behalf of the Company. Further, the Company acknowledges and agrees that the Company's Board and executive officers are sophisticated individuals who have the knowledge and experience required to make decisions independently of the advice provided by Paladin. The Company covenants and agrees that it will exercise independent judgment in making decisions relating to any restructuring plan, business strategy or other transaction proposed by Paladin.

### 16. <u>Company's Joint and Several Liability; Right of Setoff</u>

If the Company consists of one or more individuals or entities, then the Company's obligations under this Agreement shall be joint and several obligations of each individual or entity comprising the "Company." Each such individual or entity shall execute this Agreement. Without limiting any other remedy that may be available to Paladin under this Agreement or applicable law, where the "Company" under this Agreement consists of more than one individual or entity, then Paladin shall have against each such individual or entity a right of setoff (notwithstanding any lack of mutuality) under which Paladin may set off against any claim against Paladin by any individual or entity comprising the Company group, all of the claims that Paladin may have against any or all of the individuals or other entities that comprise the Company.

### 17. <u>Attorneys' Fees and Expenses</u>

In the event of any dispute arising from or relating to these terms or the Agreement, Paladin shall be entitled to reimbursement of any and all reasonable costs, damages, and expenses, including attorneys' fees, expended or incurred in connection with such dispute (whether or not Paladin is the substantially prevailing party).

18. **<u>Consent; Entire Agreement</u>**

In any instance under this Agreement where a party's consent is permitted or required to be given, such consent shall not be withheld unreasonably. This Agreement contains the entire Agreement of the parties with respect to its subject matter and supersedes all prior agreements and understandings between the Company and Paladin with respect to such subject matter. Any modification of or supplement to this Agreement shall be effective only if such modification or supplement is in writing and signed by all parties.

19. **<u>Multiple Originals</u>**

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. This Agreement may be executed by facsimile signatures or signatures forwarded via email.

20. **<u>Governing Law; Venue</u>**

This Agreement shall be governed by and construed and interpreted in accordance with the laws of Nevada (without regard to conflict of laws principles). Venue for all purposes shall be Washoe County, Nevada.