**DECLARATION OF MAX F. BRAUER**
**PURSUANT TO 28 U.S.C. § 1746**

I, Max F. Brauer, hereby make the following declaration based upon my personal knowledge:

## I. BACKGROUND

1. I am over eighteen years of age and competent to testify to the matters included in this declaration. I am making this declaration voluntarily and based upon my personal knowledge.

2. I am an Assistant Attorney General in the Securities Division of the Maryland Office of the Attorney General, Securities Division ("Maryland Securities Division").

3. The Maryland Securities Division administers the Maryland Securities Act, Md. Code, Corps & Assn's § 11-101 *et seq*. ("Maryland Securities Act"). Maryland Securities Act § 11-201. As a part of its authority in administering the Maryland Securities Act, the Maryland Securities Division, by and through its Commissioner, may conduct investigations to determine whether any person has violated or is about to violate any provision of the Maryland Securities Act or any rule or order under the Maryland Securities Act. Maryland Securities Act § 11-701.

4. In its enforcement capacity, the Maryland Securities Commissioner may also issue summary orders requiring violators of the Maryland Securities Act to cease and desist from engaging in such activity, censure registrants, bar violators from engaging in the securities business or investment advisory business in Maryland, and issue civil penalties. Maryland Securities Act § 11-701.1. In addition, the Commissioner may also bring an action seeking a temporary restraining order, temporary or permanent injunction, civil penalties, a declaratory judgment, the appointment of a receiver or conservator for the defendant or the defendant's assets, a freeze of the defendant's assets, rescission, restitution, disgorgement, payment of prejudgment and postjudgment interest, and any other relief a court deems just. Maryland Securities Act § 11-702.

5.	The Maryland Securities Division is currently investigating Lear Capital, Inc. ("Lear"), its principal Kevin DeMeritt, and other associated individuals or entities (collectively "Lear Investigation") pursuant to its authority under Maryland Securities Act § 11-701. The Lear Investigation concentrates on violations of the registration provisions, particularly investment advisor registration, and antifraud provisions of the Maryland Securities Act. *See* Maryland Securities Act §§ 11-301, 11-302, 11-401, 11-402.

6.	A number of other state securities regulators also have separate Lear Investigations pursuant to their applicable, analogous state securities statutes. Like Maryland, these state statutes also authorize investigations into violations of registration and antifraud provisions and provide for subsequent enforcement actions. In addition, many other state securities regulators also have authority to enforce violations of state commodity laws. *E.g.,* California Commodity Law of 1990, California Corporations Code § 29500 *et seq.* In states where such laws exist, potential commodity law violations also form a basis for the investigations of state securities regulators.

7.	The Maryland Securities Division and the other state securities regulators are coordinating their Lear Investigations, and I serve as the lead and liaison counsel for coordinated efforts.

8.	Currently, 29 state securities regulators are coordinating Lear Investigations ("Investigating State Securities Regulators"). These regulators include[1]:

   a.	Alabama Securities Commission

   b.	Arizona Corporation Commission, Securities Division

---

[1] The current list does not include the New York Attorney General's Office, which brought a separate action against Lear and subsequently settled the matter pursuant to a consent order dated December 30, 2021 and filed January 3, 2022.

c. Arkansas Securities Department

d. California Department of Financial Protection and Innovation

e. Colorado Securities Commissioner

f. Delaware Department of Justice, Investor Protection Unit

g. Office of the Georgia Secretary of State

h. State of Hawaii, Department of Commerce and Consumer Affairs

i. Idaho Department of Finance

j. Illinois Securities Department

k. Indiana Securities Division

l. Kentucky Department of Financial Institutions

m. Maine Office of Securities

n. Maryland Securities Division

o. Massachusetts Securities Division

p. Minnesota Department of Commerce

q. Mississippi Secretary of State

r. Missouri Securities Division

s. Montana Commissioner of Securities and Insurance, Office of the Montana State Auditor

t. Nebraska Department of Banking and Finance

u. New Mexico Regulation and Licensing Department, Securities Division

v. North Carolina Secretary of State, Securities Division

w. Ohio Division of Securities

x. Oklahoma Department of Securities

  y. South Carolina Attorney General's Office

  z. Tennessee Securities Division

  aa. Texas State Securities Board

  bb. Washington State Department of Financial Institutions

  cc. Wisconsin Department of Financial Institutions, Division of Securities

9.  In addition, a number of states have entered into a tolling agreement with Lear and Kevin DeMeritt ("Tolling Agreement States"). These Tolling Agreement States include all of the Investigating State Securities Regulators in addition to:

  a. Alaska

  b. District of Columbia

  c. Kansas

  d. Louisiana Office of Financial Institutions

  e. Michigan Department of Attorney General

  f. Nevada Secretary of State, Securities Division

  g. New Hampshire Bureau of Securities Regulation

  h. New Jersey Bureau of Securities

  i. North Dakota Securities Department

  j. Oregon

  k. Puerto Rico Office of the Commissioner of Financial Institutions

  l. Rhode Island Department of Business Regulation

  m. Vermont Department of Financial Regulation-Securities Division

  n. West Virginia Securities Commission

  o. Wyoming Secretary of State

10. All these Investigating State Securities Regulators and Tolling Agreement States are members of the North American Securities Administrators Association ("NASAA"). NASAA is a voluntary organization that represents and serves its members through education, cooperation, coordination, communication, subject matter expertise, and advocacy. However, NASAA does not itself undertake or coordinate any investigations or litigation. Such actions are undertaken and coordinated by the members themselves, pursuant to each member's applicable securities statute.

11. All of the Investigating State Securities Regulators are only conducting investigations at this time. As of the date of this declaration, none of the Investigating State Securities Regulators (or Tolling Agreement States) have filed an administrative or other action against Lear, Kevin DeMeritt, or any associated individuals or entities.[2]

12. The Investigating State Securities Regulators have coordinated document production from Lear pursuant to a subpoena duces tecum (SDT) issued by the California Department of Financial Protection and Innovation ("DFPI") (formerly the Department of Business Oversight or "DBO") on April 14, 2020. The Investigating State Securities Regulators and Lear intended for the SDT to be a comprehensive request for documents from Lear, the responses to which would be shared among the Investigating State Securities Regulators.

13. Such coordination maximized efficiency for all parties, preventing the Investigating State Securities Regulators from competing with each other to get their regulatory requests answered timely, and saving Lear considerable costs from having to produce to 29 different regulatory requests.

---

[2] Tennessee has sent Lear a notice letter informing them of potential violations, but as of this date has not filed an action.

14. DFPI, Maryland, and Lear ultimately negotiated a rolling production of documents to the Investigating State Securities Regulators. Lear has produced documents to the Investigating State Securities Regulators (approximately 13 productions) and generally complied with the SDT to date.

15. Correspondence between the Maryland Securities Division and DFPI with Lear's counsel in furtherance of the Lear Investigations has included approximately 14 phone calls, 6 letters, and 80 emails with Lear's counsel.

16. Some of the Investigating State Securities Regulators also were able to listen to depositions of Lear personnel taken by the Commodity Future Trading Commission (CFTC). While all states have reserved the right to take additional testimony, if necessary, this opportunity saved additional costs for both the states and Lear.

17. Throughout the course of the Lear Investigations, I understand that a smaller number of the Investigating State Securities Regulators have also sent Lear subpoenas directly. Each of these states had a right to subpoena Lear directly. The total volume of additional subpoenas has been far smaller than if each regulator sent its own subpoena, took its own depositions, and the states did not coordinate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 21, 2022, in Baltimore, Maryland.

/s/ Max F. Brauer

Max F. Brauer