**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| LEAR CAPITAL, INC.,[1] | Case No. 22-10165 (BLS) |
| Debtor. | **Re: Docket Nos. 130, 132** |

**DEBTOR'S OBJECTION TO MOTION OF CLIENT CUSTOMERS FOR ENTRY OF
AN ORDER (I) APPOINTING AN OFFICIAL COMMITTEE OF CONTINGENT
LITIGATION CUSTOMERS PURSUANT TO 11 U.S.C. § 1102(a)(3); (II) EXTENDING
THE DEADLINE TO SUBMIT A PROOF OF CLAIM PURSUANT TO BANKRUPTCY
RULE 3003(c)(3); AND (III) GRANTING RELATED RELIEF**

Lear Capital, Inc., the debtor and debtor in possession herein (the "Debtor"), hereby submits its Objection to the Motion of Client Customers Jacqui Lundy, David S. Clark and Greg Godek (collectively, the "Movants" ) for Entry of an Order (I) Approving an Official Committee of Contingent Litigation Customers Pursuant to 11 U.S.C. § 1102(a)(3); (II) Extending the Deadline to Submit a Proof of Claim Pursuant to Bankruptcy Rule 3003(c)(3); and (III) Granting Related Relief ("Motion").[2]  In further support of this Objection, the Debtor respectfully states as follows:

**SUMMARY OF ARGUMENT**

1.      There is no factual or legal basis for the relief sought by the Movants. Specifically, the statutory predicate for appointment of a committee in a subchapter V case set forth in 11 U.S.C. § 1102(a)(3) is that "cause" exists.  Here, the Movants have not presented so much as a shred of admissible evidence (or even credible argument) establishing "cause." On that basis alone, the request for the appointment of a committee should be denied.

---

[1] The last four digits of the Debtor's federal tax identification number are 7197. The Debtor's address is 1990 S. Bundy Drive, Suite 600, Los Angeles CA 90025.

[2] Unless otherwise defined herein, capitalized terms shall have the meaning set forth in the Motion.

2.       Even beyond the absence of any evidence, the Movants have not[3] presented any legal argument why the extraordinary relief sought should be granted, particularly where such relief would be contrary to the clear Congressional mandate as set forth in the Bankruptcy Code. The Debtor knows of no reported decision where a committee has been appointed in a subchapter V case.  Movants cite to two decisions (which will be discussed in much more detail below): one published and one unpublished.  The published decision is inapplicable, and the unpublished decision is factually distinguishable because, among other things, the debtor did not object to the appointment of the committee.

3.       Finally, it appears that a primary motivation for the Motion (and therefore "cause" in Movants' view) is their belief that since the Debtor is "wildly solvent," the Debtor would be able to pay the fees associated with a committee "without materially harming the Customers…." *See*, Motion at pg. 10, ¶ 31.  Such a position finds no support in law, is the antithesis of "cause" and is offensive at its core.

4.       Second, the Movants sought to extend the bar date.  The Debtor was surprised by the request to extend the Bar Date because the Debtor fully complied with all of the conditions of the Court's Order and served the notice of commencement (the "<u>Notice of Commencement</u>") upon all of its current and former customers since its inception (collectively, the "<u>Customers</u>"), which comprise nearly 90,000 people (not including the other noticed parties).  The Notice of Commencement included the specific Bar Date and instructions for filing a proof of claim, and the form of the Notice of Commencement was specifically approved by the Court.

---

[3] In all fairness to the Movants, they did not make any credible argument for the appointment of a committee because no such argument exists:  this is not a case where such relief is appropriate.

5.     Not only did the Debtor serve the Notice of Commencement upon almost 90,000 Customers, the Debtor went above and beyond the requirements of the Bankruptcy Code and Bankruptcy Rules and published the Bar Date in the Wall Street Journal, the form of which was expressly approved as an exhibit to this Court's Order.

6.     Again, the Motion fails to present *any* evidence that Customers did not, in fact, receive notice of the Bar Date or were confused as to how or when to file a claim.  As such, Movants' request to extend the Bar Date must be denied.

7.     For all these reasons which will be discussed in more detail below, the Debtor requests the Motion be denied.

## **BACKGROUND**

8.     On March 2, 2022 (the "<u>Petition Date</u>"), the Debtor filed a voluntary bankruptcy petition under Subchapter V of Chapter 11 of the Bankruptcy Code.

9.     Substantially contemporaneous with the filing of the petition, the Debtor filed a motion for an order (i) authorizing claims and noticing agent to serve commencement notice and approving 2002-1(b) list; (ii) authorizing debtor to file names and contact information of customers under seal and maintain sealed status; (iii) approving form and manner of notice to its customers; and (iv) granting related relief (the "<u>Notice Motion</u>").  *See* Doc. 14.  Among other things, by and through the Notice Motion, the Debtor sought to serve the Notice of Commencement through electronic mail, to seal the names and addresses of any and all Customers, and approval of notice of publication of the bar dates.

10.    At the first day hearing, this Court heard argument between the Debtor and the United States Trustee (the "<u>UST</u>"), who sought to have the Notice of Commencement served by first class mail, rather than by email.  Ultimately, the Court sustained the UST's objection, and on

3

March 9, 2022, the Court entered an Order granting the Notice Motion, subject to the sustained objection by the UST (the "Order Approving Notice") [Doc. 38]. Significantly, the Order Approving Notice expressly approved the form of notice of publication, which included notice of all bar dates in "the New York Times, the Wall Street Journal or such other widely circulated publication(s) that the Debtor reasonably believes to be circulated among its customers and creditors." Order Approving Notice, ¶ 6.  The Order Approving Notice also approved the form of the Notice of Commencement to be served on the Customers.  *See*, Order Approving Notice, ¶ 3.

11.    As set forth in the certificate of service filed on March 16, 2022, between March 9 and March 11, 2022, the Debtor served the Notice of Commencement upon 89,432 people, which is the universe of the Debtor's Customers.  *See* Certificate of Service Exhibit C [Doc. 50]. All of the Customers were served the Notice of Commencement by first class mail, other than 25 Customers for whom the Debtor did not have physical addresses.  Those 25 were served via electronic mail.

*[Remainder Of Page Intentionally Left Blank]*

4

13586011/1

12.     The Notice of Commencement not only included information on the bankruptcy filing, but also included the "Proof of Claim Deadline" and referenced the specific Bar Date of May 1, 2022.  It also included information on how to file a claim, what a claim is and who should file a claim.  The relevant portion of the Notice of Commencement is copied below.

| 8. | Proof of claim deadline | Deadline for filing proof of claim: General Bar Date: May 1, 2022 |
|---|---|---|

You may file a claim by mailing the proof of claim form to the respective address below or via https://onlineclaims.bmcgroup.com/learcapital/claim/Filing410.

| If by Regular Mail: | If by Messenger or Overnight Delivery: |
|---|---|
| BMC Group | BMC Group |
| Attn: Lear Capital Claims Processing | Attn: Lear Capital Claims Processing |
| PO Box 90100 | 3732 West 120th Street |
| Los Angeles, CA 90009 | Hawthorne, CA 90250 |

**Governmental Bar Date: August 29, 2022**

A proof of claim is a signed statement describing a creditor's claim. A proof of claim form may be obtained at https://pacer.uscourts.gov or any bankruptcy clerk's office.

Your claim will be allowed in the amount scheduled unless:

☐ your claim is designated as *disputed, contingent, or unliquidated*;
☐ you file a proof of claim in a different amount; or
☐ you receive another notice.

If your claim is not scheduled or if your claim is designated as *disputed, contingent, or unliquidated*, you must file a proof of claim or you might not be paid on your claim and you might be unable to vote on a plan. You may file a proof of claim even if your claim is scheduled.

You may review the schedules at the bankruptcy clerk's office or online at https://pacer.uscourts.gov.

Secured creditors retain rights in their collateral regardless of whether they file a proof of claim. Filing a proof of claim submits a creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a proof of claim may surrender important nonmonetary rights, including the right to a jury trial.

13.     Further, consistent with the Order Approving Notice, the Debtor caused notice to be published in the Wall Street Journal on March 10, 2022, substantially in the form approved by this Court (the "Publication Notice").  The Publication Notice clearly provided the relevant bar dates which tracks the language from the Court's General Order dated September 14, 2020 by (i) including the Petition Date and (ii) stating that that the General Bar Date by which all creditors must file a proof of claim is not later than sixty (60) days after the Petition Date.

## ARGUMENT

### A.  The Court Should Not Appoint a Committee Because Movants Fail to Show Cause Why a Committee Should Be Appointed Over Clear Congressional Mandate.

#### i.  *Congressional Intent Is to Not Appoint a Committee.*

14.     The Motion seeks extraordinary relief contrary to the clear mandate of Congress in enacting subchapter V.  Specifically, 11 U.S.C. § 1102(a)(3) provides that no committee may be appointed in a case under subchapter V "[u]nless the court for cause orders otherwise." 11 U.S.C. § 1102(a)(3).  As will be discussed further herein, Movants fail to show cause for the appointment of a committee in this subchapter V case.

15.     For good reason, Congress mandated that a committee in a subchapter V case only be appointed where "cause" is shown.  Movants opine that, had Congress intended for a committee to never be appointed in a subchapter V case, it would have so stated.  But Movants cannot cite any case, let alone a published decision, where a subchapter V trustee was appointed over an objection of the debtor.

16.     It must also be true that by requiring a finding of cause for the appointment of a committee, Congress intended a committee be appointed only in rare and unusual circumstances beyond those in which a committee is appointed in a traditional chapter 11 case. In other words, cause certainly cannot mean the same reasons that a committee would be appointed in a non-subchapter V case, as Movants would have this Court believe.

17.     Specifically, Movants posit that "cause" exists if a committee "will improve recoveries to creditors, will assist in the prompt resolution of [the] case, and is necessary to provide effective oversight of the [d]ebtor," citing *In re Bonert*, 619 B.R. 248, 2020 Bankr. LEXIS 1783 (Bankr. C.D. Cal. 2020).  Movants take the statement made in *Bonert* out of context

6

and in any event, *Bonert* is not controlling.  Importantly, as discussed below, the *Bonert* court did not make any ruling or findings as to whether a committee would stay in place when the case was redesignated under subchapter V.  Further, if Congress intended for these reasons to constitute cause in a subchapter V case, Congress would have listed the reasons in the statute. But this was not necessary because the role of the subchapter V trustee is to provide this exact service.  Certainly, cause would have to include something that goes beyond what the subchapter V trustee is already tasked with doing.

18.     The factors that Movants suggest constitute cause to appoint a subchapter V committee generally ring true even in non-subchapter V cases.  This cannot possibly be what Congress intended when it included a showing of cause for the appointment of a subchapter V committee.

19.     Movants fail to show cause for the appointment of a committee and as such, the extraordinary relief requested must be denied.

### ii.     *Case Law Cited in the Objection Provides No Support for the Relief Requested.*

20.     Movants cite only two cases, one of which is not published and the other of which is not controlling, for what constitutes "cause" for the appointment of a committee in a subchapter V case.  Both cases are wholly distinguishable.

21.     Notably, a committee was not appointed in a subchapter V case in *In re Bonert*, which is not controlling in any event.  *See, In re Bonert, supra*.  *Bonert* was filed as a traditional chapter 11, and a committee was appointed when the case was pending as a traditional chapter 11.  When the court decided that the case could be redesignated as a subchapter V, the court stated that it *might* allow the committee to stay in place.  *See, B*onert, 619 B.R. at 253-54. Specifically, the *Bonert* court only stated that it would "provide the Committee an opportunity to

7

show cause why it should be permitted to continue in existence after the Debtors' Subchapter V election takes effect." *Id.* at 253.[4]  *Bonert* did not decide whether the committee would in fact stay in place in the subchapter V case.  The *Bonert* decision is inapposite to this case and provides no support for the Motion.

22.    Likewise, the unpublished case of *In re Sharity*, Case No. 21-11001 (JTD) (Bankr. D. Del. Aug. 9, 2021), is entirely distinguishable from the facts at issue here.  In *Sharity,* Judge Dorsey appointed a subchapter V committee in connection with a motion to remove the debtor in possession, there was no objection to the appointment of a subchapter V committee and it was clear that the case would be redesignated as a non-subchapter V case because the debtor discovered that it had at least $50 million in member claims.

23.    The egregious facts in *Sharity* of gross mismanagement and incompetence are not present in this case.  Judge Dorsey noted that there were "significant issues involving how the company was managed prepetition and [] open questions about how the case has progressed to date" just one month into the case.  *See, In re Sharity* Doc. 130 at pgs. 61-62.[5]  Those issues are not present here.   In fact, Movants recognize that the Debtor desires an expeditious reorganization.

24.    In *Sharity*, the debtor was also failing financially, its business structure was in doubt and it did not have access to its own records – again, not present here.  *See, In re Sharity* Doc. 130 at pg. 8.

25.    Moreover, the *Sharity* court discussed that after the filing, the Debtor discovered that it had at least $50 million in non-contingent claims and the court was concerned about those

---

[4]  It is telling that the *Bonert* Court subsequently disbanded the committee. *See* Order dated 7.11.2020 [Doc. 287], a copy of which is attached hereto as Exhibit 1.

[5] A copy of the transcript is attached hereto as Exhibit 2.

creditors having a voice in the case.  *See, In re Sharity* Doc. 130 at pgs. 36-37.  In fact, a little over a month after the committee was appointed, the debtor in *Sharity* withdrew its election to proceed under subchapter V.[6]  The proposed committee here would be made up of admittedly only *contingent* claims which may not ultimately be allowed.

26.      Moreover, as a result of the *Sharity* court expanding the role of the subchapter V trustee to, *inter alia,* investigate the financial affairs of the debtor, the subchapter V trustee lost some of its neutrality and could not possibly have negotiated a plan with only the creditors' interests in mind.  Here, the subchapter V trustee remains in place as an independent third party and can speak for the creditors.  The subchapter V trustee has been, and the Debtor expects that she will continue to be, very active in this case.

27.      Finally, as mentioned above, the debtor did not oppose the formation of a subchapter V committee in *Sharity.  See, In re Sharity* Doc. 130 at pgs. 48-49.

28.      Accordingly, *Sharity* provides no support for the Motion in that it is not published, it does not include any discussion or findings related to what constitutes cause under Section 1002(a)(3) and it factually distinguishable in any event.

29.      Movants do not, and indeed cannot, cite one case where cause has been shown for the appointment of a subchapter V committee over the objection of the Debtor.

### iii.      *If the Factors Cited By Movants Constitute Cause, Which Debtor Disputes, Such Factors Are Not Present Here.*

30.      Even if the factors cited by Movants were to constitute cause for the appointment of a committee, which the Debtor disputes, such factors are not present in this case.

---

[6] *See* Doc. 229 entered on October 4, 2021 in Case No. 21-11001, a true and correct copy of which is attached hereto as Exhibit 3.

31.     First, additional oversight by a committee is not necessary in this case. Not only is there absolutely no evidence, or even any allegation, of mismanagement or incompetence, but there also has been incredible oversight from the UST in this case thus far. The subchapter V trustee has also been actively involved since the inception of the case.

32.     In addition, there is an active body of state agencies in this case, led by Karen Cordry, Bankruptcy Counsel for the National Association of Attorneys General. In fact, Ms. Cordry and Abigail Ryan, the Texas State Attorney General, questioned the Debtor for over an hour at the initial meeting of creditors and intend to ask additional questions at the continued meeting.

33.     With sufficient oversight from the UST and the subchapter V trustee, as well as the active involvement of Ms. Cordry, Ms. Ryan and others, any additional oversight by a committee is simply not necessary or appropriate.

34.     Second, a committee will not help to improve recoveries to creditors. The Debtor's goal is to confirm a consensual plan with the assistance of the subchapter V trustee. If that is not possible, though, the Debtor may still confirm a plan over the creditors' objection. The provisions of subchapter V require that in the absence of an impaired consenting class of creditors, the debtor may still confirm its plan if it meets the best interest of creditors test and pays unsecured creditors its projected disposable income to be received over a three to five year period. *See*, 11 U.S.C. § 1129(a)(7) and 1191. Therefore, there is a fixed ceiling to the amount that subchapter V must remit under the plan, and the appointment of a committee will not cause creditors to receive more under the plan, but the professional fees caused by such appointment will erode any amounts to be received by creditors on a dollar-for-dollar basis.

13586011/1

35.     Finally, as Movants acknowledge, the Debtor desires a quick resolution of this case.  The idea of a quick exit from bankruptcy is entirely consistent with the purpose and statutory provisions of subchapter V of Chapter 11.  Movants do not, and cannot, explain how the presence of a committee will support that goal. Common sense and experience dictates the opposite conclusion.

36.     It should also be noted that Movants' suggestion that cause exists simply because the Debtor can afford it is offensive.  Of course, Movants fail to provide any legal support for such a position.  The Debtor's financial status should have no bearing on whether a committee is appointed, and that is simply not the standard for appointing a committee in a case brought under subchapter V.

37.     Accordingly, there is more than effective oversight in this case by the UST and the subchapter V trustee, not to mention the active involvement of various states and agencies, and a committee is not necessary to provide any additional oversight or to help improve the position of contingent creditors.  The Motion must be denied.

38.     For all these reasons, the Motion fails to provide any evidence, let alone any compelling evidence, to support a finding of cause to appoint a subchapter V committee.

**B.      The Court Should Not Grant Movants' Request to Extend the Bar Date Because All of the Debtor's Current and Former Customers Were Served with Notice of the Specific Bar Date Pursuant to This Court's Order.**

*i.      Debtor Properly Noticed All of Its Current and Former Customers with the Bar Date and Fully Complied With the Order Approving Notice.*

39.     Without any evidence whatsoever in support, the Motion boldly asserts that notice of the Bar Date was insufficient, that Customers did not receive notice and that Customers are

confused about the timing and process for filing a claim.  This could not be further from the truth.

40.    Had Movants reviewed the docket with any modicum of diligence, including the particular documents related to notice of the Bar Date, Movants would have discovered that contrary to the assertions made in the Motion, the Debtor noticed **all** of its current and former Customers, nearly 90,000 people, with the specific Bar Date via U.S. Mail (or email where a mailing address was not available) as ordered by the Court in the Order Approving Notice.  *See,* Doc. Nos. 38 at ¶ 4 and 5.

41.    Moreover, the Court specifically approved the Notice of Commencement that the Debtor sent to over 90,000 individuals and agencies, and is substantially similar to *Official Bankruptcy Form 309F.  See* Doc. 38 at ¶ 3.

42.    If any mail was returned without a forwarding address, the Debtor was under no obligation to re-mail the document pursuant to the Notice Motion.  *See* Doc. 14 at page 6, ¶20.

43.    The Motion references Exhibit 2 to the Order approving Notice as evidence that Customers may be confused about the Bar Date (because, for example, it states the bar date is 60 days from the order for relief instead of stating the actual date of May 1, 2022).  But Exhibit 2 to the Order Approving Notice is the notice published in the Wall Street Journal; it is not the notice that the Debtor mailed to its Customers and other parties.  Rather, the Debtor mailed Exhibit 1 to the Order Approving Notice (also Exhibit 1 to the Certificate of Service) referenced above, to all of its Customers.

44.    More than that, the Publication Notice did state the date of the bar date for nongovernmental claimants.  The Movants' argument can therefore be reduced to the claimants

13586011/1

who they seek to represent are not able to calculate 60 days from the Petition Date.  The Debtor gives greater credit to its Customers that they can do simple math.

45.    The Motion also provides no evidence that Customers were confused by the Bar Date or how to file a claim. To the contrary, the evidence indicates that Customers have in fact received notice of the Bar Date and were not confused by the instructions for filing a claim. Certainly the Movants each received notice, and scores of Customer claims have already been filed.   Moreover, the subchapter V trustee and the Debtor have received and responded to hundreds of calls from Customers in response to the Notice of Commencement.

46.    In summary, the Debtor not only fully complied with the Order Approving Notice but it went further to provide Publication Notice of the Bar Date, all in a manner consistent with this Court's Order.  The Debtor noticed all of the Customers, nearly 90,000 people, in addition to numerous other regulators and agencies, with the specific Bar Date by direct U.S. Mail (or email where a mailing address was not available) using a form substantially similar to the Court's Official Form 309F and which was approved by the Court.

47.    Based on the above, the requested extension of the Bar Date must be denied.

**ii.    *Rule 3003(c)(6) Provides No Basis to Extend the Bar Date.***

48.    The Motion cites Rule 3003(c)(6) as the standard for extending the Bar Date. Rule 3003(c)(6) does not exist; however, the Debtor presumes that the Motion intended to cite Rule 3002(c)(6).  Rule 3002(c)(6); however, does not apply in a Chapter 11 case.

49.    In a Chapter 11 case, Rule 3003(c)(3) applies, and requires "cause" be shown to extend the bar date.  It specifically provides in pertinent part as follows:

(a) Applicability of Rule. This rule applies in chapter 9 and 11 cases.

. . .

(c) Filing Proof of Claim.

. . .

(3) Time for Filing. The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), (c)(4), and (c)(6).

50.    The Bar Date was set automatically pursuant to the Court's General Order dated September 14, 2020 and Movants fail to show any cause why the Bar Date should be extended.

51.    Even if Movants assert that claims can be filed past the Bar Date pursuant to Rules 3002(c)(6) and 3003(c)(3), Rule 3002(c)(6) does not operate to extend the claims bar date for all creditors.  Rather, it applies on an individual basis if such creditor meets the conditions stated in Rule 3002(c)(6).[7]

---

[7] Rule 3002(c)(6) provides as follows:

(c) Time for Filing. In a voluntary chapter 7 case, chapter 12 case, or chapter 13 case, a proof of claim is timely filed if it is filed not later than 70 days after the order for relief under that chapter or the date of the order of conversion to a case under chapter 12 or 13. In an involuntary chapter 7 case, a proof of claim is timely filed if it is filed not later than 90 days after the order for relief under that chapter is entered. But in all these cases, the following exceptions apply:

(6) On motion filed by a creditor before or after the expiration of the time to file a proof of claim, the court may extend the time by not more than 60 days from the date of the order granting the motion. The motion may be granted if the court finds that:

(A) the notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim because the debtor failed to timely file the list of creditors' names and addresses required by Rule 1007(a); or

(B) the notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim, and the notice was mailed to the creditor at a foreign address.

14

52.     Here, each of the Movants received actual notice of the Bar Date with more than sufficient time file a claim on or before the Bar Date.  In fact, Mr. Clark and Mr. Godek have filed proofs of claim.  As such, Rule 3002(c)(6) provides no support for the requested extension of the Bar Date or even to extend the Bar Date for any of the Movants individually.

53.     In summary, the Debtor fully complied with the Court's Order Approving Notice, the Debtor served over 90,000 Customers with notice of the specific Bar Date, the Bar Date is the date provided for in this Court's General Order and Movants fail to show any cause why the Bar Date should be extended. The Debtor submits that the Court should not grant Movants' bad faith request to expand the claims notice period.

*[Remainder of Page Intentionally Left Blank]*

13586011/1

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests this Court (i) deny the Motion in its entirety; and (ii) grant such other and further relief as may be just and proper.

Dated:  April 30, 2022
Wilmington, Delaware

**MORRIS JAMES LLP**

*/s/ Jeffrey R. Waxman*
Jeffrey R. Waxman (DE Bar No. 4159)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: bkeilson@morrisjames.com

and

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
Alan J. Friedman (admitted *pro hac vice*)
Melissa Davis Lowe (admitted *pro hac vice*)
100 Spectrum Center Drive; Suite 600
Irvine, CA 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
E-mail: afriedman@shulmanbastian.com
E-mail: mlowe@shulmanbastian.com

*Counsel to the Debtor and Debtor*
*in Possession*

16

13586011/1