**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LEAR CAPITAL, INC.,[1]<br><br>           Debtor. | Chapter 11 (Subchapter V)<br><br>Case No. 22-10165 (BLS)<br><br>**Objection Deadline: June 21, 2022 at 4:00 p.m. (ET)**<br>**Hearing Date: TBD** |

**JOINT MOTION OF THE DEBTOR AND DEBTOR IN POSSESSION,
PARTICIPATING STATES AND CUSTOMERS FOR ORDER PURSUANT TO
11 U.S.C. §105 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 9019
AUTHORIZING AND APPROVING SETTLEMENT**

Lear Capital, Inc., the debtor and debtor in possession (the "Debtor"), the Participating States (as defined in footnote 2) and the Customers (as defined below) (collectively with the Debtor and Participating States, the "Moving Parties") hereby move this Court (the "Motion") for entry of an order (the "Order"), substantially in the form attached as **Exhibit 2** hereto, approving a settlement and compromise of disputes by and between the Debtor, the Participating States,[2] and the Customers, pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. Pro. 9019. In support thereof, the Moving Parties rely on the *Declaration of John Ohanesian in Support of Joint Motion of the Debtor and Debtor in Possession, Participating States and Customers for Order Pursuant to 11 U.S.C. §105 and Federal Rules of Bankruptcy Procedure 9019 Authorizing and Approving Settlement* attached hereto as **Exhibit 4**, and respectfully submit the following:

---

[1] The last four digits of the Debtor's federal tax identification number are 7197. The Debtor's address is 1990 S. Bundy Drive, Suite 600, Los Angeles CA 90025.

[2] The "Participating States" include Alabama, Arizona, Arkansas, California, Colorado, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Montana, Nebraska, North Carolina, North Dakota, New Hampshire, Ohio, Puerto Rico, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, and Wisconsin. The Debtor believes that additional states will become Participating States prior to the hearing on this Motion. The Participating States include all of the Filing States plus additional states included in the proposed settlement that is at issue in the Motion.

13647806/3

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Moving Parties confirm their consent pursuant to Rule 9013-1(f) of the Local Rules to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. The statutory predicates for the relief requested herein are sections 105(a) of Title 11 of the United States Code and Fed. R. Bankr. Proc. 9019.

## BACKGROUND

### A. General Background

3. The Debtor was founded in 1997 and is a seller of precious metals. The Debtor is one of the largest in its industry with customers all over the country.

4. The Debtor describes in detail its background, structure, operations and recent financial history in the Declaration of John Ohanesian in Support of First Day Motions ("First Day Declaration") [Docket No. 15].

5. On March 2, 2022, the Debtor filed its voluntary petition for relief under Chapter 11, Subchapter V, of the Bankruptcy Code (the "Petition Date").

6. The Debtor is continuing in possession of its property, and operating and managing its business, as a debtor in possession pursuant to Bankruptcy Code Sections 1107 and 1108.

7.      Jami Nimeroff has been appointed as the Subchapter V trustee. Other than the Subchapter V trustee, no trustee, examiner, or committee has been appointed in this chapter 11 case.

8.      Pursuant to the Bridge Order Extending Deadlines, Including Deadline to File a Chapter 11 Plan [Docket No. 221] (the "Bridge Order"), the current deadline for the Debtor to file a plan is July 1, 2022.

### B.    Motion for Appointment of a Committee

9.      On April 20, 2022, Jacqui Lundy, David S. Clark, and Greg Godek (the "Customers") filed a Motion for Entry of an Order (I) Appointing an Official Committee of Contingent Litigation Customers Pursuant to 11 U.S.C. 1102(a)(3); (II) Extending the Deadline to Submit a Proof of Claim Pursuant to Bankruptcy Rule 3003(c)(3); and (III) Granting Related Relief [Docket No. 130] (the "Committee Motion").

10.      The Debtor opposed the Committee Motion and various interested parties took discovery related to the Committee Motion.

11.      A hearing on the Committee Motion was held on May 4, 2022, at which time the Court took the matter under advisement.

### C.    Motion to Dismiss Bankruptcy Case

12.      On April 25, 2022, certain states and other agencies (the "Filing States") filed a Motion to Dismiss Bankruptcy Case [Docket No. 148] (the "Dismissal Motion"). By the Dismissal Motion, the Filing States sought to have the Case dismissed or, in the alternative, for the Court to abstain from hearing any proceedings in the Case for a period of at least six months.

13.      Pursuant to agreement by the parties and the Bridge Order, responses to the Dismissal Motion are currently due no later than July 1, 2022.

14. After the hearing on this Committee Motion, the Debtor, the Customers, and the Participating States, through their counsel, discussed at length a potential resolution of the Committee Motion, the Dismissal Motion, and other items. After extensive discussion and negotiation, the parties have agreed to the terms set forth in the term sheet (the "Term Sheet") attached hereto as **Exhibit 1** (the "Settlement")**.**

**D.    Terms of the Settlement**

15. The terms of the Settlement are summarized as follows**:**[3]

i. The Court will be asked to enter an order providing for a 90-day abstention/standstill/extension (with the 90-days commencing on the date the Court enters the order approving this Motion) with respect to all deadlines in the case including specifically all applicable Subchapter V deadlines, including but not limited to the dates for contesting the designation of the Debtor as a Subchapter V Debtor and the deadlines for filing a plan (the "Abstention Period"), which Abstention Period shall be subject to early termination or extension pursuant to the terms of the Settlement. Any extension of the Abstention Period is expressly subject to a further Court Order following a noticed motion. The Dismissal Motion will be held in abeyance during the pendency of the Abstention Period and any extensions thereof. The Participating States will not join any motion by any other entity seeking to dismiss the case during the Abstention Period or any extensions thereof. Neither the Creditors' Committee nor the Participating States will file or join in any motion seeking a redesignation or conversion of the Subchapter V case during the Abstention Period or any extensions thereof.

ii. The Participating States agree that, notwithstanding their position that the automatic stay does not preclude them from initiating police and regulatory litigation, they will voluntarily agree to forbear from instituting civil litigation against Lear Capital, Inc. (the Debtor), its principal Kevin DeMeritt, and any or all of Lear Capital, Inc.'s subsidiaries or companies of common ownership during the Abstention Period (the "Forbearance"). The Forbearance does not preclude the Participating States from continuing their investigations of Lear Capital, Inc. (the Debtor), Kevin DeMeritt, and any or all of Lear Capital, Inc.'s subsidiaries or companies of common ownership. The Debtor and Kevin DeMeritt, further agree to extend the current Tolling Agreement (effective date July 1, 2019, expiration date September 1, 2022)[4] related to the Participating States' claims to the later of January 1, 2023, or 90 days after the expiration

---

[3] The terms as set forth herein represent a summary of the terms of the Settlement. The attached Exhibit 1 should be reviewed to determine the full scope of the parties' agreement. All such terms in Exhibit 1 apply whether or not explicitly referenced in this summary. The terms set forth in the Term Sheet shall control except as modified herein, which such modifications will be reflected in the Order.

[4] A copy of the Tolling Agreement is attached to the Motion as **Exhibit 3.**

of the Abstention Period.  The Debtor and Kevin DeMeritt will agree to extend the Tolling Agreement to non-Participating States on the same basis in the event said non-Participating States agree to be bound in writing by the terms of this current agreement (prior to the expiration of the Tolling Agreement as to them).

       iii.    The Subchapter V Trustee will serve in that role to facilitate and mediate the Parties' efforts to reach a consensual resolution of the bankruptcy case and a confirmable plan.  The Parties are cognizant of the Subchapter V Trustee's dual role if she were to serve as a mediator. The Parties agree to put in place certain procedures so that her role as the Subchapter V trustee is not hampered or limited by having served as mediator.

       iv.    The Debtor agrees to resolve the Committee Motion by entry of an Order directing the United States Trustee (the "<u>UST</u>") to appoint an official committee of customers (the "<u>Creditors' Committee</u>") which will be formed only after an Order is entered approving the Motion and which such Creditors' Committee shall be bound by the terms of the Settlement.[5] If the Creditors' Committee chooses to retain Potter Anderson as counsel, any objection to the retention of Potter Anderson as committee counsel and any financial advisor would be limited to standard section 327-type issues (such limitation does not apply to the UST).  For the avoidance of doubt, the Creditors' Committee is not bound to employ Potter Anderson but in the event it does choose to do so, any objection by the Debtor or Participating States to Potter Anderson's retention shall be limited as set forth above. There will only be one committee, to be formed only after this Motion is granted.  Fees and Expenses for the Creditors' Committee and its professionals, including the Financial Advisor and any experts retained by the Creditors' Committee are collectively limited to a budget in the amount of $600,000.00.  Fee applications for the Creditors' Committee and its professionals shall still be filed in the ordinary course.

       v.    In an effort to avoid duplication of effort and to save costs, the Creditors' Committee and the Financial Advisor, to the maximum extent consistent with their fiduciary obligations, will make the information and advice provided by the Financial Advisor available to the Participating States as well.  Nothing in this Settlement nor any order approving this Settlement shall be construed or interpreted to mean that any Financial Adviser hired/retained/chosen by an Official Committee of Creditors, or that the Official Committee of Creditors, in this bankruptcy case, serves or represents the interest of the Participating States.  It is recognized and understood that, notwithstanding their access to the Financial Advisor and information provided by that party, the Participating States will not be liable for the fees or expenses of the Financial Advisor.

---

[5] The Term Sheet includes the option for the committee to be formed as an ad hoc committee or as an official committee.  When the Term Sheet was shared with the United States Trustee, the United States Trustee indicated its strong preference that the committee be formed as an official committee and the Customers agreed.  As such, notwithstanding the language of the Term Sheet, the relief requested by this Motion is to modify the Term Sheet so that the Creditors' Committee formed in this case is an official committee.

vi. The Debtor agrees to reopen and extend the now-expired bar date (as to certain prior customers) for an additional 60-day period (the "New Customer Bar Date") in the event an agreement is reached with respect to the terms of a chapter 11 plan. Additional agreement as to the timing and language of the notice of the New Customer Bar Date are discussed in the Term Sheet. In the event no agreement is reached regarding the terms of a plan, the Creditors' Committee and/or the Participating States may, following the expiration of the Abstention Period, file any motion they deem appropriate to address their concerns regarding the adequacy of the original bar date notice or original bar date period, the Debtor reserving all rights to oppose any such motions.

vii. The Debtor will provide the Creditors' Committee and the Participating States with the unredacted Proofs of Claim filed by customers of the Debtor. The Debtor will not be required to initially furnish the full list of customers, but the Creditors' Committee and the Participating States reserve the right to raise the issue further with the Debtor, ask the Court to determine their entitlement to such information, or, with respect to the Participating States alone, subpoena such information subject to applicable police and regulatory powers, with the Debtor reserving all rights to object to or otherwise oppose disclosure of the list in whole or in part.

viii. Subject to appropriate confidentiality agreements with the Creditors' Committee, and the Participating States' agreement to follow applicable requirements of their respective public information acts, the Debtor will act in good faith to voluntarily provide financial information and projections on past earnings and future disposable income sufficient to allow the Creditors' Committee and the Participating States to evaluate all relevant case and plan issues, including what profits have been made to date, what distributions and other payments have been made over time to the Debtor's owner, Mr. DeMeritt, and the projected profitability of the Debtor's future operations to provide funds to support a plan. The parties reserve the right to seek court intervention in the event any disputes arise regarding the requested information.

ix. If the Abstention Period (including any extensions thereof) expires or is terminated without an agreement being reached on terms for a consensual plan, all of the Parties return to their prior positions and any pending motions and/or motions or other actions that could have been timely filed prior to the commencement of the Abstention Period (including the Dismissal Motion, any motion to redesignate the case as a non-Subchapter V filing, and the claims bar date for governmental claims) return to their prior status (except with respect to the formation of the Creditors' Committee, which will continue to exist following the termination or expiration of the Abstention Period). In light of the time needed to reinstitute the proceedings and move forward thereon, the Parties will have the longer of: 1) 30 days after the Abstention Period expires; or 2) the time that otherwise remains available before the expiration of any applicable deadline as of the date the Abstention Period expires to take any actions pursuant to deadlines that expired during the Abstention Period, including seeking further extensions of time to take such actions. This includes, but is not limited to, seeking to obtain an extension of the

governmental claims bar date. That 30-day reinstitution period also applies to the Debtor's deadline to file a plan under the terms of its current Subchapter V designation.

    x.    The Settlement is subject to Court approval.

16. The UST is not a party to the Settlement. To be clear, the rights of the UST to take any action, seek any relief, or file any motion/pleading in this case are unaffected by any part of the Settlement.

## RELIEF REQUESTED

17. By this Motion, the Moving Parties seek approval of the Settlement, which includes extending the deadline for the Debtor to file a plan, pursuant to Section 105 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## BASIS FOR RELIEF REQUESTED

### A.    The Court Should Approve the Settlement Because It is Fair and Equitable

18. This Court has the authority to grant the relief requested in this Motion pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provision of this title."

19. Bankruptcy Rule 9019 grants the Court authority to approve settlements of claims and controversies after notice and a hearing. Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin),* 91 F. 3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy 9019.03[1] (15th ed. 1993)). In addition, courts in this district have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. *See In re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1997).

20. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Enter. Group, Inc.,* 222 B.R. 243, 249 (D. Del. 1998) (*quoting Louise's*, 211 B.R. at 801). To reach such a determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *Martin*, 91 F.3d at 393. In striking this balance, the court should consider the following factors:

(a) The probability of success in the litigation;

(b) The complexity, expense and likely duration of the litigation;

(c) The possibilities of collecting on any judgment which might be obtained;

(d) All other factors relevant to making a full and fair assessment of the wisdom of the proposed compromise; and

(e) Whether the proposed compromise is fair and equitable to the Debtor, his creditors, and other parties in interest.

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968). *See also Martin*, 91 F.3d at 393. Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry*, 390 U.S. at 425. The *TMT* rule does not require the Court to hold a full evidentiary hearing before a compromise can be approved; rather, the Court's obligation is "to canvass the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" 10 Collier on Bankruptcy, 9019.2, 9019-4 (15th ed.) (*quoting In re Drexel Lambert Group, Inc.,* 134 B.R. 493 (Bankr. S.D.N.Y. 1991)). *See also Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983).

B. **Entry of an Order Approving the Settlement is Proper**

21. When considering the merits of the Settlement, the Debtor focused on the time and costs of continued litigation with the Customers and the Participating States with respect to the Dismissal Motion, the Committee Motion, and the potential re-noticing of a bar date. The Settlement avoids extensive discovery and likely multiple contested hearings that would be timely and costly. It also allows for the formation of a committee without setting any binding precedent regarding the appointment of a committee in a Subchapter V case. Moreover, while the Debtor is fairly confident it would succeed on the Dismissal Motion, the Participating States are equally as confident as to their chances of prevailing. The issues are factually complex and litigation is risky and uncertain and as such, the Settlement is in the best interest of the Estate.

22. Most importantly, perhaps, the Debtor recognizes the benefit of the potential to reach a consensual plan of reorganization. The Settlement will allow the parties the opportunity to negotiate the terms of a plan without having to rush to get a plan on file that could change as a result of the negotiations. Reaching a consensual plan, if possible, inures to the benefit of all parties involved. It also ensures the Debtor may continue its negotiations regarding the plan and the re-noticing of the bar date without the threat of having to respond to a motion to redesignate the Case as a traditional Chapter 11.

23. Additionally, the Debtor believes that the proposed settlement provides a significant benefit given that it will result in the Participating States agreeing to not commence any litigation against the Debtor during the Abstention Period. This will allow the Debtor to not only avoid the cost of having to engage in any such litigation, but also to avoid having to devote substantial amounts of managerial time toward responding to the litigation. Instead, the Debtor

can focus its efforts on operating the business profitably and formulating a plan of reorganization.

24. Based upon the risk of litigation, and importantly, avoiding the costs and uncertainty of fully litigating the Dismissal Motion, the potential re-noticing of the bar date and the potential motion to redesignate the Case as a traditional Chapter 11 (at least during the Abstention Period), the Debtor believes that the proposed settlement provides significant benefits to the Debtor and its creditors and estate. For the foregoing reasons, the Debtor, in its business judgment has determined that the Settlement is in the best interests of the Debtor's estate. Accordingly, the Debtor respectfully submits that the Settlement meets the standards set forth in *TMT Trailer Ferry*.

**C.    Cause Exists to Extend the Deadline for Filing a Plan As Part of the Settlement**

25. Section 1189 of the Bankruptcy Code provides that a debtor in a Subchapter V case shall file a plan within 90 days of the order for relief, "except that the court may extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable."[6]

26. Given that Subchapter V is in its relative infancy, not many courts have addressed the question of what this language of the Bankruptcy Code means. However, the Court in *In re Trepetin*, 617 B.R. 841 (Bankr. D. Md. 2020) determined that the appropriate standard to apply to Section 1189(b) is whether the debtor is "fairly responsible" for its inability to timely file a plan. *Id.* 849. While *In re Trepetin* involves a debtor that converted from chapter 7 to chapter 11, the Debtor submits that the "fairly responsible" standard should be applied here, especially

---

[6] This Court has approved and ordered the extension of the deadline set forth in 11 U.S.C. §1189 in at least one case. *See, In re Retired-N-Fit, LLC*, Case No. 21-10561 (BLS) (Order entered July 1, 2021 at Docket No. 44).

considering that the major constituencies in this case join the request for an extension. Regardless, the need for an extension in this case is attributable to the fact that the Debtor has been required to address other issues, as discussed in more detail below.

27. Here, the Debtor submits that cause exists to extend the plan filing deadline because the Debtor is not fairly responsible for the delay. The filing of the Committee Motion and the Dismissal Motion by the Customers and the Filing States required that the Debtor focus its time and energy, and expend significant resources, on responding to such motions instead of formulating its plan. An extension will give the Debtor and the major constituents in this case time to attempt to reach a consensual plan.

28. Debtor should not justly be held accountable because all of the parties desire to try to reach a consensual resolution on a plan. In fact, as part of the Dismissal Motion, the Participating States requested an abstention period, to which the Debtor has essentially consented through the Settlement. It is not practical, fair or wise to require the Debtor to file a plan when the Debtor is focusing its efforts on trying to resolve the Dismissal Motion and also reach the terms of a consensual plan. If a consensual plan can be reached, it will inure to the benefit of all parties in this case and will avoid timely and costly litigation regarding plan confirmation.

29. The Debtor's request is also not made for any dilatory purpose and will not prejudice any party. Rather, the extension will only inure to the benefit of all involved. In fact, the major constituencies in this case support the requested extension.

30. If the extension is not granted, the Debtor will likely be forced to file a "placeholder plan" in order to meet the deadline. In *In re Baker*, 625 B.R. 27 (Bankr. S.D. Tex. 2020), the Court addressed the filing of a "placeholder plan" saying that "such a plan is a

skeletal document filed to satisfy a filing deadline, with the intent to file a completed, substantive document later. There is no legally valid reason to file a placeholder plan in this case. As the Court explains above, the 90-day plan filing deadline under § 1189 is not jurisdictional and this Court may grant Debtor an extension under the appropriate circumstances; thus, failure to file a plan by the deadline will not mandatorily result in dismissal or conversion." *Id.* at 37.

31. In this case, filing a "placeholder plan" would not serve any purpose, let alone be in the best interest of the Debtor's creditors, and would be futile in any event. It would allow the Debtor to meet the plan filing deadline, but it would require the Debtor to unnecessarily spend time and money filing a plan that all parties know will eventually be amended. The Debtor believes that an adequate and substantive plan can be filed within the requested extension period which is embodied as part of the Settlement and as such, filing a "placeholder plan" is not efficient or necessary.

32. Finally, no creditor or other party in interest will be prejudiced by the extension of the plan filing deadline. The filing of a placeholder plan would likely not result in confirmation any sooner than extending the deadline to enable the Debtor to work cooperatively with the Subchapter V Trustee and interested parties toward a consensual resolution without causing the estate to incur the costs of litigation while they do so.

33. For all these reasons, the Debtor submits that cause exists to extend the plan filing deadline as part of the Settlement.

12
13647806/3

**NOTICE**

34.  Notice of this Motion has been given to: (i) the United States Trustee for the District of Delaware; (ii) counsel for the Customers and the Participating States; (ii) the Subchapter V Trustee; and (iv) all parties who have requested notice.

WHEREFORE, the Moving Parties respectfully request that this Court enter an Order, a copy of which is attached hereto (i) authorizing the Debtor to enter into the Settlement; (ii) approving the Settlement; and (iii) granting such other and further relief as is just and proper.

| | |
|---|---|
| Dated:  June 7, 2022<br>Wilmington, Delaware | **MORRIS JAMES LLP**<br><br>*/s/ Brya M. Keilson*<br>Jeffrey R. Waxman (DE Bar No. 4159)<br>Brya M. Keilson (DE Bar No. 4643)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-6800<br>Facsimile: (302) 571-1750<br>E-mail: jwaxman@morris.james.com<br>E-mail: bkeilson@morrisjames.com<br><br>and<br><br>**SHULMAN BASTIAN FRIEDMAN & BUI LLP**<br>Alan J. Friedman (admitted *pro hac vice*)<br>Melissa Davis Lowe (admitted *pro hac vice*)<br>100 Spectrum Center Drive; Suite 600<br>Irvine, CA 92618<br>Telephone: (949) 340-3400<br>Facsimile: (949) 340-3000<br>E-mail: afriedman@shulmanbastian.com<br>E-mail: mlowe@shulmanbastian.com<br><br>*Counsel to the Debtor and Debtor*<br>*in Possession* |

13647806/3