## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| LEAR CAPITAL, INC., | Case No. 22-10165 (BLS) |
| Debtor.[1] | Objection Deadline:  August 24, 2022 at 4:00 p.m. (ET)<br>Hearing Date:  September 7, 2022 at 11:00 a.m. (ET) |

## MOTION OF ARGONAUT INSURANCE COMPANY
## FOR RELIEF FROM THE AUTOMATIC STAY

Argonaut Insurance Company ("AIC"), by and through its undersigned counsel, respectfully moves this Court (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to Section 362(d)(1) of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), granting relief from the automatic stay to allow AIC to file a declaratory judgment action in the appropriate U.S. District Court  ("DJ Action") seeking (i) a determination that certain amounts paid on Lear Capital Inc.'s behalf under a full reservation of rights in connection with the settlement of an action brought by the New York Attorney General are owed back to AIC; and, (ii) and a declaration of no coverage for numerous additional investigations and matters.  In support of this Motion, AIC respectfully states as follows:

## PRELIMINARY STATEMENT

1.     The Debtor, through its pre-emptive bankruptcy filing is, *inter alia*, attempting to

---

[1]      The last four digits of the Debtor's employer identification number are 7197.  The Debtor's address is 1990 S. Bundy Drive, Suite 600, Los Angeles CA 90025.

both subvert the various investigations directed towards its business practices (*see* ECF No. 148 (*Motion to Dismiss Bankruptcy Case*) and to avoid a determination of no coverage under relevant insurance policies including one issued by AIC. Debtor was aware that AIC intended to seek a declaration of no coverage when it filed for bankruptcy.

2.      Specifically, AIC issued a Follow Form Excess Insurance Policy, Policy No. MLX7601081-5 ("Argo Excess Policy") to Debtor and Debtor in Possession Lear Capital, Inc. ("Lear Capital" or "Debtor").

3.      In the DJ Action, AIC will seek a declaration of no coverage under the Argo Excess Policy with regard to the following:  (i) *People of the State of New York, by Letitia James, Attorney General of the State of New York v. Lear Capital, Inc. and Kevin DeMeritt*, filed in the Supreme Court of the State of New York, County of Erie, Index No. 807970/2021 (the "NYAG Action"); (ii) ongoing and to be filed regulatory investigations ("Related Regulatory Investigations"); (iii) the proposed action, *Tennessee Securities Division v. Lear Capital, Inc.,* to be filed before the Commissioner of Commerce and Insurance for the State of Tennessee, TSD No. 21-046 (the "Proposed TN Action") to the extent it is a Related Claim to the NYAG Action[2]; and (iv) any other matter ultimately deemed to be a Related Claim to the NYAG Action (collectively with the Related Regulatory Investigations and Proposed TN Action, the "Matters").

4.      In short and as detailed further in the draft DJ Action attached hereto as Exhibit B, coverage is not available for the Matters in whole or in part pursuant to the following: (i) the Service Industry Endorsement; (ii) the False Advertising Exclusion; (iii) the exclusion of certain damages from the definition of Loss; (iv) the allocation clause; and (v) the failure to satisfy the

---

[2]      Alternatively, to the extent the Proposed TN Action is not a Related Claim to the NYAG Action, the DJ Action will seek a declaration that there is no coverage since the Proposed TN Action is not a claim first made during the Argo Excess Policy.

terms necessary to trigger the Argo Excess Policy.

      5.      By this Motion, AIC requests that the Court grant relief from the automatic stay for cause to stem further prejudice and hardship to AIC, particularly since: (i) AIC has determined that the Debtor was not entitled to payment of the amounts AIC paid to settle the NYAG Action; and, (ii) Lear Capital seeks to use this forum to access the remaining proceeds of the Argo Excess Policy to reorganize and/or cover potential losses from the Related Regulatory Investigations and Proposed TN Action (collectively, the "Other Matters"), despite the fact that those matters are not covered by the Argo Excess Policy.

      6.      The Court should grant AIC's relief from the automatic stay for several reasons. First, as demonstrated below, the facts satisfy the varying standards for determining "cause" under Section 362(d)(1) of the Bankruptcy Code.  Second, AIC's non-core claims can be efficiently and expeditiously litigated in a non-bankruptcy forum where state law governs.  Indeed, AIC's rights will be determined as a matter of state law by the terms, conditions, and exclusions of the relevant policies.  Given the straightforward nature of these issues, and the fact that there will be minimal (if any) discovery, litigating this coverage issue outside of this Court will not result in any delay of the bankruptcy proceedings. Third, as this matter is noncore and presents only issues of state law, even if this matter is retained by this Court in anticipation of an adversary proceeding, the Court would be limited to making proposed findings of fact and conclusions of law to the U.S. District Court.  Therefore, this matter will end up before a U.S. District Court in any event.  Fourth, the balance of the harms to AIC weighs in favor of granting the motion.  The Debtor has received a benefit to which it is not entitled and AIC has the contractual right to recover those funds. Allowing the Debtor to retain that benefit as well as continuing to submit other disputes for which no coverage is available would be inequitable.  Finally, because AIC is seeking a judicial

determination against non-Debtor Kevin DeMeritt, relief from the stay should be granted to allow AIC to pursue its claims against all appropriate parties in one action.

7.      For the reasons set forth herein, the Court should grant relief from the automatic stay to allow AIC to (i) to file the DJ Action in the appropriate U.S. District Court seeking a declaration of no coverage, and on that basis to liquidate but not enforce in the non-bankruptcy forum, the money AIC paid in connection with the NYAG Action; and (ii) obtain a declaration that no coverage is available for the Other Matters.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  While the procedural relief from the stay motion is core, the substantive issues as to which relief is sought are noncore as they are governed by state law

9.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The statutory and legal predicates for the relief requested herein are Bankruptcy Code Section 11.U.S.C. §362(d)(1), Bankruptcy Rule 4001(a), and Local Rule 4001-1.

## BACKGROUND

A.      **Lear Capital**

11.     Lear Capital, Inc., is a California Corporation which provides investment advice, engages in telemarketing activities, and sells precious metals/commodities.  As fully set forth below, Lear Capital's business practices are the subject of a number of investigations initiated by states' Attorneys General and the federal government.

12.     Upon information and belief, Defendant Kevin DeMeritt is a resident of the State

of California and is the founder, chairman, and majority shareholder of Lear Capital.  Kevin DeMeritt has been named as defendant in at least one lawsuit, as set forth below.

**B.    The Relevant Policies**

13.    Federal Insurance Company ("Chubb") issued a ForeFront Portfolio 3.0$^{\text{SM}}$, policy number 8259-8531 to Lear Capital for the policy period July 7, 2019 to July 7, 2020 (the "Primary Policy"). The Primary Policy's limit of liability is $5 million subject to a $25,000 retention for Insuring Clauses B. and C. of the Directors & Officers and Entity Liability Coverage Part ("D&O Coverage Part").  A copy of the Primary Policy is attached to the draft DJ Action complaint as Exhibit 1.

14.    As stated above, AIC issued to Lear Capital the Argo Excess Policy for the Policy Period July 7, 2019 to July 7, 2020.  The Argo Excess Policy contains a limit of liability of $5 million excess to $5 million in underlying insurance (excess of the relevant retention) and follows form to the Primary Policy except where otherwise noted.  A copy of the Argo Excess Policy is attached to the draft DJ Action complaint as Exhibit 2.

**C.    The Notices/Matters**

15.    Lear Capital provided notice and sought coverage under the Argo Excess Policy and the Primary Policy (collectively, the "Policies") for the NYAG Matter. AIC reserved its rights with regard to the NYAG Matter, including with respect to several terms, conditions, and exclusions of the Policies which serve to preclude or limit coverage.

16.    The parties to the NYAG Matter participated in a mediation on November 17, 2021. Ahead of this mediation, AIC reserved the right to seek reimbursement from the Insureds both individually, jointly or severally, of any settlement or payment of Defense Costs if it should be determined that there was no obligation to pay indemnity or to defend and indemnify the Insured

against certain claims pursuant to either the Primary Policy and/or Argo Excess Policy.

17.    The mediation resulted in a settlement of the NYAG Matter.  AIC contributed $3,401,424.70 to the settlement of the NYAG Matter, payment of which was made to Lear Capital on January 20, 2022. In agreeing to contribute to the settlement, AIC again confirmed to Lear Capital that AIC reserved all of its rights including the right to seek reimbursement of the settlement amount and any Defense Costs (as defined in the Policies).

18.    As noted above and in the draft DJ Action, certain exclusions and terms contained in the Policies serve to preclude coverage for the settlement of the NYAG Matter.  Accordingly, pursuant to California law, AIC is entitled to recover the entirety of the amount paid by AIC to Lear Capital in connection with the settlement of the NYAG Matter, as indemnity coverage is not available for the NYAG Matter under the Policies.  *See Buss v. Superior Court*, 16 Cal.4th 35 (1997) ("*Buss*"), *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal.4th 643 (2005) ("*MV Transportation*"), and *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal.4th 489 (2001) ("*Blue Ridge*").

19.    Lear Capital has also indicated it is seeking certain costs associated with the NYAG Matter, however, no such demands have been made.  It is AIC's position that coverage may be limited or precluded with regard to these costs as well.

**D.    The Debtor's Bankruptcy Filing and Subsequent Demands**

20.    On March 2, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, initiating this bankruptcy case for the purpose of avoiding liability from the various investigations (*see* Docket 148) and to avoid a determination of no coverage under the Policies.

21.    On March 29, 2022, the Debtor submitted the Proposed TN Action to AIC.  The correspondence and charges in the Proposed TN Action contend, among other things, that Lear

Capital had violated certain Tennessee statutes. That correspondence required the Debtor to provide a response, including documentation and information demonstrating compliance with Tennessee Securities Law, within ten days after receipt or the Notice of Hearing and Charges would be filed. Upon information and belief, the Notice of Hearing and Charges has not yet been filed. In the draft DJ Action AIC seeks a declaration of no coverage to the extent the Proposed TN Action is a "Related Claim" with the NYAG Matter.[3]

22.    On April 18, 2022 Lear Capital advised AIC that it would be seeking payment of defense and other costs associated with other matters which it claims are related to the NYAG Action, including, but not limited to: (i) a subpoena dated August 19, 2019 issued by the US Commodities and Futures Trading Commission ("CFTC") to Lear Capital, Inc. (and subsequent subpoena ad testificandum to DeMeritt) and (ii) an investigation by the California Department of Business Oversight which was subsequently expanded to include 44 states and jurisdictions (including apparently the Proposed TN Action) under the umbrella of the National American Securities Administrators Association.[4]   AIC to date has not paid any amounts on either of these matters.

23.    The Debtor has to date, not filed a plan of reorganization, and AIC is aware that the states investigating Lear Capital are seeking to dismiss the bankruptcy. AIC further understands that Lear Capital and the various states are attempting to resolve the issue, which increases the need for AIC to have clarity on coverage for the various investigations. *See ECF No.* 241 (*Joint Motion for Order Authorizing and Approving Settlement* [*with exhibits*])*; ECF No.* 251 (*Order*

---

[3]    As noted above, if the Proposed TN Action is unrelated to the NYAG Matter, coverage would be unavailable under the Policies as the Proposed TN Action is a Claim made after the end of the relevant Policy Period.

[4]    Upon information and belief, there are currently 29 state regulators that have been conducting coordinated investigations of Lear Capital, DeMeritt, and other associated individuals or entities for possible state law violations.

*Granting Joint Motion Approving Settlement*).

## RELIEF REQUESTED

24.     By this Motion, AIC respectfully requests that this Court enter the Proposed Order

granting relief from the automatic stay to allow AIC to file its DJ Action in the appropriate U.S.

District Court.  Alternatively, AIC respectfully requests leave to file an adversary complaint in

these bankruptcy proceedings seeking the relief sought in the DJ Action.

## BASIS FOR RELIEF

### I.    Cause Exists Under 11 U.S.C. § 362(d)(1).

25.     "Section 362(d) of the Bankruptcy Code provides that the Court shall grant

relief from the automatic stay for 'cause.' 11 U.S.C. § 362(d)(1)." *In re RNI Wind Down Corp*,

348 B.R. 286, 299 (Bankr. D. Del. 2006) (citations omitted).  In connection with a section

362(d)(1) motion "the party seeking relief from the stay must show that 'the balance of hardships

from not obtaining relief tips significantly in [its] favor.'" *Id.*  "The movant bears the initial burden

to produce evidence that cause exists to grant relief from the automatic stay; if the movant meets

its burden, then the burden shifts to [the] opposing party." *In re DBSI, Inc.*, 407 B.R. 159, 166

(Bankr. D. Del. 2009) (*citing In re Rexene*, 141 B.R. at 577); *see also In re RNI Wind Down Corp*,

348 B.R. at 299.

26.     "Except for lack of adequate protection, 'cause' is not defined by § 362(d)(1).

Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test,

examining the totality of the circumstances to determine whether sufficient cause exists to lift the

stay." *In re Abeinsa Holding, Inc.,* 2016 WL 5867039, at *2 (Bankr. D. Del. Oct. 6, 2016).

27.     As noted in *In re Chatkin*, 465 B.R. 54, 60 (Bankr. W.D. Penn. 2012) "a number

of courts have developed lists of factors to be considered as an aid in deciding whether to grant

stay relief to an unsecured creditor for cause (cites omitted)." *In re Sonmax Indus. Inc.* 907 F.2d

1280, 1286 (2d Cir. 1990). In *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984), the Bankruptcy

Court for the District of Utah developed a list of twelve factors:

> a. Whether relief would result in a partial or complete resolution of the issues;
>
> b. A lack of any connection with or interference with the bankruptcy case;
>
> c. Whether the other proceeding involves the debtor as a fiduciary;
>
> d. Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
>
> e. Whether the debtor's insurer has assumed full responsibility for defending it;
>
> f. Whether the action primarily involves third parties;
>
> g. Whether litigation in another forum would prejudice the interests of other creditors;
>
> h. Whether the judgment claim arising from the other action is subject to equitable subordination;
>
> i. Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
>
> j. The interests of judicial economy and expeditious and economical resolution of litigation;
>
> k. Whether the parties are ready for trial in the other proceeding; and
>
> l. Impact of the stay on the parties and the balance of harms.

*Id.* at 799-800. It is not necessary for a court to find that each factor is met before determining that

cause exists to grant relief from the automatic stay (indeed some factors may not be applicable to

a given situation). *See Id.*

28.     As applied to this case the *Curtis* factors demonstrate that cause exists to grant AIC

the relief requested.  First, the DJ Action involves a question of AIC's responsibilities for coverage of the Disputed Matters.  That is an independent and standalone issue which arises outside of the bankruptcy context and will be completely resolved by the appropriate District Court without interfering with the instant proceeding. Second, AIC did not assume responsibility for defending the Debtor.  Instead, AIC contributed to the settlement of the NYAG Matter subject to a reservation of rights to seek reimbursement of the settlement amount and any Defense Costs should it be determined that there was no obligation to pay those amounts.  AIC has (and continues to) expressly disclaim responsibility for defending the Debtor in the Other Matters.  Third, one of the two defendants in the DJ Action, Kevin DeMeritt, is a third party who is not a debtor in this bankruptcy proceeding.  Fourth, litigating the DJ Action would not prejudice other creditors because the Argo Excess Policy is not otherwise available to pay such claims. Fifth, should AIC prevail on the DJ Action, it will receive a declaration that the Debtor is not entitled to coverage as to the Matters and AIC is entitled to recoup amounts already paid.  To collect fees AIC has already paid it would have to liquidate its claim and seek enforcement from this Court.  Stated differently, the ultimate result of the DJ Action is not subject to equitable subordination nor is it avoidable by the Debtor.  Sixth, resolution of the DJ Action requires consideration of complex state law governed insurance issues best determined by a California District Court in the first instance instead of burdening this Court with a noncore natter.  Finally, even if any of the parties to the instant action would be harmed by granting AIC the relief sought (which they will not) the balance of the harms weighs in favor of granting the relief.  Specifically, the Debtor is currently enjoying a benefit it is not entitled to and will (and has) sought to take advantage of rights it does not have. If this Motion is denied, and AIC is required to seek redress from this Court at a future time, the Debtor will continue to seek to take advantage of its ill-gotten gains and non-existent contract

rights to fund a bankruptcy. Furthermore, given the nature of issues presented in the DJ Action, requiring AIC to prosecute the DJ Action before this Court will require the Court to resolve non-bankruptcy state law insurance issues which are more easily and efficiently decided by the District Court.

**II.    Application of the Discretionary Abstention Factors Establishes Cause**

29.    Cause may also be established by demonstrating that abstention under 28 U.S.C. § 1334 is appropriate. *See e.g. In re Ward*, 1999 WL 33581614, at \*4 (Bankr. S.D. Ga. Aug. 16, 1999) (because permissive abstention was appropriate, cause existed to lift the automatic stay pursuant to Rule 362(d)(1)). *See also, In re Drauschak*, 481 B.R. 330 (Bankr. E.D. Pa. 2012) ("The factors supporting mandatory abstention, mentioned above, including judicial economy, would also justify applying the aforementioned exception to modify the automatic stay to permit the state court to adjudicate the entire dispute, including the unsecured counterclaims raised by the Piazza defendants." (*citing Pursifull v. Eakin*, 814 F.2d 1501, 1505–06 (10th Cir.1987) (a decision to abstain constitutes cause for relief from the automatic stay); and *In re Mid–Atlantic Handling Systems, LLC*, 304 B.R. 111, 130–31 (Bankr. D. N.J.2003)); and *In re: Morgan*, 2010 WL 1417325, at \*2 (Bankr. S.D. Fla. Apr. 7, 2010) ("[a]lthough the Bankruptcy Code fails to define precisely what constitutes "cause," for stay relief purposes, courts have held that cause exists to allow a state court action to proceed where the bankruptcy court may abstain from deciding those issues.").

a.    Abstention Standards

30.    "[28 U.S.C.] 1334(c) provides for two types of abstention, mandatory abstention and discretionary abstention. *Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 710 (D. Del. 2006).

31.    Mandatory abstention (found in 28 U.S.C. § 1334(c)(1)) requires a Court to abstain

from determining an issue under certain circumstances.  According to the District of Delaware "[t]here are six requirements for mandatory abstention under section 1334(c)(2) of title 28: (1) the motion to abstain is timely; (2) the action is based upon a state law claim or cause of action; (3) an action has been commenced in state court; (4) the action can be timely adjudicated; (5) there is no independent basis for federal jurisdiction which would have permitted the action to be commenced in federal court absent bankruptcy; and (6) the matter is non-core*." In re Mobile Tool International*, 320 B.R. 552, 556 (Bankr. D. Del. 2005) (citations omitted).  To be entitled to mandatory abstention the moving party must establish all of those requirements. *Id.*

32.     Discretionary abstention (codified in 28 U.S.C. 1334(c)(3)), on the other hand, is a flexible doctrine which gives a court discretion to abstain from considering an issue even if the requirements of § 1334(c)(2) are not satisfied. *Id.*  In determining whether to exercise its discretion courts consider twelve factors

    a.  The effect or lack thereof on the efficient administration of the estate;

    b.  The extent to which state law issues predominate over bankruptcy issues;

    c.  The difficulty or unsettled nature of applicable state law;

    d.  The presence of a related proceeding commenced in state court or other non-bankruptcy court;

    e.  The jurisdictional basis, if any, other than section 1334;

    f.  The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

    g.  The substance rather than the form of an asserted "core" proceeding;

    h.  The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

i.   The burden on the court's docket;

j.   The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

k.   The existence of a right to a jury trial; and

l.   The presence of non-debtor parties.

*In re Fruit of the Loom, Inc.,* 407 B.R. 593, 599-600 (Bankr. D.Del. 2009).

33.     Unlike mandatory abstention, a moving party does not need to demonstrate each of these factors and no one factor is determinative.  *In re Sun Healthcare Group, Inc.*, 267 B.R. 673, 679 (Bankr. D. Del. 2000) ("evaluating the twelve factors is not a mathematical formula."). Furthermore, discretionary abstention is available even if the issues is considered a "core matter" – which this one is not.  *In re RNI Wind Down Corp.*, 348 B.R. at 295, 296 (citing, *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.*), 304 F.3d 223, 232 (2d Cir.2002) ("Permissive abstention from core proceedings under 28 U.S.C. § 1334(c)(1) is left to the bankruptcy court's discretion.").

   b.   Permissive Abstention is Appropriate Here[5]

34.     As discussed above, the DJ Action seeks a declaratory judgment that, based on the language of the Policy, AIC is not liable for payment of any amounts whether for liability or defense costs in connection with the Matters and is entitled to recoup the money it had improperly paid on the Debtor's behalf in the NYAG Action.

35.     In *In re Pompelia,* the Bankruptcy Court for the Western District of Pennsylvania found that similar facts warranted the exercise of discretionary abstention. 560 B.R. 422 (Bankr. W.D. Pa. 2016).  In that case, Larry and Brenda Pompelia owned a Pennsylvania limited liability

---

[5]     The facts here do not require mandatory abstention because, while AIC is able to satisfy most of the requirements, it has not "commenced [an action] in state court".  However, as discussed herein, that fact does not preclude the exercise of discretionary abstention.

company which operated a bar known as the Final Score Sports Saloon.  *Id.* at 424.  Three minors

died in a motor vehicle accident after being served alcohol at the Saloon.  *Id.*  The minors' estates

filed a wrongful death action against the Saloon and the debtors in state court, however, that action

was stayed when the Pompelias filed a voluntary Chapter 7 petition.  *Id.*  The Pompelias' insurer,

PPCIGA, filed an adversary action in the bankruptcy seeking a declaratory judgment that

exclusionary language in the policy relieved it of any obligation to defend or indemnify the

Pompelias or the LLC.  *Id.* at 424-25.  The Pompelias moved to dismiss the adversary complaint

for lack of jurisdiction.  *Id.* at 425.

36.    The Court granted the Pompelias' motion for lack of jurisdiction.  In addition, the

Court held, *sua sponte,* that even if jurisdiction existed it would exercise its discretion to abstain

from considering the issue.  *Id.* at 427.  In analyzing the twelve factors cited above, the Court

determined that all but two favored abstention.  Specifically: (i) the adversary proceeding seeking

a declaratory judgement regarding insurance coverage would not have a significant effect on the

efficient administration of the estate; (ii) state law issues predominated over bankruptcy issues

because the adversary proceeding was based on interpretation and applicability of specific terms

of a contract that was governed by Pennsylvania state law and no provisions of the Bankruptcy

Code were implicated; (iii) the issues presented in the adversary complaint appear to involve

straightforward issues of insurance coverage[6]; (iv) related proceedings had already been

commenced in Pennsylvania State Courts; (v) as a contract action the only basis for the Bankruptcy

Court's jurisdiction was 28 U.S.C. § 1334; (vi) the adversary proceeding will not have a

conceivable effect on the bankruptcy case because even if the Pompelias were entitled to coverage

---

[6]    Recognizing the nature of the applicable law, the Court said "even if a matter does not involve unsettled issues of state law, where the state law issues so predominate the proceeding ..., this factor weighs in favor of having the state court decide it. … State law issues are the only issues involved in the adversary proceeding." *Id.*

any payment made would not be considered property of the estate since the estate will not ultimately keep those funds; (vii) as an insurance coverage case it does not arise in, arise under, nor is related to, the Bankruptcy Code; (viii) there were "no core bankruptcy issues, [therefore] severance of state law claims is not necessary"; (ix) the claims in the adversary case are generally the kind entitled to a jury trial (even though no party to the adversary proceeding or the state action had requested a jury trial); and (x) the adversary complaint named the debtors and non-debtors as defendants. *Id.* 427-428.  The only factors weighing against abstention were the lack of burden on the court's calendar and the lack of evidence of forum shopping. *Id.* at 428.

37.    As was the case in *Pompelia,* the facts of this case weigh heavily in favor of discretionary abstention.

38.    First, the filing of the DJ Action will have little to no impact on the administration of the Debtor's estate since insurance issues should not impede the reorganization process.

39.    Second, the issues in the DJ Action pertain to insurance coverage and/or reimbursement which is an issue of state law and does not implicate any provision of the Bankruptcy Code.

40.    Third, coverage law is well established under California law (the applicable state law here).  While the DJ Action does not involve matter of unsettled California law, as the Court noted in *Pompelia,* "where the state law issues so predominate the proceeding ..., this factor weighs in favor of" abstention.  560 B.R. at 428.

41.    Fourth, while there are no related proceedings in a state or another non-bankruptcy court, but for the Debtor's actions (discussed below) AIC could and would have filed the DJ Action prior to the Petition Date which would have established this factor.  Furthermore, regardless of its claim against the Debtor, AIC intends to proceed against Mr. DeMeritt.

42.     Fifth, there is no independent jurisdictional basis for Bankruptcy Court jurisdiction other than 28 U.S.C. § 1334.

43.     Sixth, as in *Pompelia*, the DJ Action will not have a conceivable effect on the bankruptcy case because even if the Debtor was entitled to coverage any payment made would not be considered the Debtor's property because those funds would be used only to satisfy certain claims and not available for to satisfy the Debtor's creditors as a whole. *Id.* at 428.

44.     Seventh, as noted above, the substance of the DJ Action is "non-core" as it solely involves substantive state law including insurance law.

45.     Eighth, the claims to be asserted by AIC are easily severed from the bankruptcy matters since the DJ Action will involve substantive state law contract and insurance issues. Furthermore, a court could enter a declaration of no (or limited) coverage and liquidate the claims of AIC arising thereto, which could be enforced by the Bankruptcy Court.

46.     Ninth, the Court's docket would be relieved of an insurance case involving the interpretation of multiple policy provisions which have no bankruptcy component.  In addition, this Court would be limited to issuing proposed findings of fact and conclusions of law for *de novo* review by the District Courts. Therefore, it is efficient to proceed directly to the District Courts and not unnecessarily burden the Bankruptcy Court.

47.     Tenth, it is clear the Debtor engaged in forum shopping by filing for bankruptcy in order to avoid the various investigations, as well as the DJ Action, and should not obtain the benefit of those efforts.  This is demonstrated by the Debtor's decision to wait until after the Petition Date to submit claims to AIC despite knowing about the investigations and/or claims against it.  The Debtor purposefully chose to submit these matters under the protection of the Bankruptcy Court and should not be allowed to benefit from its deceptive actions.  That fact

notwithstanding, AIC is prepared to file the DJ Action immediately upon entry of the Order sought herein.  AIC submits that the DJ Action can be timely adjudicated, particularly given that AIC anticipates that limited or no discovery will be necessary and the case can expeditiously proceed to summary judgment.

48.     Eleventh, because AIC is seeking relief to liquidate its claim arising from a declaration that there is no coverage, part of the AIC claims would be triable by a jury which will be demanded by AIC and which is not available in Bankruptcy Court.  *See, In re: AgFeed USA, LLC, v. Goldman Kurland & Mohidin, LLP*, 565 B. R. 556 (D. Del 2016).

49.     Finally, as noted above, Mr. DeMeritt, who is a non-debtor and a person not within the jurisdiction of this Court, will be a party to the DJ Action.

50.     When viewed as a whole, the facts at issue here demonstrate that cause exists for relief from the automatic stay and AIC's motion should be granted.

## WAIVER OF BANKRUPTCY RULE 4001(a)(3)

51.     Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3).

52.     AIC respectfully requests that this Court grant the requested relief effective immediately, so that AIC may expeditiously file its DJ Action and seek clarity on the coverage issues set forth herein.

## RESERVATION OF RIGHTS

53.     AIC expressly reserves all of its rights with respect to this Motion, including the right to amend or supplement this Motion at any time prior to the final hearing thereon.

## NOTICE

54.    AIC will serve notice of this Motion on: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Debtor; and, (iii) all parties entitled to receive notice pursuant to Bankruptcy Rule 2002. AIC submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

55.    No prior request for the relief sought in this Motion has been made to this Court or any other court.

## CONCLUSION

**WHEREFORE,** AIC respectfully requests that the Court enter the Proposed Order:

(i)    granting relief from the automatic stay to allow AIC to file the attached DJ Action and pursue the ancillary state law damages claims to liquidation only;

(ii)    waiving the 14-day stay provided for in Bankruptcy Rule 4001(a)(3); and

(iii)    granting such other and further relief as the Court deems just and proper.

[*Remainder of page intentionally left blank*]

Dated: August 10, 2022          Respectfully Submitted,
       Wilmington, Delaware

                                 */s/ Raymond H. Lemisch*
                                 **KLEHR HARRISON HARVEY BRANZBURG LLP**
                                 Raymond H. Lemisch (DE Bar No. 4204)
                                 919 N. Market Street, Suite 1000
                                 Wilmington, Delaware 19801
                                 Telephone: (302) 426-1189
                                 Email: rlemisch@klehr.com

                                 – and –

                                 **ROPERS MAJESKI PC**
                                 Jung H. Park (admitted *pro hac vice*)
                                 Geoffrey W. Heineman (admitted *pro hac vice*)
                                 750 Third Avenue, 25th Floor
                                 New York, New York
                                 Telephone: (212) 668-5927
                                 Email: jung.park@ropers.com
                                         geoffrey.heineman@ropers.com

                                 Steven G. Polard (admitted *pro hac vice*)
                                 445 South Figueroa Street, 30th Floor
                                 Los Angeles, California 90071
                                 Telephone: (213) 312-2000
                                 Email: steven.polard@ropers.com

                                 *Counsel to Argonaut Insurance Company*

19