# **EXHIBIT D**

Liquidation Analysis

LEAR CAPITAL, INC.
LIQUIDATION ANALYSIS

A chapter 11 plan cannot be confirmed unless the bankruptcy court determines that the plan is in the "best interests" of all holders of claims and interests that are impaired by the plan and that have not accepted the plan. The "best interests" test requires a bankruptcy court to find either that (i) all members of an impaired class of claims or interests have accepted the plan or (ii) the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

The Debtor has prepared this liquidation analysis ("***Liquidation Analysis***"), based on a hypothetical liquidation under chapter 7 of the Bankruptcy Code. It is assumed, among other things, that the hypothetical liquidation under chapter 7 would commence under the direction of a court-appointed trustee (the "***Trustee***") and would continue for a period of time, during which all of the Debtor's material assets would be sold, deposits would be refunded, and the cash proceeds, net of liquidation related costs, would be distributed to creditors in accordance with applicable law.

The Liquidation Analysis has been prepared assuming that the Debtor converted to chapter 7 bankruptcy on May 31, 2023 (the "***Conversion Date***").

The determination of the costs of, and proceeds from, the hypothetical liquidation of the Debtor's assets in a chapter 7 case is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtor, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtor, its management, and its advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual chapter 7 liquidation.

THE LIQUIDATION ANALYSIS IS NOT INTENDED AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE. THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTOR'S ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED IN AN ACTUAL LIQUIDATION. THIS ANALYSIS ASSUMES "LIQUIDATION VALUES" BASED ON THE DEBTOR'S BUSINESS JUDGEMENT. THE RECOVERIES SHOWN DO NOT CONTEMPLATE A SALE OR SALES OF BUSINESS UNITS ON A GOING CONCERN BASIS.

THE UNDERLYING FINANCIAL INFORMATION IN THE LIQUIDATION ANALYSIS WAS NOT COMPILED OR EXAMINED BY ANY INDEPENDENT ACCOUNTANTS. NEITHER THE DEBTOR NOR ITS ADVISORS MAKE ANY REPRESENTATIONS OR WARRANTIES THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.

In order to maximize recoveries to the Debtor's creditors, this Liquidation Analysis assumes that a liquidation of the Debtor would occur over a four month period following the Conversion Date (the "***Liquidation Period***"). This Liquidation Analysis assumes that, during the Liquidation Period, the Trustee would (i) employ some existing employees for the Liquidation Period, equal to 50% of existing administrative personnel plus a stay bonus pool equal to $75,000; and (ii) retain professionals and advisors to complete liquidation, including tax professionals.

The Liquidation Analysis should be read in conjunction with the following notes and assumptions:

## Summary Notes to Liquidation Analysis

1.    *Additional claims*. The cessation of business in a liquidation is likely to trigger certain claims that otherwise would not exist under a plan.  Some of these claims could be significant and may be entitled to priority in payment over general unsecured claims.  Those priority claims would be paid in full before any proceeds from liquidation would be made available to pay general unsecured claims or to make any distribution in respect of equity interests.  While some of these claims could be significant, no adjustment has been made for these potential claims unless specified in the assumptions to the Liquidation Analysis.

2.    *Dependence on unaudited financial statements*. This Liquidation Analysis is based, in part, on unaudited financial statements, which may differ from audited results.

3.    *Preference or fraudulent transfers*. No recovery or related litigation costs have been attributed to any potential avoidance actions under the Bankruptcy Code, including potential preference or fraudulent transfer actions due to, among other issues, uncertainty and anticipated disputes about these matters.

4.    *Chapter 7 liquidation costs and length of liquidation process*. The Debtor has assumed that during the Liquidation Period, the Trustee would retain a 50% of existing administrative employees plus a stay bonus pool of $75,000.  The reduced number of personnel would be retained in order to pursue orderly sales of substantially all of the remaining assets, collect receivables, arrange distributions, and otherwise administer and close the estate. This Liquidation Analysis assumes the liquidation would be completed approximately four months after initiating the Conversion Date.  In an actual liquidation, the wind-down process and time period(s) could vary, thereby impacting recoveries.  For example, the potential for priority, contingent, and other claims, litigation, rejection costs, and the final determination of allowed claims could substantially impact both the timing and amount of the distribution of the asset proceeds to the creditors.  Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtor was, in fact, to undergo such a liquidation. Pursuant to section 726 of the Bankruptcy Code, the allowed administrative expenses incurred by the Trustee, including, but not limited to, expenses incurred in connection with selling the Debtor's assets, will be entitled to payment in full prior to any distribution to chapter 11 administrative claims. The estimate used in the Liquidation Analysis for these expenses includes estimates for certain legal, accounting, and other professionals, as well as Trustee fees in accordance with the chapter 7 trustee fee guidelines.

5.    *Distribution of net proceeds*. Priority and administrative claim amounts, professional fees, trustee fees, and other such claims that may arise in a liquidation scenario would be paid in full from the liquidation proceeds before the balance of those proceeds is made available to pay prepetition priority, secured, and unsecured claims.  Under the absolute priority rule, no junior creditor would receive any distribution until all senior creditors are paid in full, and no equity holder would receive any distribution until all creditors, are paid in full.  The assumed distributions to creditors as reflected in the Liquidation Analysis, are estimated in accordance with the absolute priority rule.

## Liquidation Analysis

| Liquidation Proceeds | | | |
|---|---|---|---|
| **Net Proceeds** | **Gross Value** | **Liquidation Value** | |
| ($ in '000s) | | $ | % |
| Projected Unrestricted Cash | $      2,894 | $      2,894 | 100% |
| **Total Unrestricted Cash** | $      2,894 | $      2,894 | |
| Receivables | | | |
| Wilshire Coin AR | $        164 | $        156 | 95% |
| Custodian AR | 7 | 7 | 95% |
| Other AR | 313 | - | 0% |
| **Total AR** | $        484 | $        163 | |
| Inventory | | | |
| IRA Inventory | $           - | $           - | 100% |
| Buyback Inventory | 1,126 | 1,126 | 100% |
| **Total Inventory** | $      1,126 | $      1,126 | |
| Fixed Assets | | | |
| Computers & Equip. | $          25 | $             1 | 5% |
| Furniture & Fixtures | 18 | 1 | 5% |
| Leasehold Improvements | 8 | 0 | 5% |
| **Total Fixed Assets** | $          51 | $             3 | |
| **TOTAL GROSS LIQUIDATION PROCEEDS** | | $      4,185 | |
| Chapter 11 Admin Expenses | | | |
| Accrued Professional Fees | | $        288 | |
| Accrued Legal Fees (Non Bankruptcy) | | 35 | |
| Accrued Payroll & Commission | | 156 | |
| Accrued Bonus Deferral | | 394 | |
| Deferred Executive Management Payroll | | 333 | |
| WARN Act Liability | | 497 | |
| Accounts Payable & Accrued Liabilities | | 385 | |
| **Total Chapter 11 Admin Expenses** | | $      2,089 | |
| **PROCEEDS NET OF CH. 11 ADMIN EXPENSES** | | $      2,096 | |
| Chapter 7 Admin Expenses | | | |
| Winddown Expenses | | $      1,589 | |
| Chapter 7 Trustee Fees | | 211 | |
| Chapter 7 Professional Fees | | 419 | |
| **Total Chapter 7 Admin Expenses** | | $      2,219 | |
| **TOTAL NET LIQUIDATION PROCEEDS** | | $        (122) | |

## Detailed Notes

**A.    Unrestricted Cash**

- Unrestricted cash consists of cash in the Debtor's cash management system on the Conversion Date that has been earned for completed customer transactions.

- The Liquidation Analysis assumes that deposits paid to the Debtor prior to the Conversion Date will be returned to customers.  The unrestricted cash in the Liquidation Analysis does not include these deposits.

- Unrestricted cash is the result of projected cash flow projections completed by the Debtor through the Conversion Date.  The cash flow projections were based on a review of transactions currently in progress with assumptions regarding the time typically required to complete pending transactions.

**B.    Receivables**

- Wilshire Coin AR balances reflect amounts owed by Wilshire Coin (the Debtor's wholesale partner) for buyback coins that are delivered to Wilshire Coin for sale to Wilshire Coin. Other AR balances reflect AR that have been carried on the Debtor's books throughout this case; these balances are significantly aged.

- Wilshire Coin and Custodian receivables are expected to be highly collectible, but there could be risk that the obligors could make Claims against the estate in a liquidation and attempt to setoff their Claims with the Debtor's receivables.  The Liquidation Analysis discounts these receivables by 5%, to account for these risks.  The "Other AR" is projected to be uncollectible given their age.

**C.    Inventory**

- Inventory is projected to be comprised of buyback inventory.  This inventory is comprised of coins that are purchased from customers under the Debtor's buyback programs.  The value of these coins is based on what the Debtor pays to their customers to acquire them.  The Liquidation Analysis assumes that the Trustee could recoup all of this value without discount.

**D.    Fixed Assets**

- The Debtor's fixed assets are comprised of computers, equipment, furniture, and fixtures. The gross value reflected in the Liquidation Analysis is based on the accrued balances in the Debtor's accounting records, and do not reflect their expected market value.  In a liquidation, only a limited recovery (5% of book value) is assumed.

**E.    Chapter 11 Administrative Expenses**

- The Liquidation Analysis estimates a total of approx. $2.1M in accrued and unpaid administrative expenses owed through the Conversion Date.  These amounts include accrued and unpaid professional fees, payroll and wages, and normal accounts payable.

**F.    Chapter 7 Administrative Expenses**

- The Liquidation Analysis assumes that the Trustee will spend 4 months winding down the Debtor's operations with a small staff of remaining employees.  Projected winddown costs therefore include approximately $430K for salaries and retention payments paid to

remaining employees, approximately $230K for completing and filing tax returns and issuing final W-2s, approximately $815K for rent and insurance costs during the winddown period, and approximately $100K for miscellaneous other needs (e.g., record storage).

- Trustee fees are calculated according to section 326 of the Bankruptcy Code.

- Chapter 7 Professional fees include estimates for certain legal and financial advisory professionals required during the wind-down period. The fees for these professionals are estimated to be 10% of gross asset values.

**G.    Zero Net Distributable Amounts**

- The Liquidation Analysis projects that there would be insufficient funds in a chapter 7 for distribution to creditors.  The projected recoveries for all creditors is, therefore, 0.0%.