**<u>EXHIBIT 1</u>**

**Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

InRe:

LEAR CAPITAL, INC., a California corporation,

Debtor.[1]

Chapter 11 (Subchapter V)

Case No. 22-10165 (BLS)

## SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION
## PROPOSED BY THE DEBTOR

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISHTO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY [•]MAY 30, 2023 at 4:00 p.m. (prevailing Eastern time) ("Plan Objection Deadline").**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN AND/OR OPTING OUT OF THE THIRD PARTY RELEASE, MUST BERETURNED BY [•]MAY 30, 2023 at 4:00 p.m. (prevailing Eastern time). THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS OR SUBMITTED THROUGH THE FOLLOWING E-BALLOTING PORTAL:**

**IF BY FIRST CLASS MAIL:**

BMC Group
Attn: Lear Plan Ballot
PO Box 90100
Los Angeles, CA 90009

---

[1] The last four digits of the Debtor's federal tax identification number are 7197. The Debtor's address is 1990 S. Bundy Drive, Suite 600, Los Angeles CA 90025.

16079586/1

**IF BY OVERNIGHT MAIL OR HAND DELIVERY:**

BMC Group
Attn: Lear Plan Ballot
3732 West 120th Street
Hawthorne, CA 90250

**IF SUBMITTED THROUGH THE E-BALLOTING PORTAL:**

The Voting Agent will accept Ballots if properly completed through the E-Balloting Portal. To submit your Ballot via the E-Balloting Portal, visit https://cases.creditorinfo.com/learcapital and click on the "E-Ballot" section of the Voting Agent's website for the Debtor, and follow the instructions to submit your Ballot.

**IMPORTANT NOTE: YOU WILL NEED THE UNIQUE E-BALLOT ID ON YOUR BALLOT TO RETRIEVE AND SUBMIT YOUR CUSTOMIZED ELECTRONIC BALLOT.**

**The Voting Agent's E-Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.**

**If your Ballot is not received by the Voting Agent on or before the Voting Deadline, and such Voting Deadline is not extended by the Debtor, your vote will not be counted.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR [·]JUNE 8, 2023 at 11:00 a.m. (prevailing Eastern time) IN COURTROOM NO. 1 AT THE U.S. BANKRUPTCY COURT, DISTRICT OF DELAWARE, 824 N. MARKET STREET, WILMINGTON, DELAWARE 19801.**

**YOUR RIGHTS MAY BE AFFECTED BY THIS PLAN. YOU SHOULD CONSIDER DISCUSSING THIS DOCUMENT WITH AN ATTORNEY.**

~~DATED: April 14, 2023~~                    ~~MORRIS JAMES LLP~~

Wilmington, Delaware

By: */s/ Jeffrey R. Waxman*
Jeffrey Waxman (DE Bar No. 4159)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
Telephone:  (302) 888-6959
Facsimile:   (302) 571-1750
Email: JWaxman@morrisjames.com
Email: BKeilson@morrisjames.com
-and-

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
Alan J. Friedman (CA Bar No. 132580)
Melissa Davis Lowe (CA Bar No. 245521)
100 Spectrum Center Drive, Suite 600
Irvine, CA 92618
Telephone:  (949) 340-3400
Facsimile:   (949) 340-3000
Email:  AFriedman@shulmanbastian.com
Email:  MLowe@shulmanbastian.com

Attorneys for Debtor and Debtor in Possession

3

# TABLE OF CONTENTS

Page

**SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION**............................................1

**ARTICLE 1 - HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR**.........~~11~~5

  1.  Nature of the Debtor's Business. ............................................................~~11~~5

  2.  History of Business Operations of the Debtor. ...............................~~11~~5

  3.  Filing of the Debtor's Chapter 11 Case. ...........................................~~12~~6

  4.  Legal Structure and Ownership. ...........................................................~~12~~6

  5.  Debtor's Assets and Liabilities. ...........................................................~~12~~6

  6.  Current and Historical Financial Conditions.................................~~12~~6

  7.  Events Leading to the Filing of the Bankruptcy Case. ...............~~12~~6

  8.  Significant Events During the Bankruptcy Case. ..........................~~13~~7

  9.  Projected Recovery of Avoidable Transfers ...................................~~16~~11

**ARTICLE 2 - THE PLAN**.............................................................................~~16~~11

  1.  Unclassified Claims. ...............................................................................~~17~~12

      a.  Administrative Expenses...............................................................~~17~~12

      b.  Post-Confirmation Professional Fee Claims...........................~~18~~13

      c.  Priority Tax Claims. .......................................................................~~19~~14

      d.  Insurance............................................................................................~~19~~14

  2.  Classes of Claims and Equity Interests. ..........................................~~20~~15

      a.  Classes of Secured Claims. ...........................................................~~20~~15

      b.  Classes of Other Priority Claims. ...............................................~~21~~16

      c.  Classes of General Unsecured Claims. .......................................~~21~~16

      d.  Class of Equity Interest Holders. .................................................~~23~~18

      e.  Unfiled Customers............................................................................~~23~~18

      f.  Subordinated Claims and Equity Interests. ...............................~~25~~20

  3.  Treatment of Claims and Claims Objections. ................................~~25~~20

      a.  Allowance of Claims .......................................................................~~25~~20

      b.  Claims Administration Responsibilities .....................................~~25~~21

      c.  Estimation of Claims .......................................................................~~26~~21

      d.  Adjustment to Claims ......................................................................~~26~~21

      e.  Disallowance of Claims...................................................................~~26~~21

      f.  Amendments to Claims ...................................................................~~27~~22

      g.  No Distributions Pending Allowance ..........................................~~27~~22

h. Duplicative Claims.................................................................................2722

i. Disallowance of Claims With Insufficient Information..............................2722

4. Treatment of Executory Contracts and Unexpired Leases...........................2723

5. Means for Implementation of the Plan......................................................2824

a. Funding the Plan......................................................................................2824

6. Payments.................................................................................................2924

a. Responsibility for Making Payments.........................................................2924

b. Disputed Claims.....................................................................................2924

c. Unclaimed Payments...............................................................................2925

d. Payment Date and Location.....................................................................3025

e. Undeliverable Distribution Reserve.........................................................3026

f. De Minimis Payments.............................................................................3126

g. Tax Requirements...................................................................................3126

7. Legal Compliance.....................................................................................3127

8. Post-Confirmation Management................................................................3228

9. Preservation of Causes of Action..............................................................3228

10. Dissolution of Committee........................................................................3329

11. Tax Consequences of the Plan.................................................................3329

**ARTICLE 3 - FEASIBILITY OF PLAN** .........................................................**3429**

1. Ability to Initially Fund Plan....................................................................3429

2. Ability to Make Future Plan Payments And Operate Without FurtherReorganization..3430

**ARTICLE 4 - LIQUIDATION ANALYSIS** ......................................................**3430**

**ARTICLE 5 - DISCHARGE, RELEASES AND INJUNCTIONS** .....................**3430**

1. Discharge.................................................................................................3430

2. Third Party Releases.................................................................................3531

3. Exculpation and Limitation of Liability.....................................................3531

4. Injunction................................................................................................3631

5. Protection of Regulatory Authority............................................................3632

6. Remedies Upon Default.............................................................................3632

**ARTICLE 6 - GENERAL PROVISIONS** .........................................................**3733**

1. Title to Assets..........................................................................................3733

2. Binding Effect..........................................................................................3733

3. Severability..............................................................................................3733

4. Retention of Jurisdiction by the Bankruptcy Court.....................................3733

5.   Headings. .................................................................................................~~38~~34

6.   Successors and Assigns. ..........................................................................~~38~~34

7.   Governing Law. ......................................................................................~~38~~34

8.   Modification of Plan. ..............................................................................~~38~~34

9.   Reservation of Rights. .............................................................................~~39~~35

10.    Final Decree. ........................................................................................~~39~~35

**ARTICLE 7 - CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE** ...........~~39~~**35**

1.   Conditions Precedent to Confirmation. ....................................................~~39~~35

2.   Conditions Precedent to the Effective Date. ............................................~~39~~35

3.   Waiver of Conditions. .............................................................................~~40~~36

4.   Effect of Failure of Conditions. ...............................................................~~40~~36

5.   Filing of Notice of the Effective Date. .....................................................~~40~~36

**ARTICLE 8 - ATTACHMENTS** ..............................................................................~~40~~**36**

**ARTICLE 9 - DEFINITIONS** ...................................................................................~~41~~**37**

1.   Rules of Interpretation. ...........................................................................~~48~~44

2.   Computation of Time. .............................................................................~~48~~45

3.   Governing Law. ......................................................................................~~48~~45

4.   Reference to Monetary Figures. ...............................................................~~49~~46

5.   Controlling Document. ............................................................................~~49~~46

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Plan will be funded with available Cash on hand on the Effective Date, a contribution to be made by Kevin DeMeritt (the "Insider Contribution"), and if necessary, revenue from ongoing operations of the Debtor. On the Effective Date, Mr. DeMeritt will contribute an amount sufficient, when combined with the Cash on hand, to provide a total of $5.5 million (the "Customer Fund") to pay Allowed Class 3 Claims and Unfiled Customers as more fully described herein. The Customer Fund will be used to fund distributions to Allowed Class 3 Claims and Unfiled Customers only, such that the distribution to Allowed Class 3 Claims and to Unfiled Customers in the aggregate will total $5.5 million, exclusive of the costs of administration.

Allowed Class 3 Claims will receive a one-time payment in the amount set forth in Exhibit B hereto, calculated using the Recovery Calculation, within 30 days of the Effective Date. The Unfiled Customers will receive a Pro Rata share of the Customer Fund remaining after Allowed Class 3 Claims receive the amount provided for in this Plan. Allowed General Unsecured Claims of Ongoing Vendors will receive payment in full within 30 days of the Effective Date or if not yet due, when due according to ordinary business practices.

The Plan is the culmination of extensive negotiations between the Debtor and various parties, including the Committee and the Participating States, to address a number of concerns primarily with respect to what customers will receive under the Plan. The parties worked very hard to reach acceptable terms, which such terms shall be implemented through the Plan. Specifically, the Debtor believes that, if it were to object to Claims filed by the Debtor's customers (Class 3 Creditors), most - if not all - of those Class 3 Creditors would receive no recovery from the Estate. Even if certain Claims were ultimately Allowed, the Debtor believes that the ~~Creditor~~ Creditors would receive nothing in a liquidation as demonstrated in the liquidation analysis found at Exhibit ~~D~~A. Moreover, it is the Debtor's view that even if no impaired Class of Claims votes to accept the Plan and must seek to confirm the Plan on a non-consensual basis, the amount to be paid to Allowed Class 3 Claims would be far less than as proposed under this Plan. Further, the Debtor asserts it is under no obligation to pay anything to the Unfiled Customers because, among other things, the Debtor has no substantive liability and/or the statute of limitations for asserting such claims has passed. The Committee and the Participating States dispute the Debtor's assertions. In order to avoid lengthy and costly litigation, the Debtor and the Committee reached a resolution whereby the Class 3 Creditors (customers who filed Proofs of Claims) will receive a distribution based on the Recovery Calculation that was negotiated between the Debtor and the Committee. In addition, the Unfiled Customers, who would otherwise receive no distribution in this case, will receive a distribution pursuant to the terms set forth herein. The Debtor believes the resolution is fair and equitable in that it provides a recovery to customers who otherwise would likely receive nothing under the Plan. If any Class 3 Creditor disagrees with the Recovery Calculation as it applies to his/her/its claim, he/she/it must object to the Plan by the Plan Objection Deadline.

The chart below reflects the proposed treatment of Claims and Equity Interests under the Plan:

| Class | Claim/Equity Interest | Treatment | Approximate Amount Owed on Effective Date | Projected Recovery Under the Plan |
|---|---|---|---|---|
| N/A | Administrative Expense Claim | Each Holder of an Allowed Administrative Expense Claim shall receive payment in Cash in full on the Effective Date. | $0.00 | 100% |
| N/A | Professional Fee Claims | Upon Bankruptcy Court approval, Professional Fee Claims shall be promptly paid in full. | $300,000.00 (approx.) | 100% |
| N/A | Priority Tax Claims | Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor agree to a less favorable treatment, pursuant to section 1129(a)(9) of the Bankruptcy Code, each Holder of such Allowed Priority Tax Claim shall receive the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of the Effective Date and the date on which such Priority Tax Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably | $260,000.00 (approx.) | 100% |

| | | practicable thereafter). | | |
|---|---|---|---|---|
| 1 | Secured Claim of BOC | Unimpaired; not entitled to vote.<br><br>All terms of the secured claim of BOC will remain the same pursuant to the loan documents entered into by and between the Debtor and BOC pre-petition. | $420,000.00 | 100% |
| 2 | Other Priority Claims | Unimpaired; not entitled to vote.<br><br>Each Holder of an Allowed Other Priority Claim shall receive the full unpaid amount of such Allowed Other Priority Claim in Cash on the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Other Priority Claim is due or as soon as reasonably practicable thereafter). | $107,000.00 (approx.) | 100% |
| 3 | General Unsecured Claims of Resolved Parties | Impaired; entitled to vote.<br><br>Each Creditor with an Allowed General Unsecured Claim that is being resolved as part of the Plan process shall receive, in full and final satisfaction of his/her/its | $1,900,000.00 (approx.)<br><br>Claims filed in Class 3 total approximately $6.3 million but the Debtor believes most, if not all, of the | 100% of the amount based on the Recovery Calculation as set forth in Exhibit B hereto. |

3

| | | Claim, an amount based on the Recovery Calculation. The amount of each Class 3 Creditor's proposed payment is set forth in Exhibit B. Payments to Class 3 Creditors will be made within thirty (30) days of the Effective Date. | Class 3 Claims are objectionable. In order to avoid lengthy and costly litigation, the Debtor and the Committee agreed to provide Class 3 Creditors with a distribution in the amount of the Recovery Calculation, as defined in Article 9 of the Plan. | |
|---|---|---|---|---|
| 4 | General Unsecured Claims of Ongoing Vendors | Unimpaired; not entitled to vote.<br><br>Allowed Class 4 Creditors will be paid in full within 30 days of the Effective Date (or, if not then due, when such General Unsecured Claim of the Vendor is due in the ordinary course of business). | $10,000.00 (approx.) | 100% |
| 5 | Equity Interests | Unimpaired. Mr. DeMeritt will retain his equity ownership interest in the Debtor. | N/A. | 100% |

## ARTICLE 1 - HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1. Nature of the Debtor's Business.

The Debtor was founded in 1997 and is a seller of gold and other precious metals. The Debtor is one of the largest in its industry, with customers all over the country.

From the outset, the Debtor has focused on selling physical precious metals (e.g., coins, bars) to the public, either for direct possession or placement in a self-directed IRA (administered by a qualified third-party administrator for the benefit of the customer).

The Debtor, in short, is a retail seller (and buyer) of precious metals.

### 2. History of Business Operations of the Debtor.

On the Petition Date, the Debtor had three office locations – its headquarters is located in Los Angeles, California and it also has offices in Woodland Hills, California and Mission Viejo, California.

In the ordinary course of business, the Debtor both sells and buys back precious metal across two different channels—direct to consumer ("Direct to Consumer Channel"), and from/to IRAs ("IRA Channel"). Sales made in the Direct to Consumer Channel are to individual consumers. Transactions in the IRA Channel are between the Debtor and the custodians (each, a "Custodian") administering customer IRAs. The Custodians are not affiliated with the Debtor.

Gross revenues in 2022 totaled $146,581,414. Of this amount, the Direct to Consumer Channel accounted for 63.6% and the IRA Channel accounted for 36.4%.

The Debtor's prices for precious metals include its costs to acquire the inventory plus a gross profit or operating margin (sometimes called a "spread"). The "spread" is the amount, calculated as a percentage of the retail price quoted to the customer (the "ask"), over and above the Debtor's cost for the precious metal (the "cost"). Depending on the type of coin and transaction, the Debtor's spread can be as much as 33% (in 2022, the average spread was 23.4%) of the retail, ask price. The Debtor contends its spreads are consistent with its competitors, as well as those charged by the U.S. Mint, a division of the Department of the Treasury.

The Debtor's spreads are calculated based on the actual cost of the precious metals the Debtor sells. The Debtor's suppliers are entirely independent of the company. The Debtor and its principal are not shareholders or otherwise financially interested in these suppliers, which sell to multiple dealers.

The Debtor's fees are front-loaded; i.e., they are only charged when purchases are made. The Debtor's policy is not to charge anything or make any profit when a customer (who purchased from the Debtor) liquidates his or her or its precious metals. When the customer (who purchased from the Debtor) liquidates, the Debtor pays the customer the prevailing wholesale price that the Debtor receives from its supplier. Moreover, the Debtor's customers pay nothing to the Debtor while the Debtor holds the asset, however long.

The overall price the Debtor charges (for any given coin or bar) is driven by market factors, including the current price of the coin or bar on the wholesale market and prevailing retail spreads in the industry.

**3.     Filing of the Debtor's Chapter 11 Case.**

On March 2, 2022, the Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code.

On March 2, 2022, the Trustee was appointed as the Subchapter V trustee in the Bankruptcy Case.

**4.     Legal Structure and Ownership.**

The Company is an S corporation, owned 100% by Kevin DeMeritt.

**5.     Debtor's Assets and Liabilities.**

The Debtor's assets and liabilities are detailed in the Schedules filed on March 30, 2022 and found at Docket Index ("D.I.") Nos. 89 and 90, as well as the Debtor's monthly operating reports.  The Debtor's assets generally consist of cash and gold and other precious metals.

As of the Petition Date, the Debtor had a secured debt obligation to BOC on a line of credit in the amount of approximately $420,000 and was generally current or ahead of known trade or ordinary course obligations.  As such, the only material debt obligations owed as of the Petition Date constitute potential contingent, unliquidated, and disputed claims, as more fully described below.

**6.     Current and Historical Financial Conditions.**

In 2020, the Debtor's gross revenues were $178,403,458 with net profit of $4,482,313; in 2021, gross revenues were $221,724,775 with net profit of $6,132,781.

More information on the Debtor's financial condition is detailed in the Debtor's Schedules and monthly operating reports which can be found on the Bankruptcy Court's website or the Voting Agent's website for this Chapter 11 Case.

**7.     Events Leading to the Filing of the Bankruptcy Case.**

On June 5, 2019, the Los Angeles City Attorney's Office on behalf of the People of the State of California (the "LACAO") commenced a civil lawsuit against the Debtor for violation of the Unfair Competition Law in the Superior Court for the State of California, Los Angeles Division, Case No. 19STCV19362 (the "California Action").  The Debtor denies the allegations made in the California Action.

The LACAO and the Debtor resolved the California Action pursuant to a Binding Agreement dated December 30, 2021 (the "City of Los Angeles Settlement"), pursuant to which the Debtor paid $2.75 million and agreed to modify certain of its business practices, including but

not limited to revising its invoices to include more prominent disclosure of the Debtor's fee structure and providing (to most buyers) a 24-hour, no risk cancellation policy to its customers following delivery of their written invoice. These changes were implemented nationwide, with the exception of New York, which was subject to a separate settlement agreement. There was no admission of wrongdoing. The Debtor put in place the agreed upon modifications before it filed this Chapter 11 Case.

On June 17, 2021, the People of the State of New York, by Letitia James, Attorney General of the State of New York ("NYAG"), commenced a special proceeding by Verified Petition in the Supreme Court of the State of New York, County of Erie, Index No. 807970/2021 (the "New York Action") against the Debtor and its principal.

In the New York Action, the NYAG alleged, *inter alia,* that the Debtor offered and sold commodities through commodities contracts to the public in New York without first having registered as a commodity broker dealer as required under New York law and that the Debtor engaged in deceptive business practices. The Debtor disputed such allegations.

Without admitting any wrongdoing, the Debtor and the NYAG resolved their disputes and resolved the New York Action pursuant to a Stipulation and Consent Decree filed on or about December 30, 2021 (the "New York Settlement"). As part of the resolution, inter alia, the Debtor paid to the NYAG (to compensate the Debtor's New York customers) the sum of $6 million (for engaging in unregistered sales), agreed to make changes to the format and content of invoices issued to future NY customers, and agreed to provide the same 24-hour cancellation policy (referenced above) to future NY customers. The Debtor suspended all New York sales until the agreed upon modifications were instituted, which followed the filing of this Chapter 11 Case.

As a result of the settlements reached as discussed above, the Debtor amended its business practices to provide for at least a 24-hour cancellation policy (certain transactions excepted), and additional disclosures regarding its gross profit, including but not limited to more prominent disclosure of how much the customer's metals need to appreciate in order to recoup the gross profit and break even. While the Debtor believes it was operating within all appropriate legal mandates, it nonetheless made the changes to its business practices discussed above.

## 8.    Significant Events During the Bankruptcy Case.

First Day Motions and Orders

On or about the Petition Date, the Debtor filed certain motions and applications seeking relief from the Bankruptcy Court designed to minimize the potential disruption of the Chapter 11 filing on the Debtor's business affairs and facilitate the orderly administration of the Chapter 11 Case. On, or shortly after the Petition Date, the Bankruptcy Court entered various orders. These include:

(a)    Emergency Motion for an Order Authorizing: (1) Maintenance Of Existing Bank Accounts, (2) Continued Use of Existing Cash Management System, and (3) Continued Use of Business Forms Pursuant To 11 U.S.C. §§ 105, 345, and 363 [D.I. No. 6]. On March 4, 2022, the Bankruptcy Court entered an Interim Order granting the motion [D.I. No. 27]. On March 31, 2022,

the Bankruptcy Court entered a Final Order granting the motion [D.I. No. 92].

(b)    Emergency Motion for Order Authorizing Payment of Prepetition Employee Wages, Benefits and Associated Expenses and Granting Related Relief [D.I. No. 5].  On March 4, 2022, the Bankruptcy Court entered an Interim Order granting the motion [D.I. No. 26] and on March 22, 2022, entered an Amended Interim Order granting the motion [D.I. No. 70].  On March 22, 2022, the Bankruptcy Court entered a Final Order granting the motion [D.I. No. 75].

(c)    Emergency Motion Pursuant to Sections 105 and 366 of the Bankruptcy Code for Entry of Interim and Final Orders (I) Prohibiting Utility Companies From Altering, Refusing or Discontinuing Services to, or Discriminating Against, the Debtor, (II) Determining that the Utility Companies are Adequately Assured of Postpetition Payment; and (III) Establishing Procedures for Resolving Requests for Additional Adequate Assurance [D.I. No. 7].  On March 4, 2022, the Bankruptcy Court entered an Interim Order granting the motion [D.I. No. 28].  On March 22, 2022, the Bankruptcy Court entered a Final Order granting the motion [D.I. No. 69].

(d)    Emergency Motion for an Order Authorizing Debtor to Honor and Continue Certain Practices and Customer Obligations in the Ordinary Course of Business and Granting Related Relief [D.I. No. 10].  On March 4, 2022, the Bankruptcy Court entered an Interim Order granting the motion [D.I. No. 32].  On March 22, 2022, the Bankruptcy Court entered a Final Order granting the motion [D.I. No. 74].

(e)    Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Pay Prepetition Claims of Shippers and Warehouseman; (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers; and (III) Granting Related Relief [D.I. No. 12].  On March 4, 2022, the Bankruptcy Court entered an Interim Order granting the motion [D.I. No. 31].  On March 22, 2022, the Bankruptcy Court entered a Final Order granting the motion [D.I. No. 73].

(f)    Emergency Motion for an Order (I) Approving 2002-1(b) List; (II) Authorizing Debtor to File the Names and Contact Information of Customers Under Seal and Maintain Sealed Status; (III) Approving Form and Manner of Notice to Its Customers; and (IV) Granting Related Relief [D.I. No. 14].  On March 4, 2022, the Bankruptcy Court entered an Interim Order granting the motion [D.I. No. 27].  On March 9, 2022, the Bankruptcy Court entered an Order granting the motion [D.I. No. 38].  As a result, the Debtor, through BMC, served the notice of commencement (the "Notice of Commencement"), which included not only information about the bankruptcy filing, but also included the Bar Date, the Governmental Bar Date and instructions on how to file a claim.  As set forth in the certificate of service filed on March 16, 2022, between March 9 and March 11, 2022, the Debtor served the Notice of Commencement upon all of the Debtor's current and former customers since its inception which comprise nearly 90,000 people (not including the other noticed parties).

(g)    Emergency Motion for an Order Under Sections 105(a), 363(b), 363(c) and 503(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 6003 Authorizing Debtor to (A) Assume Existing Insurance Policies; and (b) Pay All Obligations in Respect Thereof [D.I. No. 9].  On March 4, 2022, the Bankruptcy Court entered an Order granting the motion [D.I. No. 30].

8

(h)     Emergency Motion Pursuant to Sections 105(a), 507(a)(8) and 541(d) of the Bankruptcy Code for an Interim and Final Order: (1) Authorizing Payment of Prepetition Sales Tax and Other Similar Taxes and Fees; and (2) Authorizing Banks and Other Financial Institutions to Receive, Process, Honor and Pay Checks Issued and Electronic Payments Requests Made Related to Such Taxes and Fees [D.I. No. 8].  On March 4, 2022, the Bankruptcy Court entered an Interim Order granting the motion [D.I. No. 29].  On March 22, 2022, the Bankruptcy Court entered a Final Order granting the motion [D.I. No. 72].

<u>Retention of Professionals</u>

During the Chapter 11 Case, the Bankruptcy Court entered various orders authorizing the employment of various professionals to assist with the conduct and administration of the Chapter 11 Case and reorganization efforts, including but not limited to the following:

a.      On March 4, 2022, the Bankruptcy Court entered its Order authorizing the Debtor to employ BMC Group, Inc. as claims agent *nunc pro tunc* to the Petition Date [D.I. No. 25].

b.      On April 11, 2022, the Bankruptcy Court entered its Order authorizing the Debtor to retain Shulman Bastian Friedman & Bui LLP as general bankruptcy *counsel nunc pro tunc* to the Petition Date [D.I. No. 111].

c.      On April 11, 2022, the Bankruptcy Court entered its Order authorizing the Debtor to retain Paladin Management LLC as financial advisors to the Debtor *nunc pro tunc* to the Petition Date [D.I. No. 114].

d.      On April 11, 2022, the Bankruptcy Court entered its Order authorizing the Debtor to employ Morris James LLP as local bankruptcy counsel for the Debtor *nunc pro tunc* to the Petition Date [D.I. No. 112].

e.      On April 11, 2022, the Bankruptcy Court entered its Order authorizing the Debtor to employ Mitchell Silberberg & Knupp LLP as special litigation and corporate counsel *nunc pro tunc* to the Petition Date [D.I. No. 113].

f.      On April 12, 2022, the Bankruptcy Court entered its Order authorizing the Debtor to employ the Cook Law Firm, P.C. as special insurance counsel *nunc pro tunc* to the Petition Date [D.I. No. 117].

g.      On April 25, 2022, the Bankruptcy Court entered its Order authorizing the Debtor to employ BakerTilly US, LLP as accountant *nunc pro tunc* to the Petition Date [D.I. No. 145].

h.      On August 31, 2022, the Bankruptcy Court entered its Order authorizing the Committee to employ Potter Anderson & Corroon LLP as counsel effective as of July 20, 2022 [D.I. No. 335].

i.      On August 31, 2022, the Bankruptcy Court entered its Order authorizing the Committee to employ Dundon Advisers LLC as financial advisor effective as of July 20, 2022 [D.I. No. 336].

j.      On March 11, 2022, the Debtor filed a Motion for Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals [D.I. No. 44]. On April 12, 2022, the Bankruptcy Court entered its Order granting the motion [D.I. No. 118].

Appointment of Committee and Abstention Period

On April 20, 2022, Jacqui Lundy, David S. Clark, and Greg Godek (the "Filing Customers") filed a Motion for Entry of an Order (I) Appointing an Official Committee of Contingent Litigation Customers Pursuant to 11 U.S.C. 1102(a)(3); (II) Extending the Deadline to Submit a Proof of Claim Pursuant to Bankruptcy Rule 3003(c)(3); and (III) Granting Related Relief [Docket No. 130] (the "Committee Motion"). The Debtor opposed the Committee Motion and various interested parties took discovery related to the Committee Motion.

On April 25, 2022, certain states and other agencies (the "Filing States") filed a Motion to Dismiss Bankruptcy Case [D.I. No. 148] (the "Dismissal Motion"). By the Dismissal Motion, the Filing States sought to have the Chapter 11 Case dismissed or, in the alternative, for the Bankruptcy Court to abstain from hearing any proceedings in the Chapter 11 Case for a period of at least six months. In the Dismissal Motion, the Filing States alleged that the Debtor filed the Chapter 11 Case as a litigation tactic and that the Debtor was not insolvent. The Debtor vehemently disputes the allegations of the Filing States set forth in the Dismissal Motion. The Dismissal Motion was ultimately resolved, as discussed in further detail below.

A hearing on the Committee Motion was held on May 4, 2022, at which time the Bankruptcy Court took the matter under advisement. After the hearing on this Committee Motion, the Debtor, the Filing Customers, and the Participating States, through their counsel, discussed at length a potential resolution of the Committee Motion, the Dismissal Motion, and other items.

On June 7, 2022, the Debtor, the Participating States2 and the Filing Customers filed the Motion for Order Pursuant to 11 U.S.C. 105 and Federal Rules of Bankruptcy Procedure 9019 Authorizing and Approving Settlement (D.I. No. 241) ("the 9019 Motion"). On June 23, 2022, the Bankruptcy Court entered the Order approving the 9019 Motion (the "9019 Order") (D.I. No. 251).

On July 13, 2022, the United States Trustee appointed the Committee. (D.I. 274).

As set forth in the 9019 Motion and the 9019 Order, the terms of the settlement provide for a ninety (90) day period (the "Abstention Period") during which all deadlines in the Chapter 11 Case, including all applicable Subchapter V deadlines, are stayed. The initial expiration date of the Abstention Period was September 21, 2022, and the Abstention Period was extended three times (D.I. Nos. 379, 428, 465) through December 21, 2022 with the 30-day reinstitution period expiring January 20, 2023.

Thereafter, through a series of motions and stipulations brought by the Debtor and the

---

[2] The Entities that were parties to the 9019 Motion, and subsequent negotiations related thereto, did not include all of the Participating States as "Participating States" is now defined herein. The definition of "Participating States" and other capitalized terms (unless defined in the body of the Plan) are set out at the end of the Plan.

Participating States, after consultation with the Committee, the UST and Sub V Trustee, the Bankruptcy Court extended the last day for the Participating States[3] to file claims to March 31, 2023 and extended the last day for the Debtor to file a plan to April 14, 2023 (D.I. Nos. 569, 570, 576, 588).

**9.    Projected Recovery of Avoidable Transfers**

The Debtor does not believe there are any potential pre-petition transactions or transfers that can be avoided under Bankruptcy Code Sections 544, 547, 548, 549, 550, 551 for a variety of reasons, including but not limited to the Debtor not being insolvent at the time of the transfers, the transfers being made in the ordinary course of business, and/or the Debtor having received reasonably equivalent value in exchange for all transfers.

## ARTICLE 2 - THE PLAN

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Bankruptcy Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Creditors are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

Pursuant to section 1191(b) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan even if no impaired Class of Claims votes to accept the Plan. Specifically, section 1191(b) of the Bankruptcy Code provides that the Plan may be confirmed if the applicable requirements of section 1129(a) are satisfied, other than sections 1129(a)(8), (10), and (15), if the Bankruptcy Court finds that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each Class of Claims or Equity Interests that is impaired under, and has not accepted, the Plan. Thus, even if no impaired Class votes to accept the Plan, the Debtor reserves the right to assert that the Plan satisfies these requirements and can nevertheless be confirmed.

---

[3] The Entities for which the Governmental Bar Date was extended may not have included all of the Participating States as "Participating States" is now defined herein.

1.      **Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code.  For example, Administrative Expenses and Priority Tax Claims are not classified.  They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code.  As such, the Plan does not place the following Claims in any class:

a.      **Administrative Expenses**

The Debtor must pay all Administrative Expenses in full.  If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense.  Any Administrative Expense that is undisputed and is due and owing on the Effective Date will be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Creditor or court order.  If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by theBankruptcy Court.

There are several types of Administrative Expenses, including the following:

- If the Debtor continues to operate in the ordinary course of business following its filingof the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided.  This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

- Administrative Expenses also include any post-petition fees and expenses allowed to Professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor duringthe course of the Chapter 11 Case.  These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.  All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Effective Date shall be Filed no later than thirty (30) days after the Effective Date, unless otherwise provided in L.B.R. 3002-1, and with the exception that the Trustee may file one or more requests for payment of fees and expenses incurred prior to or after the Effective Date, and which such requests for payment may be Filed more than thirty (30) days after the Effective Date.  All final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be promptly paid up to the full amount.

12

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
| --- | --- | --- |
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 (All amounts paid on ongoing basis) | Payment through the Plan as follows:  Payment in full on the Effective Date. |
| Administrative Tax Claims | $0.00 | The Debtor does not expect any but if there are any administrative tax claims, payment through the Plan as follows: Payment in full on the Effective Date, except to the extent otherwise agreed to by the Debtor and the Claimant. |
| Professional Fee Claims, as approved by the Bankruptcy Court | $300,000.00 | After Bankruptcy Court approval, Payment through the Plan as follows: Payment in full. |
| Clerk's Office fees | $650.00 | Payment through the Plan asfollows: Payment in full on the Effective Date. |
| Subchapter V Trustee | $20,000.00 | Upon application under § 330 and after Bankruptcy Court approval, payment through thePlan as follows: Payment in full. |
| TOTAL | $320,650.00 | |

**b.    Post-Confirmation Professional Fee Claims.**

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtor shall, in the ordinary course of business and without any further notice to, or action, order, or approval of, the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business

13

without any further notice to, or action, order, or approval of, the Bankruptcy Court.

### c.      **Priority Tax Claims.**

Priority Tax Claims are unsecured income, employment, and other taxesdescribed by § 507(a)(8) of the Bankruptcy Code. Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor agrees to a less favorable treatment, pursuant to section 1129(a)(9) of the Bankruptcy Code, each Holder of such Allowed Priority Tax Claim shall receive the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of the Effective Date and the date on which such Priority Tax Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter).

### d.      **Insurance.**

Notwithstanding anything to the contrary in the Plan, any exhibits, supplements and/or appendices to the Plan, the Confirmation Order, any exit financing documents, any notice or schedule of assumed or rejected contracts or agreements, any cure notice or notice of cure amounts, any bar date notice, any claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases): (a) on the Effective Date, the Reorganized Debtor shall assume the Insurance Policies (for the avoidance of doubt, the AIC Policy is specifically excluded from the Insurance Policies to be assumed and as otherwise discussed herein) in their entirety pursuant to sections 105 and 365 of the Bankruptcy Code; (b) on and after the Effective Date, the Reorganized Debtor shall become and remain liable in full for all of its and the Debtor's obligations under the Insurance Policies regardless of whether such obligations arise before or after the Effective Date; (c) all Insurance Policies, the terms and conditions thereof and all legal, equitable or contractual rights, obligations, and defenses of the Insurers (for the avoidance of doubt, AIC is specifically excluded from the "Insurers"), the Debtor (or, after the Effective Date, the Reorganized Debtor), or any other individual or entity, as applicable, under any Insurance Policies, whether arising before or after the Effective Date, shall survive and shall not be amended, modified, waived, released, discharged or impaired in any respect, and all such rights and obligations shall be determined under the Insurance Policies and applicable non-bankruptcy law as if the Chapter 11 Case had not occurred, and Insurers shall not be required to file or serve any objection to a proposed cure amount or a request, application, claim, proof of claim or motion for payment or allowance of any Administrative Claim, and Insurers shall not be subject to any bar date or similar deadline governing cure amounts, proofs of Claim or Administrative Claims; (d) nothing shall permit or otherwise effect a sale, assignment or other transfer of any Insurance Policy and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to any Insurance Policy without the prior express written consent of the applicable Insurer; and (e) the automatic stay of section 362(a) of the Bankruptcy Code and any injunctions set forth in the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Bankruptcy Court, solely to permit: (I) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (II) the Insurers to administer, handle, defend, settle,

14

and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or any injunctions set forth in the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) the Insurers to cancel any Insurance Policies, and take other actions relating to the Insurance Policies (including effectuating a setoff). Without altering any of the foregoing, the Insurers' rights against any and all non-Debtor third parties are expressly preserved and unimpaired, and the Insurers shall be deemed, and are deemed, to have opted out of the third party releases set forth in Article 5.2 hereof, the Confirmation Order, and/or any documents related to any of the foregoing.

**2.      Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**a.      Classes of Secured Claims.**

Allowed Secured Claims are Claims secured by property of the Estate (or that are subject to setoff) to the extent allowed as secured Claimsunder § 506 of the Bankruptcy Code. If the value of the collateral or setoffs securing the Creditor'sClaim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

The following chart lists all classes containing the Debtor's secured prepetitionClaims and their proposed treatment under the Plan:

| Class No. | Description | Insider? (Yes or No) | Impairment (Yes or No) | Treatment |
|---|---|---|---|---|
| 1 | *Secured claim of:* <br><br> Name: Banc of California <br><br> Collateral description:  Line of credit bank account <br><br> Allowed Secured Amount: $420,000.00 <br><br> Priority of lien: First <br><br> Principal owed: $420,000.00 <br><br> Pre-petition arrearage: $0.00 <br><br> Total claim: $420,000.00 | No. | No. BOC is conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan. | Reinstated.  All terms of the secured claim of BOC will remain the same pursuant to the loan documents entered into by and between the Debtor and BOC pre-petition. |

### b.    Classes of Other Priority Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code are required to be placed in classes. The Bankruptcy Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code and their proposed treatment under the Plan:

| Class No. | Description | Impairment (Yes or No) | Treatment |
|---|---|---|---|
| 2 | Other Priority Claims consisting of priority unsecured claims pursuant to § 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code.<br><br>Estimated amount: $107,000.00 | No. Holders of Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan. | Each Holder of an Allowed Other Priority Claim shall receive the full unpaid amount of such Allowed Other Priority Claim in Cash on the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Other Priority Claim is due or as soon as reasonably practicable thereafter). |

### c.    Classes of General Unsecured Claims.

General Unsecured Claims are not secured by property of the Estate and are not entitled to priority under § 507(a) of the Bankruptcy Code.

The following chart identifies the Plan's proposed treatment of Classes 3 and 4 which contain General Unsecured Claims against the Debtor:

| Class No. | Description | Impairment (Yes or No) | Treatment |
|---|---|---|---|
| 3 | Allowed General Unsecured Claims of Resolved Parties<br><br>This class consists of Allowed General Unsecured Claims that are being resolved or settled as part of the Plan process, including but not limited to customers of the Debtor that filed Proofs of Claim by the Bar Date.<br><br>Total Filed claims: Approximately $6,300,000.00<br><br>Estimated total payments to be made to Class 3 Creditors: $1,900,000.00 | Yes. Holders of Allowed Class 3 Claims are impaired and entitled to vote to accept or reject the Plan. | Each Holder of an Allowed Class 3 Claim will receive an amount calculated as follows: the difference between the total spread charged on the transaction that is the subject of their proof of claim and a hypothetical 12% spread. The amount to be paid to each Class 3 Creditor is set forth in Exhibit B-1, or with respect to duplicate claims, in Exhibit B-2 hereto. If a Class 3 Creditor filed duplicate Proofs of Claim, the earlier filed Proof of Claim will be deemed disallowed and the later filed Proof of Claim will be deemed allowed such that the Class 3 Creditor only receives one payment based on the later filed Proof of Claim to avoid a double recovery. Exhibit B-2 lists Class 3 Creditors who filed duplicate claims and the proposed payment. Payments to Class 3 Creditors will be made in Cash within 30 days of the Effective Date.<br><br>The Debtor or Reorganized Debtor, as applicable, will provide the Participating States a spreadsheet of the Class 3 Creditors that includes each Class 3 Creditor's name, social security number (if known), mailing address, email address (if known), phone number, total spread paid to the Debtor, and proposed distribution herein.<br><br>If any Class 3 Creditor objects to its proposed treatment under the Plan, it must file a written objection to confirmation of the Plan by the Plan Objection Deadline. |

| Class No. | Description | Impairment (Yes or No) | Treatment |
|---|---|---|---|
| 4 | Allowed General Unsecured Claims of Ongoing Vendors<br><br>This class consists of all Allowed General Unsecured Claims that are held by vendors that are continuing to do business with the Debtor.<br><br>Estimated total of Allowed Class 4 Claims: $10,000.00 | No. Holders of Allowed Class 4 Claims are unimpaired and not entitled to vote to accept or reject the Plan. Holders of Class 4 Claims are deemed to have accepted the Plan. | Except to the extent previously paid, in full and final satisfaction, settlement, release and discharge of and in exchange for each such Allowed General Unsecured Claim of Ongoing Vendors, each holder of an Allowed Class 4 Claim will be paid in full within 30 days of the Effective Date (or, if not then due, when such Allowed General Unsecured Claim of Ongoing Vendors is due in the ordinary course of business). |

### d.    Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest)in the Debtor.  The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class No. | Description | Impairment (Yes or No) | Treatment |
|---|---|---|---|
| 5 | Equity Interest Holders – Kevin DeMeritt | No. Holders of Class 5 Equity Interests are unimpaired and not entitled to vote to accept or reject the Plan.  Holders of Class 5 Claims are deemed to have accepted the Plan. | Mr. DeMeritt will retain his equity ownership interest in the Debtor. |

### e.    Unfiled Customers.

**The Debtor neither admits nor denies any violation of state or federal law, there has been no finding of wrongdoing by any court of law, and the Plan shall not be construed as an admission of wrongdoing.  Nevertheless, in the interest of resolving its bankruptcy, the Debtor and Mr. DeMeritt agree that the Unfiled Customers shall receive treatment under this Plan as follows:**

i)    The Unfiled Customers shall receive a Pro Rata share of the Customer Fund remaining after all Allowed Class 3 Creditors are paid as provided herein.  Payments will

18

be made per Unfiled Customer based on all purchase transactions meeting the criteria that occurred during the Relevant Period. The amount of the Unfiled Customer's claim to be used to determine the Unfiled Customer's Pro Rata share shall be calculated using the Recovery Calculation. Notwithstanding the above, if a distribution is less than $50.00 (the "De Minimis Amount"), the Unfiled Customer shall receive no distribution. The Debtor will provide the Participating States a spreadsheet from its books and records of the Unfiled Customers that includes each Unfiled Customer's name, social security number (if known), mailing address, email address (if known), phone number, total spread paid to the Debtor, and amount to be paid herein. The spreadsheet shall include the Unfiled Customers who will receive no distribution because they do not meet the De Minimis Amount.

ii)     The Reorganized Debtor or a Third-Party Administrator engaged by the Reorganized Debtor and acceptable to the Participating States, at the Debtor's option, will send payment checks to Unfiled Customers owed amounts above the De Minimis Amount with an accompanying letter approved by the Participating States and the Debtor explaining that as a result of a government investigation, the Debtor has agreed to issue partial refunds of the fees charged in connection with certain transactions, and that the enclosed payment reflects the Unfiled Customer's Pro Rata share.

iii)     The Reorganized Debtor or a Third-Party Administrator engaged by the Reorganized Debtor and acceptable to the Participating States will supervise the payment process to the Unfiled Customers and keep the Participating States informed regarding the status of the issuance and cashing of the payments.

iv)     The Reorganized Debtor or a Third-Party Administrator engaged by the Reorganized Debtor and acceptable to the Participating States, at the Debtor's option, will run a National Change of Address Update on the mailing prior to issuing the payments. If any mail is returned as undeliverable, the Reorganized Debtor or the Third Party Administrator, at the Debtor's option, will use reasonable efforts to identify a new address if possible and attempt a second good-faith mailing. After the initial and any follow-up good-faith mailing attempt, the names, social security number (if known), and contact information (mailing address, email address, phone number) and payment amount of any Unfiled Customers whose mail was undeliverable will be sent as follows: (1) For Unfiled Customers who resided in any of the Participating States at the time of their transaction, to each applicable Participating State's securities administrator with a check for the gross amount owed to all Unfiled Customers from that Participating State whose mail was returned as undeliverable. The sums received by the Participating States will be used by each Participating State in accordance with state law. (2) For Unfiled Customers who resided in states other than one of the Participating States at the time of their transaction, funds for such Unfiled Customer shall be sent to that state's unclaimed property authority in the name of such Unfiled Customer. (3) Unfiled Customers will be deemed for this purpose to be residents of the state in which they resided at the time of the transaction(s) with the Debtor, as listed in the Debtor's records.

v)     Any amounts in the initial payment calculations attributed to a De Minimis Amount will be reallocated to the pool of funds used to make Pro Rata distributions to

19

those Unfiled Customers who were initially scheduled to receive a payment in excess of the De Minimis Amount.

vi)        Unfiled Customers shall have 180 days to cash or negotiate their check.  For any Unfiled Customer that has not cashed or negotiated his/her/its check after 180 days, the Debtor or the Third-Party Administrator will tender the funds and a list of applicable Unfiled Customers to each Participating State or state, as applicable, using the same approach identified in subparagraph (iv) above.

vii)        Payments to Unfiled Customers are made in consideration of the Participating States agreement to withdraw the Motion to Dismiss Bankruptcy Case that was originally filed April 25, 2022 (D.I. No. 148) and to not file claims or otherwise oppose the resolution of this Chapter 11 Case. As such, the Debtor or a Third-Party Administrator engaged by the Reorganized Debtor and acceptable to the Participating States, at the Debtor's option, will issue checks in the full amount of the payment provided for herein, will not issue Form 1099s, and will not perform backup withholding.

### f.        Subordinated Claims and Equity Interests.

The allowance, classification, and treatment of all Allowed Claims and Allowed Equity Interests and their respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtor and the Reorganized Debtor as applicable, reserve the right to re-classify any Allowed Claim or Allowed Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 3.        Treatment of Claims and Claims Objections.

The Debtor or the Reorganized Debtor, as applicable, may object to the amount or validity of any Claim by the Claims Objection Bar Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim.  The Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. Nothing in this Section shall in any way limit the Trustee's rights to object to Claims as provided for in the Bankruptcy Code.

### a.        Allowance of Claims

After the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtor had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

### b.    Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtor shall have the sole authority to File and prosecute objections to Claims, and the Reorganized Debtor shall have the sole authority to: (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; and (2) from and after the Effective Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent the Reorganized Debtor elects to withdraw any such objection, or the Debtor and the Creditor elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Equity Interest without approval of the Bankruptcy Court. For the avoidance of doubt, nothing set forth herein shall limit in any way the Trustee's rights to object to Claims as provided for in the Bankruptcy Code.

### c.    Estimation of Claims

Before, on, or after the Effective Date, the Debtor or the Reorganized Debtor may (but is not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been disallowed, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtor, or the Reorganized Debtor, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim, unless otherwise ordered by the Bankruptcy Court. Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### d.    Adjustment to Claims

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register after the Debtor or the Reorganized Debtor, as applicable, files a notice of satisfaction with the Bankruptcy Court and serves such notice of satisfaction on the affected Claimant on ten (10) days' negative notice if no objection having been filed. If an objection is filed to the notice of satisfaction, an evidentiary hearing will be scheduled before the Bankruptcy Court.

### e.    Disallowance of Claims

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h),

544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Debtor or the Reorganized Debtor.  All Proofs of Claim Filed on account of an indemnification obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to, or action, order, or approval of, the Bankruptcy Court.

### f.        Amendments to Claims

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor.  Unless such prior authorization is granted, any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further notice to, or action, order, or approval of, the Bankruptcy Court to the maximum extent provided by applicable law.

### g.        No Distributions Pending Allowance

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim, unless otherwise determined by the Reorganized Debtor.

### h.        Duplicative Claims

If a Class 3 Creditor filed duplicate Proofs of Claim, the earlier filed Proof of Claim will be deemed Disallowed without the need for any further motion, objection or Bankruptcy Court order, such that the Class 3 Creditor receives only one payment under the Plan based on the later filed Proof of Claim, as set forth in Exhibit B-2.  To the extent required, the Plan shall serve as an objection to the claims listed on Exhibit B-2 in accordance with Bankruptcy Rule 3007 and other related rules.

### i.        Disallowance of Claims With Insufficient Information

To the extent the Debtor has no information on a Claim filed by a Class 3 Creditor (because the Proof of Claim does not attach any information and the Debtor cannot locate the Creditor in its records) such that the Debtor is unable to calculate the amount of the proposed payment to such Class 3 Creditor, unless the Class 3 Creditor provides detailed backup in support of the Claim by no later than May [●]23, 2023, the Proof of Claim shall be Disallowed without the need for any further motion, objection, or order of the Bankruptcy Court, and the Class 3 Creditor shall be deemed to have waived any right to a recovery under this Plan.  Exhibit B-3 lists the Class 3 Creditors that filed Proofs of Claim with insufficient information and will thus not obtain a distribution pursuant to this provision under this Plan unless he/she/it provides sufficient information to substantiate the Proof of Claim by May [●]23, 2023.  To the extent required, the Plan shall serve as an objection to the claims listed on Exhibit B-3 in accordance with Bankruptcy Rule 3007 and other related rules.  ANY CREDITOR LISTED ON EXHIBIT B-3 MUST TAKE ACTION BY MAY [●]23, 2023 IN ORDER TO BE ENTITLED TO ANY PAYMENT UNDER THE PLAN.

### 4.       <u>Treatment of Executory Contracts and Unexpired Leases.</u>

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract.  The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

☒ Assumption of Executory Contracts.

The Executory Contracts shown on **Exhibit C** shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations undersuch contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.  Exhibit C also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

Unless otherwise provided in the Plan, each Executory Contract that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract, and Executory Contracts related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract, or the validity, priority, or amount of any Claims that may arise in connection therewith.

☐ Rejection of Executory Contracts.

There are no Executory Contracts or Unexpired Leases that the Debtor intends to reject.

Neither the exclusion nor inclusion of any Executory Contract on Exhibit C, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or that the Debtor or Reorganized Debtor has any liability thereunder.

23

5.    **Means for Implementation of the Plan.**

      a.    **Funding the Plan**

The Plan will be funded with Cash on hand on the Effective Date, the Insider Contribution and, if necessary, revenue from the Debtor's post-Effective Date operations. Not counting the Insider Contribution, the Debtor expects to have approximately $2.8 million in Cash on hand on the Effective Date. The Debtor or the Reorganized Debtor, as applicable, will have all the rights and duties to implement the provisions of the Plan, including the right to make Distributions to Class 2, Class 3 and Class 4 Creditors, other than with respect to distributions to Unfiled Customers which will be made by the Reorganized Debtor or the Third-Party Administrator at the Debtor's option.

On the Effective Date of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equity Interests except as provided in the Plan, to the Reorganized Debtor and all funds not expressly provided for in Plan will remain property of the Estate. The Debtor expects to have sufficient Cash on hand, including the Insider Contribution, to make the payments required on the Effective Date.

6.    **Payments.**

      a.    **Responsibility for Making Payments.**

Except as otherwise provided in the Plan or in the order confirming the Plan (for example, distributions to Unfiled Customers might be made by the Third-Party Administrator), the Debtor or the Reorganized Debtor shall make all Plan payments to creditors under the Plan.

The Reorganized Debtor shall only be required to act and make distributions in accordance with the terms of the Plan. Except on account of gross negligence, fraud, illegality or willful misconduct, the Reorganized Debtor shall have no (i) liability to any party for actions taken in accordance with the Plan or in reasonable reliance upon information provided to it in accordance with the Plan, or (ii) obligation or liability for distributions under the Plan to any party who does not hold a Claim against the Debtor on any date on which a distribution is made or who does not otherwise comply with the terms of the Plan.

Any required payments to the Holders of Allowed Claims or Equity Interests shall be made by the Reorganized Debtor: (a) in U.S. dollars by check, draft or warrant, drawn on a domestic bank, or by wire transfer from a domestic bank, and (b) by first-class mail (or by other equivalent or superior means as determined by the Reorganized Debtor).

      b.    **Disputed Claims.**

Notwithstanding anything herein to the contrary: (a) no distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim (as applicable), and (b) unless agreed otherwise by the Reorganized Debtor, no distribution shall be made to any Entity

24

that holds both an Allowed Claim and a Disputed Claim until such Entity's Disputed Claims have been resolved by settlement or Final Order.

### c.    Unclaimed Payments.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable or unclaimed distribution within 180 days after the first distribution is made to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for the undeliverable or unclaimed distribution against the Debtor, the Estate, the Reorganized Debtor, or its properties or assets.  In such cases, any Cash or other property held by the Reorganized Debtor in the Undeliverable Distribution Reserve for distribution on account of such claims for undeliverable or unclaimed distributions, including the interest that has accrued on such undeliverable or unclaimed distribution while in the Undeliverable Distribution Reserve, shall become the property of the Reorganized Debtor, notwithstanding any federal or state escheat laws to the contrary, and shall promptly be transferred to the Reorganized Debtor to be distributed according to the priority set forth in the Plan without any further action or order of the Bankruptcy Court.  Notwithstanding anything contained herein to the contrary, and for the avoidance of doubt, this provision shall not apply to the payments being made on account of the Unfiled Customers.

### d.    Payment Date and Location.

Except as otherwise provided in the Plan (including specifically Article 2, Section 2.e, above), distributions to Holders of Allowed Claims shall be made as set forth on the latest date of the following documents: (a) to the address of payment set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed; (b) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related Proof of Claim and prior to the Effective Date; and (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Debtor and Reorganized Debtor have not received a written notice of a change of address prior to the Effective Date.

The Reorganized Debtor shall make one attempt to make the distributions contemplated hereunder in accordance with the procedures set forth herein.  The Reorganized Debtor, in its sole discretion may, but shall have no obligation to, attempt to locate Holders of undeliverable distributions.  Any distributions returned to the Reorganized Debtor as undeliverable or otherwise shall remain in the possession of the Reorganized Debtor until such time as a distribution becomes deliverable, and no further distributions shall be made to such Holder unless such Holder notifies the Reorganized Debtor of its then current address.

As of 5:00 p.m. (prevailing Eastern time) on the Distribution Record Date, the transfer registers for Claims shall be closed.  The Reorganized Debtor shall have no obligation to recognize the transfer or sale of any Claim that occurs after such time on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make distributions only to those Holders who are Holders of Claims as of 5:00 p.m. (prevailing Eastern time) on the Distribution Record Date.  Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of

Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to 5:00 p.m. (prevailing Eastern time) on the Distribution Record Date shall be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

Nothing contained in this Plan shall constitute a waiver or release by the Reorganized Debtor of any rights in respect of legal and equitable objections, defenses, setoffs, or recoupment. To the extent permitted by applicable law, the Reorganized Debtor may, but shall not be required to, set off or recoup against any Claim and the payments or other distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose before the Petition Date that the Estate, or the Reorganized Debtor may have against the Holder of such Claim or Equity Interest. Notwithstanding anything contained herein to the contrary, and for the avoidance of doubt, this subsection shall not apply to the payments being made on account of the Unfiled Customers.

###### e.        **Undeliverable Distribution Reserve.**

If a distribution to any Holder of an Allowed Claim is returned to the Reorganized Debtor as undeliverable or is otherwise unclaimed, such distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such Holder until such time as such distribution becomes deliverable or is claimed or is deemed to have been forfeited in accordance with Subsection iii. above. Notwithstanding anything contained herein to the contrary, and for the avoidance of doubt, this provision shall not apply to the payments being made on account of the Unfiled Customers.

###### f.        **De Minimis Payments.**

If any Distribution under the Plan to the Holder of an Allowed Claim would be less than $50.00, the Reorganized Debtor may hold such distribution until the time of a subsequent or final distribution. If the final distribution under the Plan to the Holder of an Allowed Claim would be less than $50.00, the Reorganized Debtor may cancel such distribution. Any cancelled distributions pursuant to this Section shall be treated as unclaimed property in accordance with Subsection iii6.(c). above.

###### g.        **Tax Requirements.**

Notwithstanding anything to the contrary in this Plan, or applicable law, neither the Reorganized Debtor nor the Third-Party Administrator (as the case may be) shall be required to issue any Form 1099 (or similar form) or perform any back-up withholding in connection with any distributions made to the Holders of Allowed Class 3 Claims and the Unfiled Customers. Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a distribution under the Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any Governmental Unit, including income, withholding and other tax obligation, on account of such distribution. The Reorganized Debtor reserves the right to allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal

awards, liens and similar encumbrances.

**7.**    **<u>Legal Compliance.</u>**

**The Debtor neither admits nor denies any violation of state or federal law, there has been no finding of wrongdoing by any court of law, and the Plan shall not be construed as an admission of wrongdoing.  Nevertheless, in the interest of resolving its bankruptcy, the Debtor and Mr. DeMeritt agree to the following compliance commitments:**

1)    The Debtor will apply the City of Los Angeles Settlement on a nationwide basis (excluding New York, which will remain subject to the New York Settlement), but the Debtor will not use the term "ask-to-cost" fee otherwise permitted under the City of Los Angeles Settlement and will instead use the term "fee" or "spread."

2)    The Debtor will include at the conclusion of the Debtor's voice transaction confirmation recording a catch-all question asking if the customer has any further questions.

3)    The Debtor will continuously record (i.e., not stop/re-start) the voice confirmation recording until the transaction is completed or cancelled.

4)    The Debtor will allow the customer to interrupt and ask questions during the voice confirmation recording.

5)    The voice confirmation recording shall be read at a reasonable, ordinary conversational pace (allowing for normal variance by speakers).

6)    The Debtor will extend the period specified in the City of Los Angeles Settlement for storing complaints from two (2) to seven (7) years.

7)    The Debtor agrees that it shall not commit fraud in violation of state or federal securities or commodities laws.

8)    The Debtor shall not provide investment advice in violation of state or federal law.

9)    The Debtor shall not misrepresent its fee.

10)    The Debtor shall not offer portfolio assessments of securities holdings.

11)    The Debtor shall not hold itself out as an investment advisor in any way.

**Nothing set forth in this Plan shall be construed as relieving the Debtor of the obligation to comply with all state and federal laws, regulations, and rules.  Further, none of the provisions set forth in this Plan shall be deemed to constitute permission for the Debtor to engage in any business acts or practices prohibited by such laws, regulations, and rules.**

## 8.    __Post-Confirmation Management.__

The Board of Directors of the Debtor immediately prior to the Effective Date shall serve as the initial Board of Directors of the Reorganized Debtor on and after the Effective Date. Each member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.

The post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|------|----------|--------------|
| John Ohanesian | CEO and President | $500,000 base annual salary plus potential bonuses. |
| John Jenkins | Director | N/A |
| Kevin DeMeritt | Director | $500,000 base annual salary |

## 9.    __Preservation of Causes of Action.__

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, including the Claims and Causes of Action specifically discussed in Article 5 of the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (including all Avoidance Actions), whether arising before or after the Petition Date, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Causes of Action, as appropriate, in the Reorganized Debtor's sole discretion.  No Entity may rely on the absence of a specific reference in the Plan to any Cause of Action against it as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action against it.  The Debtor or the Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled under the Plan or pursuant to a Bankruptcy Court order, the Debtor or Reorganized Debtor, as applicable, expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation.  In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtor.  The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle,

28

compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to, or action, order, or approval of, the Bankruptcy Court.

### 10.    Dissolution of Committee.

On the Effective Date, the Committee shall automatically dissolve, and its Professionals and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Case, except with respect to (i) any applications for Professional Fee Claims, including preparing same, objecting to same, defending same and attending any hearing with respect to same; and (ii) any motions or other actions seeking enforcement or implementation of the provisions of this Plan, or the Confirmation Order.

### 11.    Tax Consequences of the Plan.

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

There may be a number of material income tax considerations, risks and uncertainties associated with the implementation of the Plan.  The Debtor does not offer an opinion as to any federal, state, local or other tax consequences to Holders of Claims and Equity Interests, including Unfiled Claims, as a result of the confirmation of the Plan.

THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS OR OTHER PLAN RECIPIENTS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## ARTICLE 3 - FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 1.    Ability to Initially Fund Plan.

The Debtor believes that it will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date, based upon the fact that the Insider Contribution will have been paid and funded to the Debtor prior to or on the Effective Date.

**2.      Ability to Make Future Plan Payments And Operate Without Further Reorganization.**

The Plan is being funded in full by the Cash on hand and the Insider Contribution on or before the Effective Date which will provide the necessary funding for nearly all of the distributions to be made pursuant to the Plan.  ~~To the extent future Plan payments are required, the Debtor will have sufficient operating income, coupled with the Cash on hand, to make such payments, as indicated in the projections attached hereto as **Exhibit A.**~~

## ARTICLE 4 - LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Creditors and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit ~~D~~A.**

## ARTICLE 5 - DISCHARGE, RELEASES AND INJUNCTIONS

**1.      Discharge.**

Assuming the Plan is consensual, pursuant to section 1191(a) of the Bankruptcy Code, on the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in section 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt imposed by this Plan or to the extent provided in section 1141(d)(6) of the Bankruptcy Code.

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in section 1141(d)(6) of the Bankruptcy Code or in any Contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete discharge effective as of the Effective Date, of all Claims against the Debtor of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, and Equity Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, including but not limited to any and all Claims that were or could have been filed by customers, the Participating States (or any government entity or sovereign (whether in its own name or on behalf of the constituents of such governmental body)), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim based upon such debt or right is Allowed pursuant to section 502 of the Bankruptcy code; or (3) the Holder of such a Claim or Equity Interest has accepted the Plan~~-~~. Unless expressly provided in the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the Effective Date occurring.

2.      **Third Party Releases.**

To the extent allowed by applicable law, on, and as of, the Effective Date and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, Kevin DeMeritt shall be forever released from any and all obligations, actions, suits, claims, debts, accounts, causes of action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, and liabilities for Claims arising through the Effective Date (including but not limited to all claims based on or arising out of facts or circumstances that existed as of or prior to the Effective Date, including but not limited to claims based on malfeasance, negligence or strict liability, and further including but not limited to any derivative claims asserted on behalf of the Debtor), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, which the Participating States may have against Mr. DeMeritt which in any way related to the Chapter 11 Case, the Debtor (or its predecessors), or any of its operations or businesses. Provided, however, that the foregoing release is granted only by the Participating States that did not return the Opt-Out Notice with the opt-out box checked. Provided further that nothing in this Article V, Par 2 shall be construed to release Kevin DeMeritt from actual fraud or willful misconduct as determined by a Final Order.

3.      **Exculpation and Limitation of Liability.**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action arising between the Petition Date and the Effective Date related to any act or omission in connection with, relating to, or arising out of: (i) the Chapter 11 Case, (ii) the Plan, or any contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, (iii) the pursuit of Confirmation, (iv) the administration and implementation of the Plan, or (v) the distribution of property under the Plan or any other related agreement. The Exculpated Parties have, and upon closing of the Chapter 11 Case or the Effective Date shall be deemed to have, with respect to all actions arising on or after the Petition Date, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan; provided that in no event shall anything in this Article 5.3 be construed as a release of any person's gross negligence, fraud, or willful misconduct, each as determined by a Final Order.

4.      **Injunction.**

Except with respect to the obligations arising under the Plan or the Confirmation Order, and except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities that held, hold, or may hold claims or interests that have been discharged,

**released or exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Released Parties on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any lien or encumbrance of any kind against the Released Parties or the property of the Released Parties on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Released Parties or against the property of the Released Parties on account of or in connection with or with respect to any such claims or interests unless the Released Parties has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that the Released Parties asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE PROPERTY TO BE DISTRIBUTED PURSUANT TO THIS PLAN ANY OTHER CLAIMS OR EQUITY INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

5. **Protection of Regulatory Authority.**

For the avoidance of doubt, and notwithstanding any language contained in this Article V, nothing in the Plan or the Confirmation Order requested pursuant thereto, discharges, releases, precludes, or enjoins: (i) any liability, including any liability of a Released Party, to any Governmental Unit that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Effective Date: or (iii) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or operator of property after the Effective Date. Nor shall anything in the Plan or the Confirmation Order enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Nothing in the Plan or the Confirmation Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret the Plan, or the Confirmation Order or to adjudicate any defense asserted under those documents.

6. **Remedies Upon Default.**

The Debtor expects to be able to make all payments under the Plan. In the event of a default, however, pursuant to § 1191(c)(3) of the Bankruptcy Code, if the Reorganized Debtor defaults in payments under the Plan, the affected creditor shall notify the Reorganized Debtor, who shall have fifteen (15) days to cure the default. If the Reorganized Debtor does not cure within the 15 days, the creditor may file a notice of the default with the Bankruptcy Court and request a

hearing to consider appropriate remedies.

## ARTICLE 6 - GENERAL PROVISIONS

### 1.    Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the Estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the Estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the Estate.

### 2.    Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 3.    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 4.    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan and to remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order; (ii) to rule on any modification of the Plan proposed under § 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Equity Interest; (v) to ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan; (vi) to determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any Executory Contract; (vii) to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any entity's obligations in connection with the Plan, or to defend any of the rights, benefits, Estate property transferred, created, or otherwise provided or

confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof; (viii) to consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor and the Estate; (ix) to decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtor, or the Estate that may be pending on the Effective Date or that may be brought by the Debtor or the Reorganized Debtor, and to enter and enforce any default judgment on any of the foregoing; (x) to decide issues concerning the federal or state tax liability of the Debtor which may arise in connection with the confirmation of the Plan, including but not limited to the issuance of Form 1099s (or similar forms); (xi) to interpret and enforce any orders entered by the Bankruptcy Court in the Chapter 11 Case; (xii) to enforce the release, exculpation and injunction provisions contained in Article 5 herein; and (xiii) to enter an order closing the Chapter 11 Case when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

Notwithstanding the above paragraph, for any and all matters related to Article 2, Paragraph 7 ("Legal Compliance"), jurisdiction shall be determined pursuant to the laws of the applicable Governmental Unit.

## 5.    Headings.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## 6.    Successors and Assigns.

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

## 7.    Governing Law.

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof. However, Legal Compliance shall be construed and enforced in accordance with the laws of the applicable Governmental Unit.

## 8.    Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under § 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

34

If the Plan is confirmed under § 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Effective Date, or such longer time not to exceed 5 years as fixed by the Bankruptcy Court and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**9.      Reservation of Rights.**

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

**10.      Final Decree.**

Unless otherwise ordered by the Bankruptcy Court, once the Estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Reorganized Debtor or other party in interest shall file a motion with the Bankruptcy Court to obtain a final decree to close the case.

## ARTICLE 7 - CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

**1.      Conditions Precedent to Confirmation.**

It shall be a condition to Confirmation hereof that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Article 7.3:

(a)      The Plan and the Confirmation Order shall be in a form and substance reasonably acceptable to the Debtor and the Committee.

(b)      The Debtor may, in its sole discretion, withdraw the Plan if one or more of the Participating States opts-out of the Release set forth in Article 5.2.

**2.      Conditions Precedent to the Effective Date.**

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Article 7.3:

(a)      All of the schedules, documents, supplements and exhibits to the Plan shall have been filed in form and substance reasonably acceptable to the Debtor and the Committee.

(b)      The Bankruptcy Court shall have entered a Final Order, in form and substance reasonably acceptable to the Debtor confirming the Plan pursuant to section 1191 of the Bankruptcy Code.

(c)      All authorizations, consents and regulatory approvals required, if any, in

connection with the Plan's effectiveness shall have been obtained.

(d)     No order of a court shall have been entered and remain in effect restraining the Debtor from consummating the Plan and the transactions contemplated therein, and the Confirmation Order shall be in full force and effect.

(e)     All actions, documents, certificates and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws, and are in form and substance acceptable to the Debtors.

### 3.     **Waiver of Conditions.**

The conditions to Confirmation of the Plan and to the occurrence of the Effective Date set forth in this Article 7 may be waived at any time by the Debtor.

### 4.     **Effect of Failure of Conditions.**

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or Claims against the Debtor or any of the Released Parties; (ii) prejudice in any manner the rights of the Debtor, any Holders of a Claim or Equity Interest or any other entity; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Creditors or Equity Interest Holders or any other entity in any respect. In addition, the Debtor and all Holders of Claims against or Equity Interests in the Debtor shall be restored to the status quo as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred. Finally, the Participating States will be entitled to move to dismiss the Chapter 11 Case, request the Bankruptcy Court to re-open the Governmental Bar Date, and raise any other objection or opposition to the Chapter 11 Case.

### 5.     **Filing of Notice of the Effective Date.**

On the Effective Date or as shortly thereafter as reasonably practicable, the Debtor shall file a notice of the Effective Date with the Bankruptcy Court.

## **ARTICLE 8 - ATTACHMENTS**

The following documents accompany the Plan:

| Attached | Description | Exhibit |
|----------|-------------|---------|
| X | ~~Projections~~Liquidation Analysis | A |
| X | Distributions to be made on account of Allowed Class 3 Claims | B-1 |
| X | Duplicate Class 3 Claims | B-2 |
| X | Insufficient Information Class 3 Claims | B-3 |
| X | Executory Contracts and Unexpired Leases, to be Assumed | C |
| ~~X~~ | ~~Liquidation Analysis~~ | ~~D~~ |

## **ARTICLE 9 - DEFINITIONS**

1.  The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan. The definitions that follow that are found in the Bankruptcy Code are for convenience of reference only, and are superseded by the definitions found in the Bankruptcy Code.

2.  **Administrative Claimant**: Any person entitled to payment of an Administrative Expense.

3.  **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Bankruptcy Code and allowed under § 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent owed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

4.  **Administrative Tax Claim**: Any tax incurred pursuant to § 503(b)(1)(B) of the Code.

5.  **Allowed:** With respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the applicable Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a proof of claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely filed; or (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Bankruptcy Court,

any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Bankruptcy Court; provided that, with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection is so interposed, such Claim shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Equity Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes. "Allow" and "Allowing" shall have correlative meanings.

6.      **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

7.      **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

8.      **AIC**: Argonaut Insurance Company.

9.      **AIC Policy:** Follow Form Excess Insurance Policy, Policy No. MLX7601081-5, issued by AIC to the Debtor.

10.     **Avoidance Actions**: Any and all avoidance, recovery, subordination, or other claims, actions, or remedies which any of the Debtor, the Estate, or other appropriate parties in interest have asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

11.     **Ballot:** The form approved by the Bankruptcy Court and distributed to each Holder of an impaired Claim or Equity Interest that is entitled to vote on the Plan by which such parties may indicate acceptance or rejection of the Plan.

12.     **Bankruptcy Code**: The Bankruptcy Reform Act of 1978, as amendedand codified as Title 11, United States Code.

13.     **Bankruptcy Court**: The United States Bankruptcy Court for the District of Delaware.

14.     **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

15.     **Bar Date:** May 1, 2022, the date by which Proofs of Claim were required to be filed by Creditors.

16.     **BOC:** Banc of California.

17.     **Business Day**: Any day of the year, other than a Saturday or Sunday, on which national banking institutions in Wilmington, Delaware are open to the public for conducting business and are not required or authorized by Law to close.

18.     **Cash**: Cash, cash equivalents and other readily marketable securities orinstruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issuedby banks and commercial paper of any entity, including interest accrued or earned thereon.

19.     **Causes of Action**: All Claims, actions, causes of action, choses in action, Avoidance Actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims of the Debtor and/or the Estate that are or may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date against any entity, based in law or equity, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date with respect to matters arising on or before the Effective Date. For the avoidance of doubt, Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; and (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

20.     **Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Lear Capital, Inc. is the debtor in possession, Case No. 22-10165.

21.     **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

22.     **Claims Objection Bar Date:** The last day for objecting to a Claim, which shall be the later of (a) 180 days after the Effective Date and (b) such other period of

limitation as may be specifically fixed or extended by the Court, the Debtor or the Reorganized Debtor, or by an order of the Bankruptcy Court for objecting to Claims.

23.     **Claims Register**: The register of Claims maintained by the Voting Agent.

24.     **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

25.     **Committee:** The Committee of Customers appointed by the Office of the United States Trustee pursuant to a Notice filed on July 13, 2022.

26.     **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

27.     **Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be theentry of the Final Order vacating such stay or the date on which such stay expires and is nolonger in effect.

28.     **Confirmation Hearing**: The hearing to be held on ~~[*]~~June 8, 2023 to consider confirmation of the Plan.

29.     **Confirmation Order**: An order of the Bankruptcy Court or any amendmentthereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

30.     **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

31.     **Debtor** and **Debtor-in-Possession**: Lear Capital, Inc., the debtor in possession in this Chapter 11 Case.

32.     **De Minimis Amount:** The Pro Rata share calculated using the Recovery Calculation that is less than $50.00, which amount is considered too small to require distribution, and which funds will be reallocated according to Article 2 Section 6.f.

33.     **Disputed Claim:** Any claim against the Debtor pursuant to § 502 of the Bankruptcy Code that is not yet Allowed.

34.     **Distribution**: The property required by the Plan to be distributed to the holders of Allowed Claims.

35.     **Distribution Date**: The date on which a Distribution is made pursuant to this Plan.

36.     **Distribution Record Date:** The date an order is entered approving the solicitation, notice and tabulation procedures related to the Plan.

37.    **Effective Date**: The first Business Day on which (a) the Confirmation Date has occurred, (b) the Confirmation Order is a Final Order, unless, at the Debtor's option, the Debtor desires the Plan go effective regardless of any pending appeal, so long as no stay pending appeal has been granted, and (c) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in the Plan.

38.    **Entity** has the meaning set forth in section 101(15) of the Bankruptcy Code.

39.    **Equity Interest**: An ownership interest in the Debtor.

40.    **Estate:** The estate of the Debtor created on the Petition Date by Section 541 of the Bankruptcy Code.

41.    **Exculpated Parties:** All of the following: (a) the Debtor; (b) the present and former officers, directors, managers, and employees of the Debtor who served in such capacities at any point on or after the Petition Date; (c) the members of the Committee, only to the extent of their capacity as a member of the Committee; and (c) the Debtor's and the Committee's Professionals.

42.    **Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

43.    **File, Filed** or **Filing**: File, filed, or filing in the Chapter 11 Case with the Bankruptcy Court, including with respect to the filing of a Proof of Claim or proof of Equity Interest.

44.    **Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

45.    **General Unsecured Claim:** any Claim other than: (a) an Administrative Claim; (b) a Professional Fee Claim; (c) a Secured Claim; (d) a Priority Tax Claim; (e) an Other Priority Claim; or (f) an Equity Interest.

46.    **Governmental Bar Date**: August 29, 2022, the last date for governmental unit (as that term is defined by Section 101(27) to file a proof of claim, except as otherwise extended for the Participating States.

47.    **Governmental Unit**: As defined by 11 U.S.C. § 101(27), the term "governmental unit" means the United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

48.    **Holder**: an Entity holding a Claim or Equity Interest, as applicable.

49.  **Insurance Policies:** All insurance policies and surety bonds issued or providing coverage at any time to, or on behalf of, the Debtor or any of its predecessors and all agreements, documents or instruments relating thereto, including, without limitation, any and all indemnity agreements, but specifically excluding the AIC Policy.

50.  **Insurer:** Any company or other entity that has issued or entered into an Insurance Policy (including any third party administrator) and any respective predecessors and/or affiliates thereof, but specifically excluding AIC.

51.  **IRA(s):** Individual retirement account.

52.  **IRC**: The Internal Revenue Code.

53.  **Opt-Out Notice:** The Notice of Option to Opt Out of Third Party Release to be provided to the Participating States to allow the Participating States to opt-out of the third party release provided for in the Plan.

54.  **Other Priority Claim:** Any Claim entitled to priority in payment under Sections 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code.

55.  **Participating States:** All of the following states: Alabama Securities Commission ("Alabama"); State of Arizona ex rel. Arizona Corporation Commission ("Arizona"); Arkansas Securities Department ("Arkansas"); California Commissioner of Financial Protection and Innovation ("California"); Colorado Securities Commissioner ("Colorado"); State of Connecticut Department of Banking ("Connecticut"); Delaware Department of Justice, Investor Protection Unit ("Delaware"); District of Columbia Dept. of Insurance, Securities and Banking ("District of Columbia"); Office of the Georgia Secretary of State Securities Division ("Georgia"); State of Hawaii, Department of Commerce and Consumer Affairs, Securities Enforcement Branch ("Hawaii"); Idaho Department of Finance ("Idaho"); State of Illinois ("Illinois"); Indiana Secretary of State, Securities Division ("Indiana"); Iowa Insurance Division ("Iowa"); Kentucky Department of Financial Institutions ("Kentucky"); Louisiana Office of Financial Institutions ("Louisiana"); Maine Securities Administrator ("Maine"); Maryland Securities Division ("Maryland"); Massachusetts Securities Division ("Massachusetts"); Michigan Department of Attorney General ("Michigan"); State of Minnesota, Department of Commerce ("Minnesota"); Securities Division of the Mississippi Secretary of State's Office ("Mississippi"); Missouri Securities Division ("Missouri"); Montana Commissioner of Securities & Insurance ("Montana"); Nebraska Department of Banking and Finance ("Nebraska"); New Hampshire Bureau of Securities Regulation ("New Hampshire"); New Mexico Office of the Attorney General ("New Mexico"); North Carolina Department of the Secretary of State ("North Carolina"); North Dakota Securities Department ("North Dakota"); Ohio Division of Securities ("Ohio"); Oregon Department of Consumer and Business Services ("Oregon"); Puerto Rico Office of the Commissioner of Financial Institutions ("Puerto Rico"); Rhode Island Department of Business

Regulation, Securities Division ("Rhode Island"), Securities Division of the South Carolina Office of the Attorney General ("South Carolina"); South Dakota Division of Insurance, Securities Regulation Office ("South Dakota"); Tennessee Department of Commerce and Insurance, Securities Division ("Tennessee"); Texas State Securities Board ("Texas"); Utah Division of Securities ("Utah"); Vermont Department of Financial Regulation ("Vermont"); Washington Department of Financial Institutions, Securities Division ("Washington"); West Virginia Securities Commission ("West Virginia"); and the Wisconsin Division of Securities ("Wisconsin"). A state or other agency that is not listed in this Definition may become a Participating State at any time prior to Plan confirmation by providing written notification to the Debtor's counsel.

56. **Petition Date**: March 2, 2022, the date the chapter 11 petition for relief was filed.

57. **Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

58. **Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

59. **Professional**: A person or Entity employed pursuant to a Final Order in accordance with Sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to Sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

60. **Professional Fee Claims**: A Claim of a Professional for professional services rendered or costs incurred on or after the Petition Date through the Effective Date.

61. **Proof of Claim**: A proof of Claim Filed in the Chapter 11 Case.

62. **Pro Rata:** A proportionate allocation of the funds available to Unfiled Customers based on each Unfiled Customer's Recovery Calculation, with that pro rata share equaling the Unfiled Customer's Recovery Calculated divided by the total of all Unfiled Customer Recovery Calculations multiplied by the amount of available funds.

63. **Recovery Calculation:** The difference between the total spread charged and paid by a Class 3 Creditor (according to the Debtor's books and records) and a hypothetical 12% spread.

64. **Released Parties:** All of the following, and in each case in its capacity as such: (a) the Debtor and the Reorganized Debtor, (b) Kevin DeMeritt, and (c) with respect to each of the foregoing Persons in clauses (a) through (b), such Entities' respective predecessors, successors and assigns, provided, however, that notwithstanding the foregoing, and for the avoidance of doubt, nothing herein shall release any Causes of Action of the Debtor or the Estate against any of the Debtor's Representatives that did not serve in such capacity on or after the Petition Date.

65.     **Relevant Period:** January 1, 2016 through March 3, 2022.

66.     **Reorganized Debtor**: The Debtor after the Effective Date.

67.     **Restructuring Documents:** The Plan, and the various agreements and other documents formalizing or implementing the Plan and the transactions contemplated thereunder.

68.     **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets [D.I. Nos. 89 and 90].

69.     **Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

70.     **Third-Party Administrator:** The Entity appointed by the Debtor and acceptable to the Participating States who will administer and make payments to Unfiled Customers.

71.     **Trustee**: Jami Nimeroff, the Subchapter V trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

72.     **Unfiled Customer:** Any Entity who entered into a transaction with the Debtor during the Relevant Period that did not file a Proof of Claim by the Bar Date and has not received compensation from the City of Los Angeles Settlement or any private settlement with the Debtor and did not reside in the State of New York at the time of their transaction (based on the Debtor's sales records).

73.     **Vendor:** All trade vendors and other creditors that have an ongoing business relationship with the Debtor.

74.     **Voting Agent:** BMC Group, Inc.

75.     **Voting Deadline:** [*]May 30, 2023 at 4:00 p.m. Eastern time.

## ARTICLE 10 - RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

### 1.     Rules of Interpretation.

For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document,

44

schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a holder of a Claim or Equity Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; (13) any immaterial effectuating provisions may be interpreted by the Debtor, the Reorganized Debtor, or the Trustee in such a manner that is consistent with the overall purpose and intent of the Plan, all without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity; and (14) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or to the Reorganized Debtor shall mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

## 2.    **Computation of Time.**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

## 3.    **Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of California, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate governance matters relating to the Debtor or the Reorganized Debtor, as applicable, shall be governed by the laws of the state of incorporation or formation of the Debtor or Reorganized Debtor, as applicable.

However, Legal Compliance shall be construed and enforced in accordance with the laws of the applicable Governmental Unit.

4.       **Reference to Monetary Figures.**

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

5.       **Controlling Document.**

In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

Respectfully submitted,

DATED: ~~April 14~~May 1, 2023          **MORRIS JAMES LLP**
Wilmington, Delaware

By: */s/ Jeffrey R. Waxman*
Jeffrey R. Waxman ~~Jeffrey Waxman~~ (DE Bar No. 4159)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
Telephone:  (302) 888-6959
Facsimile:  (302) 571-1750
Email: JWaxman@morrisjames.com
Email: BKeilson@morrisjames.com

-and-

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
Alan J. Friedman (CA Bar No. 132580)
Melissa Davis Lowe (CA Bar No. 245521)
100 Spectrum Center Drive, Suite 600
Irvine, CA 92618
Telephone:  (949) 340-3400
Facsimile:  (949) 340-3000
Email: AFriedman@shulmanbastian.com
Email: MLowe@shulmanbastian.com

*Attorneys for Debtor and Debtor in Possession*