# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 (Subchapter V) |
| LEAR CAPITAL, INC.,[1] | Case No. 22-10165 (BLS) |
| Debtor. | Re: D.I. 697 |

## SUPPLEMENTAL DECLARATION OF JOHN OHANESIAN IN SUPPORT OF CONFIRMATION OF SMALL BUSINESS DEBTOR PLAN OF REORGANIZATION

John Ohanesian, being duly sworn, deposes and says:

1. I am over the age of 18 and am authorized to submit this Supplemental Declaration on behalf of Lear Capital, Inc., the debtor herein (the "Debtor"). I am the Chief Executive Officer and President for the Debtor. If called upon to testify, I could and would testify competently to the facts set forth herein. The facts set forth in this Declaration are based upon my personal knowledge, my review of the Debtor's records, information provided to me or verified by employees of the Debtor, and my personal opinion based upon my experience, knowledge, and information provided to me.

2. I submit this Supplemental Declaration in connection with the Declaration of John Ohanesian in Support of Confirmation of Small Business Debtor Plan of Reorganization [Docket No. 697] (the "Declaration") and in further support of the Plan.

3. In my Declaration, I referenced that "the holder of Claim 172 never conducted any business with the Debtor and as such, cannot have a claim against the Debtor."

4. In particular, and to provide additional information on the above quoted statement, the holder of Claim 172 made his original purchase with The Gold Investment Group ("TGIG"). Sometime thereafter, the Debtor purchased TGIG's customer list, which included the holder of Claim 172 as a customer of TGIG.

---

[1] The last four digits of the Debtor's federal tax identification number are 7197. The Debtor's address is 1990 S. Bundy Drive, Suite 600, Los Angeles CA 90025.

1

16165197/1

5. When the Debtor purchases a customer list from another metals company, the Debtor places the purchased customers' metals transactions into the Debtor's database so that the Debtor can value the portfolio for the customer and provide updates.

6. Based on the available information that the Debtor receives from the company that the Debtor purchased, the Debtor will import each of the purchased companies' customers' invoices and purchase orders into the Debtor's system. The Debtor does not have a way to import the invoice from the purchased company with its logo on it, so the Debtor tracks where the customer originated from by coding it into the Debtor's "notes" section of the Debtor's database as well as in the "source" of the customer in the Debtor's database. Thus, while an invoice with the Debtor's logo is generated, the Debtor is meticulous in tracking the customer's original information in the Debtor's database so the Debtor knows where the customer originated from. In the case of the holder of Claim 172, TGIG is coded in the Debtor's database as the source of the customer.

7. The Debtor also does not upload a purchased customer's payment information into its database because the Debtor was not paid for those metals, and the Debtor would not have either a physical or digital copy of the receipt of those metals. In the case of the holder of Claim 172, he would have sent funds to TGIG around the date of his invoice.

8. In summary, the Debtor must upload the purchased companies' information into the Debtor's database to track and value the account properly. When an invoice must be generated, the Debtor does not have the originating company's logo so a "Lear" invoice is generated. In this instance, though, the source, notes and financial information in the Debtor's database are clear that the holder of Claim 172 has never done business with the Debtor.

9. In Claim 172, the claimant notes that his original invoices are from TGIG and that he was informed that the Debtor had taken over TGIG's accounts at a later point in time. In order to try to assist the claimant, I asked one of my staff to investigate the status of the claimant's account.

16165197/1

In or around mid May 2023, my staff member reported back that the creditor has metals stored at First State Depository ("FSD") in Delaware. Through an internet search, it was discovered that FSD is in receivership. My staff member then called the listed receiver and he received a voicemail back from an attorney at the law firm of Scheef & Stone. My staff member called the attorney and left a voicemail with the claimant's phone contact information in the Debtor's records and encouraged the attorney or someone in her office to reach out to the claimant.

The facts set forth above are true and correct to the best of my knowledge, information and belief. Pursuant to section 1746 of title 28 of the United States Code, I declare under penalty of perjury that the foregoing is true and correct.

DATED: June 6, 2023.

John Ohanesian