## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
|  | ) | Subchapter V |
| LEAR CAPITAL, INC., a California | ) |  |
| corporation, [1] | ) | Case No. 22-10165 (BLS) |
|  | ) |  |
|  | ) | **RE: D. I. 694** |
| Debtor. | ) |  |
|  | ) |  |

## ORDER CONFIRMING FIRST AMENDED SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION

The First Amended Small Business Debtor's Plan of Reorganization [D.I. No. 694] (as amended, modified, or supplemented, the "<u>Plan</u>")[2] having been filed with this Court (the "<u>Court</u>") by Lear Capital, Inc., the debtor and debtor in possession herein (the "<u>Debtor</u>"), and the Court having entered, after due notice and a hearing, an order dated May 2, 2023 and an amended order dated May 7, 2023 (collectively, the "<u>Solicitation Procedures Order</u>") [Docket Nos. 658 and 664], (i) approving solicitation packages and procedures for distribution thereof, (ii) approving forms of ballot, notice of option to opt out and notice of non-voting status, and establishing voting procedures, (iii) scheduling a hearing (the "<u>Confirmation Hearing</u>"); and (iv) establishing notice and objection procedures with respect to confirmation of the Plan; and the Plan having been transmitted to all holders of Claims in Class 3 (the "<u>Voting Class</u>"); and the Confirmation Hearing having been held before the Court on June 8, 2023, after due notice to holders of Claims and Interests, the Participating States and other parties in interest, pursuant to the United States Bankruptcy Code found at Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and the

---

[1] The last four digits of the Debtor's federal tax identification number are 7197. The Debtor's address is 1990 S. Bundy Drive, Suite 600, Los Angeles CA 90025.

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Plan.

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and upon all of the proceedings held before the Court, and after full consideration of: (i) the Declaration of Brad Daniel of BMC Group Regarding Voting and Tabulation of Ballots for Small Business Debtor's Plan of Reorganization Proposed by the Debtor and Supplemental Declaration of Brad Daniel (collectively, the "Voting Declaration"), and the testimony contained therein; (ii) the Declaration of Lance Miller (the "Miller Declaration"), and the testimony contained therein; (iii) the Declaration of John Ohanesian (the "Ohanesian Declaration"), and the testimony contained therein; (iv) the Declaration of Kevin DeMeritt (the "DeMeritt Declaration"), and the testimony contained therein; and (v) all other evidence proffered or adduced, memoranda and objections filed in connection with, and arguments of counsel made at, the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor,

It hereby is DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.    <u>Findings and Conclusions.</u>  The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.    <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).</u>  The Court has jurisdiction over this Chapter 11 Case pursuant to sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference from the United States*

*District Court for the District of Delaware*, dated as of February 29, 2012.  Venue of this Chapter 11 Case is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to section 157(b)(2)(L) of title 28 of the United States Code, and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

3.     <u>Commencement of the Chapter 11 Case</u>.   On the Petition Date, the Debtor commenced a case under Chapter 11, Subchapter V of the Bankruptcy Code.  The Debtor has operated its business and managed its property as a debtor in possession pursuant to Sections[3] 1107(a) and 1108.  Other than Jami Nimeroff, the Subchapter V trustee, no trustee or examiner has been appointed in this Chapter 11 Case.

4.     <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed and orders entered thereon, including but not limited to the petition, bankruptcy schedules and statement of financial affairs filed by the Debtor.  The Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of this Chapter 11 Case.  The Court also takes judicial notice of the mediation that took place between the Debtor, the Participating States and the Committee on or about February 27, 2023.

5.     <u>Burden of Proof</u>.  The Debtor has the burden of proving the elements of Section 1191(a) by a preponderance of the evidence, and it has met that burden as further found and determined herein.

---

[3] Unless otherwise noted, any use of the capitalized "Section" herein shall refer to the applicable section in the Bankruptcy Code found at Title 11 of the United States Code.

6.       Notice; Transmittal and Mailing of Materials.

(a)      Due, adequate and sufficient notice of the Plan and the Confirmation Hearing, along with the deadlines for voting on and filing objections to the Plan and for opting out of the Third-Party Release, has been given to all known holders of Claims and Interests and to the Participating States, as applicable, and no other or further notice is or shall be required;

(b)      The Plan and Ballots were transmitted and served in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and such transmittal and service were adequate and sufficient, and no further notice is or shall be required.  All procedures used to distribute the solicitation packages to the Voting Class and to the Participating States were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws and regulations;

(c)      Adequate and sufficient notice of the Confirmation Hearing and other deadlines described in the Plan have been given in compliance with the Bankruptcy Code and the Bankruptcy Rules, and no other or further notice is or shall be required; and

(d)      The filing with the Court and service of the Plan, and the disclosure of any further modifications on the record of the Confirmation Hearing, constitute due and sufficient notice of the Plan and all later modifications thereto.

7.       Voting.  As evidenced by the Voting Declaration, votes to accept the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Bankruptcy Code and the Bankruptcy Rules.

8.       Proper Classification (Sections 1122 and 1123(a)(1)).  In addition to Administrative Claims and Priority Tax Claims that need not be classified, the Plan classifies five (5) Classes of Claims and Interests.  The Claims and Interests placed in each Class are substantially similar to

4

other Claims or Interests, as the case may be, in each such Class.  Valid business, factual and/or legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, the classifications were not done for any improper purpose, and such Classes do not unfairly discriminate between or among holders of Claims or Interests.  Accordingly, the Plan satisfies Sections 1122 and 1123(a)(1).

9.      Specified Treatment of Impaired Classes (Section 1123(a)(3)).  Article 2 of the Plan designates Class 3 (General Unsecured Claims of Resolved Parties) as impaired and specifies the treatment of this Class of Claims under the Plan.  Accordingly, the Plan satisfies Section 1123(a)(3).

10.      No Discrimination (Section 1123(a)(4)).  The Plan provides for the same treatment by the Debtor for each Claim or Interest in each respective Class, unless the holder of a Claim or Interest has agreed to a less favorable treatment.  Accordingly, the Plan satisfies Section 1123(a)(4).

11.      Implementation of Plan (Section 1123(a)(5)).  The Plan provides adequate and proper means for the Plan's implementation.  Accordingly, the Plan satisfies Section 1123(a)(5).

12.      Nonvoting Equity Securities (Section 1123(a)(6)).  Section 1123(a)(6) requires that a debtor's corporate constituent documents prohibit the issuance of non-voting equity securities. The Plan does not contemplate the issuance of non-voting equity securities and as such, Section 1123(a)(6) is inapplicable.

13.      Designation of Directors and Officers (Section 1123(a)(7)).  The Plan provides that the Board of Directors of the Debtor immediately prior to the Effective Date shall serve as the initial Board of Directors of the Reorganized Debtor on and after the Effective Date.  The identities of the Directors and their compensation are set forth in the Plan.  The manner of selection is

consistent with the interests of creditors and public policy as the current Board of Directors will serve as the initial Board of Directors after the Effective Date.  Accordingly, the Plan satisfies Section 1123(a)(7).

14.     <u>Impairment/Unimpairment of Classes of Claims and Equity Interests (Section 1123(b)(1))</u>.  The Plan provides that Class 3 is impaired and Classes 1, 2, 4 and 5 are unimpaired, as contemplated by Section 1123(b)(1).

15.     <u>Assumption, Assignment, and Rejection (Section 1123(b)(2))</u>.  As contemplated by Section 1123(b)(2), Article 2.4 of the Plan provides that all of the Debtor's Executory Contracts will be assumed as of the Effective Date.

16.     <u>Additional Plan Provisions (Section 1123(b)(6))</u>.  The Plan's additional provisions, including, without limitation, certain release and exculpation provisions, are fair, appropriate and consistent with the applicable provisions of the Bankruptcy Code.

17.     <u>Good Faith Solicitation (Section 1125(e))</u>.  Based on the record before this Court in this Chapter 11 Case, the Exculpated Parties have acted in "good faith" within the meaning of Section 1125(e) and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in Section 1125, and the Exculpated Parties are entitled to the protections afforded by Section 1125(e) and the exculpation provisions set forth in Article 5 of the Plan.

18.     <u>Compliance with Bankruptcy Code (Section 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code.  Accordingly, the Plan satisfies Section 1129(a)(1).

19.     <u>Compliance with Bankruptcy Code (Section 1129(a)(2))</u>.  The Debtor has complied with the applicable provisions of the Bankruptcy Code.  Accordingly, the Plan satisfies Section 1129(a)(2).  Specifically, among other things:

(a)     The Debtor is a proper debtor under section 109(d) of the Bankruptcy Code;

(b)     The Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by order of the Court; and

(c)     The Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in (i) transmitting the Plan and related documents and notices and (ii) soliciting and tabulating votes on the Plan.

20.     <u>Plan Proposed in Good Faith (Section 1129(a)(3))</u>.  The Debtor proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying Section 1129(a)(3).  The Debtor's good faith is evident from the facts and records of the Chapter 11 Case and the record of the Confirmation Hearing and other proceedings held in this Chapter 11 Case, the extensive negotiations undertaken to reach the terms of the Plan, and the Debtor's decision to proceed with the Plan notwithstanding its ability under the Plan at Article 7.1(b) to withdraw the Plan due to the opt outs received by certain of the Participating States.  The Plan was proposed with the legitimate and honest purpose of making distributions to creditors and continuing the Debtor's operations.

21.     <u>Payments for Services or Costs and Expenses (Section 1129(a)(4))</u>.  Any payment made or to be made by the Debtor for services or for costs and expenses in or in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, the Court as reasonable, or was paid in the ordinary course of business.  Accordingly, the Plan satisfies Section 1129(a)(4).

22.    <u>Directors, Officers and Insiders (Section 1129(a)(5))</u>.  Article 2.8 lists the Debtor's officers, directors and insiders and their compensation.  Accordingly, Section 1129(a)(5) is satisfied.

23.    <u>No Rate Changes (Section 1129(a)(6))</u>.  The Plan does not provide for any changes in any regulated rates.  Accordingly, the Plan satisfies Section 1129(a)(6).

24.    <u>Best Interests of Creditors (Section 1129(a)(7))</u>.  The Plan satisfies Section 1129(a)(7).  The liquidation analysis, the Miller Declaration and other evidence proffered or adduced at the Confirmation Hearing: (a) are persuasive and credible; (b) have not been controverted by other evidence; and (c) establish that each holder of an impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.  Accordingly, the Plan satisfies Section 1129(a)(7).

25.    <u>Treatment of Administrative, Priority Tax, and Other Priority Claims (Section 1129(a)(9))</u>.  The treatment of Administrative Claims pursuant to Article 2.1 of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.  The treatment of Priority Tax Claims pursuant to Article 2.1 of the Plan satisfies the requirements of Section 1129(a)(9)(C).  Accordingly, the Plan satisfies the requirements of Section 1129(a)(9).

26.    <u>Acceptance (Section 1129(a)(10))</u>.  The only impaired Class is Class 3.  As set forth in more detail in the Voting Declaration, Class 3 voted to accept the Plan.

27.    <u>Feasibility (Section 1129(a)(11))</u>.  The Miller Declaration, the Ohanesian Declaration, and the DeMeritt Declaration, in addition to the other evidence proffered or adduced at the Confirmation Hearing regarding feasibility: (a) is persuasive and credible; (b) has not been

controverted by other evidence; and (c) establishes that the Debtor will have sufficient funds to administer and consummate the Plan and to close the Chapter 11 Case.  Accordingly, the Plan satisfies the requirements of Section 1129(a)(11).

28.     Payment of Fees (Section 1129(a)(12)).  As provided in Article 2.1 of the Plan, all clerk's office fees and other fees payable under section 1930 of title 28, incurred by the Estate prior to the Effective Date, if any, shall be paid in Cash on the Effective Date.  Accordingly, the Plan satisfies the requirements of Section 1129(a)(12).

29.     Continuation of Retiree Benefits (Section 1129(a)(13)).  Section 1129(a)(13) does not apply in this Chapter 11 Case because the Debtor is not obligated to pay any retiree benefits.

30.     Payment of Domestic Support Obligations (Section 1129(a)(14)).  Section 1129(a)(14) does not apply in this Chapter 11 Case because the Debtor is not required to pay any domestic support obligations.

31.     Transfers of Property by Nonprofit Entities (Section 1129(a)(16)).  Section 1129(a)(16) does not apply in this Chapter 11 Case because the Debtor is a moneyed, business or commercial corporation.

32.     Only One Plan (Section 1129(c)).  The Plan is the only chapter 11 plan filed in this Chapter 11 Case.  Accordingly, Section 1129(c) is inapplicable.

33.     Principal Purpose of the Plan (Section 1129(d)).  The principal purpose of the Plan, as evidenced by its terms, is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

34.     Satisfaction of Confirmation Requirements.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in Section 1191(a).

35.    <u>Bankruptcy Rule 3016(a)</u>.  The Plan reflects the date it was filed with the Court and identifies the entity submitting it as the plan proponent.  Accordingly, the Plan satisfies Bankruptcy Rule 3016(a).

36.    <u>Implementation</u>.  All documents and agreements necessary to implement the Plan have been negotiated in good faith at arm's-length, are in the best interest of the Debtor and its Estate, and shall upon execution be valid, binding and enforceable documents and agreements not in conflict with any federal or state law.

37.    <u>Good Faith</u>.  The Exculpated Parties under the Plan will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby, and (b) take the actions authorized and directed by this Confirmation Order.

38.    <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.  The Debtor has exercised reasonable business judgment in determining whether to assume or reject each of its executory contracts and unexpired leases as set forth in Article 2.4 of the Plan.

39.    <u>Conditions to Confirmation</u>.  The conditions to Confirmation set forth in Article 7.1 of the Plan have been satisfied, waived or will be satisfied by entry of this Confirmation Order.

40.    <u>Conditions to Effective Date</u>.  The conditions to the Effective Date are set forth in Section 7.2 of the Plan.  Such conditions may be waived by the Debtor.

41.    <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction over the matters set forth in Article 6.4 of the Plan.  Notwithstanding, for any and all matters related to Article 2, Paragraph 7 of the Plan, jurisdiction shall be determined pursuant to the laws of the applicable Governmental Unit.

42.     <u>Release</u>.  The Third-Party Release set forth in Article 5.2 of the Plan constitutes a good faith compromise and settlement of the matters covered thereby.  Such compromise and settlement is made in exchange for consideration, are in the best interests of the Debtor, its Estate, and holders of Claims and Interests, is fair, equitable, reasonable, and is an integral element of the resolution of this Chapter 11 Case in accordance with the Plan.

**<u>ORDER</u>**

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

43.     <u>Confirmation</u>.  The Plan, a copy of which is attached hereto as <u>Exhibit A</u>, is approved and confirmed under Section 1191(a). The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

44.     <u>Termination of Trustee's Services</u>.  In accordance with Section 1183(c)(1), the Subchapter V Trustee's services shall automatically terminate upon the Plan's substantial consummation.

45.     <u>Objections</u>.  Any objections to the Plan or to Confirmation of the Plan that have not been withdrawn, waived or settled, and all reservations of rights pertaining to Confirmation of the Plan, are overruled on the merits.

46.     <u>Provisions of Plan and Order Nonseverable and Mutually Dependent</u>.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

47.     <u>Solicitation and Notice</u>.  Notice of the Confirmation Hearing was appropriate and satisfactory based on the circumstances of the Chapter 11 Case and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  The solicitation

of votes, and to the Participating States to opt out of the Third-Party Release, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

48.     <u>Plan Classifications Controlling</u>.  The classification of Claims and Interests for purposes of distributions made under the Plan shall be governed solely by the terms of the Plan.

49.     <u>Implementation of the Plan</u>.  The Plan will be implemented by the Reorganized Debtor in a manner consistent with the terms and conditions set forth in the Plan and this Confirmation Order.

50.     <u>Plan Funding</u>.  The funds utilized to make Cash payments under the Plan have been and/or will be generated from, Cash on hand, the Insider Contribution and, to the extent necessary, operations of the Debtor's business.

51.     <u>Vesting of Assets in the Debtor.</u>  Except as expressly provided in the Plan, (i) confirmation of the Plan vests all of the property of the Estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

52.     <u>Setoffs</u>.  Nothing contained in the Plan shall constitute a waiver or release by the Reorganized Debtor of any rights in respect of legal and equitable objections, defenses, setoffs, or recoupment.  To the extent permitted by applicable law, the Reorganized Debtor may, but shall not be required to, set off or recoup against any Claim and the payments or other distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose before the Petition Date that the Estate, or the Reorganized Debtor may have against the Holder of such Claim or Equity Interest.  Notwithstanding anything contained herein or in the Plan to the contrary,

and for the avoidance of doubt, Article 2.6(d) of the Plan shall not apply to the payments being made on account of the Unfiled Customers.

53.   <u>Disputed Claims</u>.  The provisions of Article 2.3 of the Plan, including, without limitation, the provisions governing procedures for the prosecution and settlement of Disputed Claims, are fair and reasonable and are approved.

54.   <u>Disallowance of Claims Without Sufficient Information.</u> The following Claims are Disallowed because the applicable Claimant failed to provide additional information to support the Claim by May 23, 2023, as required under the Plan and the Solicitation Order: Claims 52, 155 and 157.

55.   <u>Distributions Upon Allowance of Disputed Claims</u>.  Except as otherwise provided in a Final Order or as agreed by the relevant parties, distributions on account of Disputed Claims, if any, that become Allowed, shall be made by the Reorganized Debtor as soon as reasonably practicable after the Disputed Claim becomes an Allowed Claim.

56.   <u>Plan Distributions</u>.  The Debtor or Reorganized Debtor, as applicable, shall be responsible for making Distributions under the Plan, unless the Debtor chooses to engage a Third-Party Administrator acceptable to the Participating States to make distributions to the Unfiled Customers.  All such distributions to the holders of Allowed Claims and to the Unfiled Customers shall be made in accordance with the Plan.

57.   <u>Approval of Settlement</u>.  To the extent necessary, the resolution between the Debtor and the Participating States as set forth in the Plan is approved as fair and reasonable and in the best interest of the Estate and is approved pursuant to Bankruptcy Rule 9019.

58.   <u>Cash Distributions</u>.  If any Distribution under the Plan to the Holder of an Allowed Claim would be less than $50.00, the Debtor may hold such distribution until the time of a

subsequent or final distribution. If the final distribution under the Plan to the Holder of an Allowed Claim would be less than $50.00, the Debtor may cancel such distribution.  For the avoidance of doubt, this provision shall not apply to the distributions to be made to the Unfiled Customers.

59.    Delivery of Plan Distributions.  Except as otherwise provided in the Plan (including specifically Article 2.2(e)), all distributions under the Plan on account of any Allowed Claims shall be made, as set forth on the latest date of the following documents: (a) to the address of payment set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed; (b) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related Proof of Claim and prior to the Effective Date; and (c) at the addresses reflected in the Schedules if no Proof of Claim had been Filed and the Debtor and Reorganized Debtor have not received a written notice of a change of address prior to the Effective Date.  The Reorganized Debtor shall make one attempt to make the distributions contemplated hereunder in accordance with the procedures set forth herein. The Reorganized Debtor, in its sole discretion may, but shall have no obligation to, attempt to locate Holders of undeliverable distributions. Any distributions returned to the Reorganized Debtor as undeliverable or otherwise shall remain in the possession of the Reorganized Debtor until such time as a distribution becomes deliverable, and no further distributions shall be made to such Holder unless such Holder notifies the Reorganized Debtor of its then current address.  Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable or unclaimed distribution within 180 days after the first distribution is made to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for the undeliverable or unclaimed distribution against the Debtor, the Estate, the Reorganized Debtor,

or its properties or assets, and such distribution shall be deemed unclaimed property under Article 2.6(c) of the Plan.  Likewise, Unfiled Customers shall have 180 days to cash or negotiate their check.  For any Unfiled Customer that has not cashed or negotiated his/her/its check after 180 days, the Debtor or the Third-Party Administrator shall tender the funds and a list of applicable Unfiled Customers to each Participating State or state, as applicable, using the same approach identified in Paragraph 60 below.

60.    <u>Delivery of Distributions to Unfiled Customers</u>.  The Reorganized Debtor or a third party administrator engaged by the Reorganized Debtor and acceptable to the Participating States, at the Debtor's option, will run a National Change of Address Update on the mailing prior to issuing the payments.  If any mail is returned as undeliverable, the Reorganized Debtor or the third party administrator, at the Debtor's option, shall use reasonable efforts to identify a new address if possible and attempt a second good-faith mailing.  After the initial and any follow-up good-faith mailing attempt, the names, social security number (if known), and contact information (mailing address, email address, phone number) and payment amount of any Unfiled Customers whose mail was undeliverable will be sent as follows: (1) For Unfiled Customers who resided in any of the Participating States at the time of their transaction, to each applicable Participating State's securities administrator with a check for the gross amount owed to all Unfiled Customers from that Participating State whose mail was returned as undeliverable.  The sums received by the Participating States will be used by each Participating State in accordance with state law.  (2) For Unfiled Customers who resided in states other than one of the Participating States at the time of their transaction, funds for such Unfiled Customer shall be sent to that state's unclaimed property authority in the name of such Unfiled Customer. (3) Unfiled Customers will be deemed for this

purpose to be residents of the state in which they resided at the time of the transaction(s) with the Debtor, as listed in the Debtor's records.

61.     <u>Distributions to Holders as of the Confirmation Date</u>. As of 5:00 p.m. (prevailing Eastern Time) on the Distribution Record Date, the transfer registers for Claims shall be closed. The Reorganized Debtor shall have no obligation to recognize the transfer or sale of any Claim that occurs after such time on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make distributions only to those Holders who are Holders of Claims as of 5:00 p.m. (prevailing Eastern Time) on the Distribution Record Date.  Except as otherwise provided in a Final Order of this Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to 5:00 p.m. (prevailing Eastern time) on the Distribution Record Date shall be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

62.     <u>Indefeasibility of Distributions</u>.  All distributions provided for under the Plan shall be indefeasible.

63.     <u>Saturday, Sunday, or Legal Holiday</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next Business Day.

64.     <u>Final Order</u>.  Any requirement in the Plan for a Final Order may be waived by the Debtor.

65.     <u>Assumption or Rejection of Executory Contracts</u>.  Effective on and as of the Confirmation Date, all Executory Contracts are hereby specifically assumed by the Debtor on or before the Effective Date.  Any monetary amounts needed to cure any default under an Executory

Contract that is assumed shall be paid on the Effective Date, or as soon as reasonably practicable thereafter.

66.     <u>Modification of Plan</u>.  The Debtor may further alter, amend or modify the Plan subject to and in accordance with Section 1193.

67.     <u>Revocation or Withdrawal of Plan</u>.  The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date.  If the Debtor revokes or withdraws the Plan prior to the Effective Date, then the Plan shall be deemed null and void, and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

68.     <u>Retention of Jurisdiction</u>.  Following the Effective Date, the Court will retain exclusive jurisdiction of the Chapter 11 Case to the maximum extent permitted by law for the purposes set forth in Article 6.4 of the Plan.  If the Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Chapter 11 Case, including with respect to the matters set forth in Article 6.4 of the Plan, such Article 6.4 shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

69.     <u>Discharge</u>. Pursuant to Section 1191(a), on the Effective Date, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, to the extent specified in section 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor shall not be discharged of any debt imposed by the Plan or to the extent provided in section 1141(d)(6) of the Bankruptcy Code.  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, in this Order, or in section 1141(d)(6) of the Bankruptcy Code, the

confirmation of the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete discharge effective as of the Effective Date, of all Claims against, and Equity Interests in, the Debtor or any of its assets or properties, that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, including but not limited to any and all Claims that were or could have been filed by customers, the Participating States (or any government entity or sovereign (whether in its own name or on behalf of the constituents of such governmental body)), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim based upon such debt or right is Allowed pursuant to section 502 of the Bankruptcy code; or (3) the Holder of such a Claim or Equity Interest has accepted the Plan. Unless expressly provided in the Plan, this Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the Effective Date occurring.

70.    <u>Injunction</u>.  Except with respect to the obligations arising under the Plan or the Confirmation Order, and except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities that held, hold, or may hold claims or interests that have been discharged, released or exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any lien or encumbrance of any kind on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or

with respect to any such claims or interests unless the discharged, released or exculpated party timely asserts a setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan. ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN ANY OTHER CLAIMS OR EQUITY INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

71.     Third Party Release.  To the greatest extent permissible by law, and except as otherwise specifically provided in Article 5.2 of the Plan, as of the Effective Date, the "Third Party Release" set forth in Article 5.2 of the Plan is hereby approved.

72.     Exculpation.  The exculpation provisions set forth in Article 5.3 of the Plan are hereby approved.

73.     Preservation and Application of Insurance.  On the Effective Date, the Reorganized Debtor shall assume the Insurance Policies (for the avoidance of doubt, the AIC Policy is specifically excluded from the Insurance Policies to be assumed and as otherwise discussed herein) in their entirety pursuant to sections 105 and 365 of the Bankruptcy Code.  On and after the Effective Date, the Reorganized Debtor shall become and remain liable in full for all of its and the Debtor's obligations under the Insurance Policies regardless of whether such obligations arise before or after the Effective Date.  All Insurance Policies, the terms and conditions thereof and all legal, equitable or contractual rights, obligations, and defenses of the Insurers (for the avoidance of doubt, AIC is specifically excluded from the "Insurers"), the Debtor (or, after the Effective

Date, the Reorganized Debtor), or any other individual or entity, as applicable, under any Insurance Policies, whether arising before or after the Effective Date, shall survive and shall not be amended, modified, waived, released, discharged or impaired in any respect, and all such rights and obligations shall be determined under the Insurance Policies and applicable non-bankruptcy law as if the Chapter 11 Case had not occurred, and Insurers shall not be required to file or serve any objection to a proposed cure amount or a request, application, claim, proof of claim or motion for payment or allowance of any Administrative Claim, and Insurers shall not be subject to any bar date or similar deadline governing cure amounts, proofs of Claim or Administrative Claims. Nothing shall permit or otherwise effect a sale, assignment or other transfer of any Insurance Policy and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to any Insurance Policy without the prior express written consent of the applicable Insurer.  The automatic stay of section 362(a) of the Bankruptcy Code and any injunctions set forth in the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Bankruptcy Court, solely to permit: (I) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (II) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or any injunctions set forth in the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) the Insurers to cancel any Insurance Policies, and take other actions relating to the Insurance Policies (including effectuating a setoff). Without altering any of

the foregoing, the Insurers' rights against any and all non-Debtor third parties are expressly preserved and unimpaired.

74.     <u>Payment of Statutory Fees</u>.  All outstanding fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on or before the Effective Date.

75.     <u>Reports</u>.   Until a final decree closing the Chapter 11 Case is entered, the Reorganized Debtor shall comply with any requisite reporting requirements established pursuant to the guidelines of the U.S. Trustee.

76.     <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules, or other federal laws are applicable, the laws of the State of Delaware shall govern the construction and implementation of the Plan and all rights and obligations arising under the Plan.

77.     <u>Withholding and Reporting Requirements</u>.  Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a distribution under the Plan shall have responsibility for the satisfaction or payment of any tax obligation imposed by any Governmental Unit, including income, withholding and other tax obligation, on account of such distribution.  The Reorganized Debtor reserves the right to allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and similar encumbrances.

78.     <u>Section 1146 Exemption</u>.  Pursuant to Section 1146(a), the issuance, transfer, or exchange of any security under the Plan; or the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the Plan; or the vesting, transfer, or sale of any real property of the Debtor pursuant to, in implementation of or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar

21

official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

79.    <u>Severability</u>.  In the event that any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

80.    <u>Binding Effect; Counterparts</u>.  The provisions of the Plan shall bind all holders of Claims against the Debtor, whether or not they have accepted the Plan.  The rights and obligations of any entity named or referred to in the Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.  The Plan may be executed in any number of counterparts and by different parties hereto on separate counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Plan.

81.    <u>Effectuating Documents; Further Transaction</u>.  The Debtor and/or the Reorganized Debtor are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

82.    <u>Effectiveness of All Actions</u>.  All actions authorized to be taken pursuant to the Plan shall be effective on, prior to or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors or interest holders of the Debtor and with the effect that such actions had been taken by unanimous action of such officers, directors or interest holders.

83.   <u>Approval of Consents</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan and any related documents, instruments or agreements, and any amendments or modifications thereto.

84.   <u>Professional Fee Claims Bar Date</u>.  Except as otherwise provided in the Plan, all final applications for payment of Professional Fee Claims shall be filed and served on counsel for the Debtor, the Trustee and the U.S. Trustee on the date that is the first Business Day after the date that is thirty (30) days after the Effective Date.  Any Professional Fee Claim that is not asserted in accordance with Article 2.1(a) of the Plan shall be deemed Disallowed under the Plan and the holder thereof shall be enjoined from commencing or continuing any Cause of Action, employment of process or act to collect, offset, recoup or recover such Claim against any party.

85.   <u>Claims Objection Bar Date.</u>  All objections to Claims shall be filed by the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed or extended by the Court, the Debtor or the Reorganized Debtor, or by an order of this Court for objecting to Claims.

86.   <u>Texas Comptroller Claims</u>.  Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the Texas Comptroller of Public Accounts (the "<u>Texas Comptroller</u>") reserves the following rights: (1) any statutory or common law setoff rights in accordance with 11 U.S.C. § 553; (2) the payment of interest on the Texas Comptroller's administrative expense tax claims, if any; (3) to the extent that interest is payable with respect to any administrative expense, priority, or secured tax claim of the Texas Comptroller, the statutory

rate of interest pursuant to Texas Tax Code 111.060; and (4) the Texas Comptroller is not required to file a motion or application for payment of administrative expense claims pursuant to 11 U.S.C. § 503(b)(1)(D).  Allowed Priority Tax Claims owed to the Texas Comptroller shall be paid in full at the Debtor's option: (1) as soon as practicable after the Effective Date; (2) in equal monthly installments of principal and interest no later than sixty (60) months of the Debtor's bankruptcy petition date; or (3) as otherwise agreed to by the Texas Comptroller.  The Texas Comptroller's priority tax claims shall accrue interest at the statutory rate of interest from the Effective Date until paid in full.  For the avoidance of doubt, nothing in this paragraph shall be construed in any way as a waiver of the Debtor's rights to object to any priority claims asserted by the Texas Comptroller.

87.     <u>Reservations by the United States</u>.  Notwithstanding any provision to the contrary in the Plan, the Plan Supplement, this Order or any implementing Plan documents (collectively, "<u>Documents</u>"):

As to the United States, nothing in the Documents shall: (1) discharge, release, enjoin, impair or otherwise preclude (a) any liability to the United States that is not a Claim, (b) any Claim of the United States arising after the Effective Date, or (c) any liability of any entity or person under police or  regulatory statutes or regulations to any Governmental Unit (as defined by Section 101(27)) as the owner, lessor, lessee or operator of property or rights to property that such entity owns, operates or leases after the Confirmation Date; (2) release, nullify, preclude or enjoin the enforcement of any police or regulatory power; (3) affect any setoff or recoupment rights of the United States and such rights are preserved; (4) require the United States to file an administrative Claim in order to receive payment for any liability described in Section 503(b)(1)(B) and (C) pursuant to Section 503(b)(1)(D);

(5) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law; (6) release, enjoin, exculpate, impair or discharge any non-Debtor from any Claim, liability, suit, right or cause of action of the United States; (7) be construed as a compromise or settlement of any liability, Claim, cause of action or interest of the United States; (8) modify the scope of Section 502 or 505 with respect to the Claims of the United States; or (9) cause the automatic disallowance or expungement of any federal Claim filed or amended after the Effective Date.

Liens securing Claims of the United States shall be retained until the Claim, with interest to the extent allowed by applicable law, is paid in full.  Administrative Expense Claims of the United States, once Allowed pursuant to the Plan or the Bankruptcy Code, shall accrue interest and penalties as provided by non-bankruptcy law until paid in full.  Priority Tax Claims of the United States Allowed pursuant to the Plan or the Bankruptcy Code will be paid in accordance with Section 1129(a)(9)(C).  To the extent Allowed Priority Tax Claims (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code and applicable non-bankruptcy law) are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate set forth in Section 511.  Moreover, nothing shall affect a release, injunction or otherwise preclude any Claim whatsoever against any Debtor or the Debtor's Estate by or on behalf of the United States for any liability arising a) out of pre-petition or post-petition tax periods for which a return has not been filed or b) as a result of a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Further, nothing shall enjoin the United States from amending any Claim against

any Debtor or the Debtor's Estate with respect to any tax liability a) arising out of pre-petition or post-petition tax periods for which a tax return has not been filed or b) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period.  Any liability arising a) out of pre-petition or post-petition tax periods for which a return has not been filed or b) as a result of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax period shall be paid in accordance with Section 1129(a)(9)(A) and (C).  Without limiting the foregoing but for the avoidance of doubt, the Reorganized Debtor and any Third-Party Administrator (as the case may be) shall comply with all applicable law, including but not limited to, tax law; provided, however, for the avoidance of doubt, nothing herein shall create an obligation to issue a Form 1099 or perform back-up withholding to the extent not otherwise required by applicable law.  Nothing contained in the Documents shall be deemed to bind the United States to any characterization of any transaction for tax purposes or to determine the tax liability of any person or entity, including, but not limited to, the Debtor and the Debtor's Estate, nor shall the Documents be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in the Documents be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under Section 505.  The Debtor agrees to file all outstanding tax returns by the later of the following: (i) thirty days of the Effective Date and (ii) the deadline for filing such tax returns under applicable non-bankruptcy law.

88.     Notice of Entry of Confirmation Order and Effective Date.  No later than fourteen (14) days after the Plan's substantial consummation, the Debtor shall file and serve the notice

required under Section 1183(c)(2) combined with notice of entry of this Confirmation Order and occurrence of the Effective Date pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), (the "Notice of Confirmation") on all holders of Claims and Interests, the Participating States, the United States Trustee for the District of Delaware and other parties in interest by causing the Notice of Confirmation to be delivered to such parties by e-mail only, if an e-mail is known, or by first-class mail, postage prepaid, within ten business days after the Effective Date.  The Notice of Confirmation shall also be posted on the Debtor's restructuring website at https://cases.creditorinfo.com/learcapital.   Such notice is adequate under the particular circumstances and no other or further notice is necessary.  For the avoidance of doubt, the Notice of Confirmation shall not be served on the Unfiled Customers.  The Notice of Confirmation also shall serve as the notice of the Effective Date.

89.     References to Plan Provisions.  The failure to include or specifically describe or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety.

90.     Findings of Fact.  The determinations, findings, judgments, decrees and orders set forth and incorporated herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

91.    <u>Conflicts Between Confirmation Order and Plan</u>.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

92.    <u>Final Order</u>.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

**Dated: June 8th, 2023**
**Wilmington, Delaware**

**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**